UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

COLUMBUS DIVISION

| | |
|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated, | No. 2:19cv03347 |
| Plaintiff, | CLASS ACTION |
| vs. | Chief Judge Edmund A. Sargus, Jr. |
| CARDINAL HEALTH, INC., et al., | Magistrate Judge Elizabeth A. Preston Deavers |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF PROPOSED LEAD PLAINTIFF 1199 SEIU HEALTH CARE EMPLOYEES PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................1

III.  ARGUMENT ........................................................................................................5

     A.    The Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff.........................................................................5

          1.    The Pension Fund's Motion Is Timely .......................................6

          2.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class........................................................6

          3.    The Pension Fund Is Typical and Adequate of the Putative Class .............6

     B.    The Court Should Approve the Pension Fund's Selection of Counsel....................7

IV.  CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
   2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) ...........................................................8

*Frank v. Dana Corp.*,
   547 F.3d 564 (6th Cir. 2008) ......................................................................................8

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) ......................................................................................8

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
   No. 8:15-cv-00865-AG-JCG (C.D. Cal.) ...................................................................9

*In re Cardinal Health, Inc. Sec. Litig.*,
   No. 2:04-cv-00575-ALM (S.D. Ohio) ........................................................................9

*In re Enron Corp. Sec.*,
   No. 4:01-cv-03624 (S.D. Tex.) ...................................................................................9

*In re HealthSouth Corp. Sec. Litig.*,
   No. 2:03-cv-01500-KOB-TMP (N.D. Ala.)................................................................9

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   No. 1:01-cv-01451-REB-KLM (D. Colo.) .................................................................9

*In re UnitedHealth Group Inc. Sec. Litig.*,
   No. 0:06-cv-01691-JMR-FLN (D. Minn.)...................................................................9

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
   No. 1:02-cv-05893 (N.D. Ill.) .....................................................................................9

*Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) .................................................................6, 7

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
   No. 3:05-cv-7393-JGC (N.D. Ohio Nov. 18, 2016) ..................................................8

*Willis v. Big Lots, Inc.*,
   242 F. Supp. 3d 634 (S.D. Ohio 2017) ......................................................................8

4829-7765-6488.v1

Page

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(1) ....................................................................................................5
    §78u-4(a)(3)(A) ...............................................................................................6
    §78u-4(a)(3)(A)(i) ...........................................................................................5
    §78u-4(a)(3)(B)(i) ........................................................................................1, 5
    §78u-4(a)(3)(B)(iii) ..........................................................................................1
    §78u-4(a)(3)(B)(iii)(I) .....................................................................................6
    §78u-4(a)(3)(B)(iii)(I)(cc) ...............................................................................6
    §78u-4(a)(3)(B)(v) .......................................................................................1, 7

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................5, 6
    Rule 23(a)(3) ...................................................................................................6

4829-7765-6488.v1

## I.      INTRODUCTION

This action is brought on behalf of purchasers of Cardinal Health, Inc. ("Cardinal Health" or the "Company") common stock between March 2, 2015 and May 2, 2018 (the "Class Period") against the Company and five senior executive officers for alleged violations of the Securities Exchange Act of 1934 (the "1934 Act"). In securities class actions, the Private Securities Litigation Reform Act of 1995 ("PSLRA") directs district courts to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

The 1199 SEIU Health Care Employees Pension Fund (the "Pension Fund") should be appointed lead plaintiff because it filed a timely motion, has a substantial financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the putative class should be approved. 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.      STATEMENT OF FACTS

Cardinal Health, based in Dublin, Ohio, is a global distributor of drugs and medical devices. The Company operates through two segments: Pharmaceutical and Medical. The Company's Medical segment has traditionally offered low-tech, low-margin medical products, such as laboratory equipment, gloves, and surgical apparel, and its core customer base has been hospitals, ambulatory surgery centers, clinical laboratories, and other healthcare providers in the United States. Its common stock trades on the NYSE under the ticker CAH.

The Class Period begins in March 2015, when Cardinal Health announced that it had agreed to acquire Cordis Corp., a global manufacturer and distributor of interventional cardiology devices and endovascular solutions owned by Ethicon, Inc., a wholly-owned Johnson & Johnson subsidiary, for nearly $2 billion, as part of the Company's global expansion strategy and effort to grow its

medical products portfolio.  Cordis's international presence included operations in China, Japan, Germany, Italy, France, the United Kingdom, and Brazil.  Cordis had annual sales in calendar year 2014 of approximately $780 million, split almost evenly between cardiology and endovascular products.  At the time of the acquisition, Cardinal Health told investors that the Cordis acquisition would allow it to enter into the higher margin cardiovascular market and add brand name stents and catheters to its list of medical products.  Defendants also represented that Cordis would provide Cardinal Health with a global footprint and platform for future growth by leveraging its existing product line and providing cross-selling opportunities in new markets.  The acquisition was completed on October 4, 2015.

The complaint alleges that defendants made materially false and misleading statements and/or concealed the following material information during the Class Period:

- The inventory tracking technology and advanced supply chain solutions Cardinal Health touted to improve Cordis's performance were never implemented;

- Cordis's existing global supply chain and inventory control systems were antiquated and ineffective, which were causing operational and inventory problems at Cordis;

- Cordis's inventory and supply chain platforms were so deficient that the Company lacked visibility into customer demand and existing inventory levels, particularly with respect to products consigned to third-party vendors overseas;

- As a result, Cordis had manufactured and accumulated excessive amounts of cardiovascular product inventories, which sat on the shelf and became unsellable and/or expired;

- The Company failed to establish reserves, write off expired products, and subtract that inventory from the Company's assets on its balance sheets;

- As a result, the Company materially overstated Cordis's inventory balances;

- Contrary to defendants' representations, Cordis was not "performing well" and its integration was not "on track," "going incredibly well," or "largely on plan";

- The Company struggled at separating the Cordis business from J&J due to operational, manufacturing, and personnel deficiencies;

- 2 -

- To correct Cordis's deficiencies, the Company would have to make substantial investments in Cordis's IT and supporting infrastructure, thereby incurring significant Selling, General and Administrative Expense charges beyond the levels internally budgeted for or projected by Cardinal Health and diminishing operating earnings;

- The Company lacked effective internal controls over financial reporting; and

- As a result, Cardinal Health had overstated the benefits of the Cordis acquisition, incurring a non-cash goodwill impairment charge driven by continued "inventory and cost challenges within [the] Cordis business." ECF No. 1 at ¶61.

The falsity of defendants' representations was partially exposed on August 2, 2017, when Cardinal Health reported weak earnings for its fourth quarter and fiscal year 2017 and lowered its earnings guidance for fiscal year 2018. Defendants blamed these disappointing earnings on "higher-than-planned write-offs for excess inventory" at Cordis, explaining that the cost of moving manufacturing and standing up Cordis's back-office services had been more expensive than Cardinal Health modeled. ECF No. 1 at ¶50. During the August 2, 2017 earnings call, however, defendants attempted to downplay concerns about Cordis, with defendant Barrett stating that "much of the heavy lifting is behind us" and that the business was "getting some commercial momentum," including "solid sales growth in Asia Pacific, Latin America and Europe." *Id.* As a result of this news, the price of Cardinal Health stock declined over 8%.

Then, on May 3, 2018, Cardinal Health stunned the market by announcing lower-than-expected earnings for the third quarter of fiscal year 2018 due to the "unanticipated disappointing performance from our Cordis business." ECF No. 1 at ¶57. In addition, the Company cut its fiscal year 2018 earnings guidance and took a $1.4 billion non-cash goodwill impairment charge driven by continued "inventory and cost challenges within [the] Cordis business," which represented almost 70% of Cordis's acquisition price. *Id.* Contrary to the Company's prior statements that it had visibility into Cordis's inventory and had properly reserved for obsolete inventory, the Company revealed that, after launching a new global supply chain IT platform over the last quarter at Cordis, it

- 3 -

had discovered millions of dollars of unsellable and expired heart stents and catheters stationed overseas that had to be written off.  CEO Kaufmann admitted that if the Company had put this IT platform in place the previous quarter, Cardinal Health "absolutely" would have written off expired inventory at that time.  *Id.* at ¶58.  Apart from reducing profits in the Medical segment, Cordis's large inventory write-offs also raised Cardinal Health's expected effective tax rate to 45.1%, up from 32.3% just a year earlier and over 7% higher than projected the previous quarter.  Cordis's performance created losses in certain foreign jurisdictions where Cardinal Health could not take out the benefit of those operating losses from a tax perspective.  Additionally, the Company disclosed that the lack of "visibility" into Cordis's overseas inventories created operational inefficiencies for Cordis's manufacturing plants.  *Id.*  Defendants stated that the Company "need[ed to put] several tools in place" to deal with Cordis's operational challenges, including "implementing new process[es] and technology improvements that will better manage our Cordis consigned inventory." *Id.*  Furthermore, the Company announced that it anticipated that "the operational challenges with Cordis will continue through Q4 and fiscal '19."  *Id.*

On the earnings conference call, a Cowen analyst reminded Cardinal Health executives of their recent positive comments concerning Cordis and pressed the Company to explain "what changed really in the last 3 months that – because it seemed like last quarter, things were actually going in the right direction."  ECF No. 1 at ¶59.  Following the call, a William Blair analyst characterized the news regarding Cordis's inventory problems as "surprising[]," stating that the analyst "expect[ed] investors will be much more skeptical of the accretion potential of [Cordis]" and that the news "calls into question the company's broader strategy for the medical segment – the recipient of billions of dollars of capital deployment in the last decade."  *Id.*

Investors were surprised by these revelations, with Cardinal Health stock declining over 21%, inflicting substantial harm upon the Pension Fund and other shareholders as the market began to absorb the full scope and magnitude of the Company's problems integrating Cordis.

## III. ARGUMENT

### A. The Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice was published on August 1, 2019. *See* Declaration of Darren J. Robbins in Support of Proposed Lead Plaintiff 1199 SEIU Health Care Employees Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Robbins Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

4829-7765-6488.v1

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1033 (S.D. Ohio 2005). The Pension Fund meets these requirements and should be appointed Lead Plaintiff.

### 1. The Pension Fund's Motion Is Timely

The August 1, 2019, statutory notice advised putative class members of the pendency of the action, the claims asserted, the relevant time period, and the right to move the Court for appointment as lead plaintiff within 60 days, or by September 30, 2019. *See* Robbins Decl., Ex. A; 15 U.S.C. §78u-4(a)(3)(A). Because this motion is being timely filed by the statutory deadline, the Pension Fund is eligible for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, the Pension Fund purchased 167,603 Cardinal shares during the Class Period and suffered over $2.1 million in losses as a result of defendants' alleged misconduct. *See* Robbins Decl., Exs. B, C. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Fund meets the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "The typicality requirement of FED. R.CIV.P. 23(a)(3) is fulfilled if the prospective lead plaintiff's claims arise out of the same course of conduct or series of events, and are based on the same legal theory as the other members of the class" *Fannie Mae*, 357 F. Supp. 2d at 1034. The adequacy requirement is met "if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation." *Id.*

4829-7765-6488.v1

The Pension Fund satisfies the typicality requirement as it seeks to represent a class of purchasers of Cardinal stock during the Class Period and allegedly suffered a loss as a result of defendants' alleged misconduct. Because the Pension Fund's claims deal with the same issues that pertain to the other class members, their "interests are clearly aligned with those of the class." *Id.* In addition, the Pension Fund is a sophisticated institutional investor with more than $11.5 billion in assets under management overseen for the benefit of more than 260,000 participants. The Pension Fund is familiar with the requirements and responsibilities of being a lead plaintiff in a securities class action and is willing to undertake those responsibilities on behalf of the putative class in this case. *See* Robbins Decl., Ex. B.

Moreover, the Pension Fund is not aware of any potential conflicts of interest or any matters that would preclude it from fulfilling their duties as lead plaintiff. Additionally, as explained below, the Pension Fund has selected experienced and qualified counsel, further evidencing its ability to fairly and competently represent the interests of the putative class. Because the Pension Fund filed a timely motion, has a large financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

### B. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class." *Fannie Mae*, 357 F. Supp. 2d at 1034. The Pension Fund has selected Robbins Geller to serve as lead counsel.[1]

---

[1] For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com. An electronic or paper version of the Firm's resume is available upon the Court's request, if preferred.

Robbins Geller, a 200-attorney firm with nationwide offices, regularly represents clients in complex class action litigation within the Sixth Circuit and the Southern and Northern District Courts of Ohio. *See Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *9 (N.D. Ohio Nov. 28, 2017) (finding there "is no question" that Robbins Geller and co-counsel "are experienced and able to handle this type of litigation"); *Willis v. Big Lots, Inc*., 242 F. Supp. 3d 634, 660 (S.D. Ohio 2017) (Watson, J.) ("To say the least, Robbins Geller has extensive experience in handling class actions. Counsel's Amended Complaint and briefing on both Plaintiffs' motion for class certification and Defendants' *Daubert* motion demonstrate its knowledge of the applicable law. The Court has no reason to believe Robbins Geller will be unable to commit the resources necessary to represent the Class or will fail to fairly and adequately represent the interests of the Class.").

District courts throughout the country have noted Robbins Geller's reputation for excellence. For example, in approving a $64 million settlement of a securities class action case in *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-7393-JGC (N.D. Ohio Nov. 18, 2016), Judge Carr noted: "I kept throwing the case out, and you kept coming back. . . . And it's both remarkable and noteworthy and a credit to [Robbins Geller] that you did so. . . . [Y]ou persuaded the Sixth Circuit. As we know, that's no mean feat at all. . . . [The class is] a lot better off than if you hadn't been as tenacious and as dedicated." *Id.*, ECF No. 306 at 4, 14. The Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice in that case which accused the former heads of Dana Corp. of securities fraud for trumpeting the auto parts maker's condition while it actually spiraled toward bankruptcy. *See, e.g.*, *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008) (vacating district court's decision dismissing case and establishing standard to evaluate scienter allegations); *Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011) (reversing district court's decision dismissing case, holding shareholders adequately alleged scienter). Robbins Geller attorneys have obtained the largest securities fraud class action recovery in this Circuit –

- 8 -

coincidentally, against Cardinal Health – as well as in the Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits. *See In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit).[2]

Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. And, while trials in shareholder class actions are rare, Robbins Geller has tried several cases to verdict, most recently a February 2019 trial in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.

As such, the Pension Fund's selection of Robbins Geller as lead counsel is reasonable and should be approved.

---

[2] *See also In re Enron Corp. Sec.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

## IV.     CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  As such, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED:  September 30, 2019                     Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              DARREN J. ROBBINS
                                              DANIELLE S. MYERS
                                              MICHAEL ALBERT


                                                s/ Darren J. Robbins (*pro hac vice* forthcoming)
                                              DARREN J. ROBBINS
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              darrenr@rgrdlaw.com
                                              dmyers@rgrdlaw.com
                                              malbert@rgrdlaw.com

                                              [Proposed] Lead Counsel for [Proposed] Lead
                                              Plaintiff

                                              MURRAY MURPHY MOUL + BASIL LLP
                                              JOSEPH F. MURRAY (0063373)
                                              1114 Dublin Road
                                              Columbus, OH 43215
                                              Telephone:  614/488-0400
                                              614/488-0401 (fax)
                                              murray@mmmb.com

                                              Counsel for [Proposed] Lead Plaintiff

4829-7765-6488.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 30, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Darren J. Robbins
DARREN J. ROBBINS
ROBBINS GELLER RUDMAN
      & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com