# EXHIBIT 1

2019 WL 6842021
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

IN RE CLOUDERA, INC.
SECURITIES LITIGATION

Case No. 19-CV-03221-LHK
|
Signed 12/16/2019

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL

Re: Dkt. Nos. 17, 26, 34, 36, 43, 48, 54

LUCY H. KOH, United States District Judge

**\*1** This case is a putative securities class action brought against Defendant Cloudera, Inc. ("Cloudera"); its former Chief Executive Officer, Thomas J. Reilly; its Chief Financial Officer, Jim Frankola; and its former Chief Strategy Officer, Michael A. Olson (collectively, "Defendants"). Plaintiffs in this action are "purchasers of Cloudera common stock between April 28, 2017 and June 5, 2019, inclusive (the 'Class Period')." ECF No. 1 ("Compl.") ¶ 1. Before the Court are seven motions for appointment as lead plaintiff and approval of lead counsel.

## I. BACKGROUND

Cloudera is a software company that specializes in "the provision of data management, machine learning, and advanced analytical tools to businesses." *Id.* ¶ 11. Cloudera "offers a suite of applications ... that allows its customers—generally large enterprises—to collect, store, organize, and analyze large amounts of data to improve their businesses." *Id.* Plaintiffs allege that, throughout the Class Period, Cloudera misled shareholders by failing to disclose that:

> (i) Cloudera was finding it increasingly difficult to identify large enterprises interested in adopting the Company's Hadoop-based platform;
> (ii) Cloudera needed to expend

an increasing amount of capital on sales and marketing activities to generate new revenues, even as new revenue opportunities were diminishing; and (iii) Cloudera had materially diminished sales opportunities and prospects and could not generate annual positive cash flows.

*Id.* at ¶ 8. Plaintiffs claim that, as the public became aware of the truth, the market value of Cloudera's stock "precipitous[ly] decline[d]," culminating in "significant losses and damages" for shareholders. *See id.* ¶¶ 3–9.

After the instant suit was filed and notice publicized regarding the pendency of this case, the Court received ten motions to appoint lead plaintiff and lead counsel. Three movants have since withdrawn from consideration:

(1) Plaintiff Vinay Gulati, who filed his motion for appointment as lead plaintiff on August 6, 2019, ECF No. 14, filed a notice of withdrawal on August 21, 2019, ECF No. 70;

(2) Plaintiffs Ketan Doshi and Brian Alves-Scari, who filed their motion for appointment as lead plaintiff on August 6, 2019, ECF No. 22, filed a notice of withdrawal on August 20, 2019, ECF No. 63;

(3) Plaintiffs Paresh Randeria and Shefali Randeria, who filed their motion for appointment as lead plaintiff on August 6, 2019, ECF No. 29, filed a notice of withdrawal on August 19, 2019, ECF No. 62.

Because these motions have been formally withdrawn, they are no longer before the Court.

Accordingly, seven motions for appointment of lead plaintiff remain pending. However, four additional movants have filed notices of non-opposition that concede that other movants have larger financial interests in the litigation:

(1) Plaintiffs Miami Fire Fighters' and Police Officers' Retirement Trust and Peoria Police Pension Fund, who filed their motion for appointment as lead plaintiff on August 6, 2019, ECF No. 26, filed a notice of non-opposition on August 20, 2019, ECF No. 64;

**\*2** (2) Plaintiffs Michael Abramowitz and Edwin Muniz, who filed his motion for appointment as lead plaintiff on August 6, 2019, ECF No. 36, filed a notice of non-opposition on August 15, 2019, ECF No. 60;

(3) Plaintiff Raymond Gumm, who filed his motion for appointment as lead plaintiff on August 6, 2019, ECF No. 43, filed a notice of non-opposition on August 8, 2019; and

(4) Plaintiff Mohit Mahendra, who filed his motion for appointment as lead plaintiff on August 6, 2019, ECF No. 54, filed a notice of non-opposition on August 20, 2019, ECF No. 65.

Although these four movants did not formally withdraw their motions, in light of their concessions, the Court DENIES these motions.

Therefore, only three movants remain in contention for appointment as lead plaintiff:

(1) Plaintiff Kinja Dixon, who moved for appointment as lead plaintiff on August 6, 2019, ECF No. 17 ("Dixon Mot."), filed an opposition on August 20, 2019, ECF No. 67 ("Dixon Opp'n"), and filed a reply on August 27, 2019, ECF No. 75 ("Dixon Reply");

(2) Plaintiffs Boston Retirement System ("Boston Retirement") and the Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338") (collectively, the "Boston Group"), who moved for appointment as lead plaintiff on August 6, 2019, ECF No. 48 ("Boston Mot."), filed an opposition on August 20, 2019, ECF No. 66 ("Boston Opp'n"), and filed a reply on August 27, 2019, ECF No. 76 ("Boston Reply"); and

(3) Plaintiffs Marius J. Klin and the Mariusz J. Klin MD PA 401K Profit Sharing Plan (collectively, "Klin"), who moved for appointment as lead plaintiff on August 6, 2019, ECF No. 34 ("Klin Mot."), filed an opposition on August 20, 2019, ECF No. 69 ("Klin Opp'n"), and filed a reply on August 27, 2019, ECF No. 75 ("Klin Reply").

Defendants filed a response on August 19, 2019, in which they took no position as to the appointment of lead plaintiff and lead counsel. ECF No. 61.

Finally, Dixon, the Boston Group, and Klin all included in their motion a request that the Court consolidate the instant case, formerly captioned *Christie v. Cloudera, Inc.*, Case No. 19-CV-03221-LHK ("*Christie* Case"), with two other cases: *Zarantonello v. Cloudera, Inc.*, Case No. 19-CV-04007, and *Dvornic v. Cloudera, Inc.* Case No. 19-CV-04310. On September 10, 2019, the Court consolidated the three cases. ECF No. 77.

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, governs the selection of a lead plaintiff in private securities class actions. In the PSLRA's own words, this plaintiff is to be the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Under the PSLRA, a three-step process determines the lead plaintiff. *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002). First, the first plaintiff to file an action governed by the PSLRA must publicize the pendency of the action, the claims made, and the purported class period "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u–4(a)(3)(A)(i)(I). This notice must state that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u–4(a)(3)(A)(i)(II).

Second, the court must select the presumptive lead plaintiff. *See In re Cavanaugh,* 306 F.3d at 729–30 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)). In order to determine the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730 (footnote omitted). Once the district court identifies the plaintiff with the most to gain, the district court must determine whether that plaintiff, based on the information he provides, "satisfies the requirements of Federal Rule of Civil Procedure 23(a), in particular those of 'typicality' and 'adequacy.' " *Id.* If he does, that plaintiff becomes the presumptive lead plaintiff. *Id.* If not, the court turns to the plaintiff with the next-largest financial stake and determines whether that plaintiff satisfies the requirements of Rule 23. *Id.* The court repeats this process until it selects a presumptive lead plaintiff. *Id.*

**\*3** Third, those plaintiffs not selected as the presumptive lead plaintiff may "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). This is done by showing that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing

the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)-(bb). If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing. *In re Cavanaugh,* 306 F.3d at 731. The court repeats this process "until all challenges have been exhausted." *Id.*

Under the PSLRA, the lead plaintiff is given the right, subject to court approval, to select counsel to represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court,* 586 F.3d 703, 711 (9th Cir. 2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712.

## III. ANALYSIS

In conformity with the procedure established by the PSLRA and the Ninth Circuit, the Court will first determine which of the moving plaintiffs is presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[1] The Court will then determine whether any of the other purported class members have rebutted that presumption. Then, after the Court has selected the lead plaintiff, the Court will consider the lead plaintiff's choice of counsel.

[1]  Because the parties do not dispute that the procedural requirements outlined above at the first step have been met, the Court does not further discuss these requirements. *See* ECF No. 14 (discussing publication of the instant action on June 7, 2019 in *PR Newswire*).

### A. Klin is the presumptive lead plaintiff.

Under the PSLRA, the presumptive lead plaintiff is the movant with the largest financial stake that also satisfies the requirements of Rule 23. *In re Cavanaugh,* 306 F.3d at 730. Therefore, the Court first measures the financial stake of each movant. *Id.* The Court will then determine whether the movant with the largest financial stake also satisfies the requirements of Rule 23. *Id.* If not, the Court repeats the process with the movant with the next largest financial stake. *Id.*

The Court determines that, although the Boston Group has the largest financial interest in the litigation, it does not meet the adequacy requirement of Rule 23. Instead, the Court finds

that Klin is the presumptive lead plaintiff because he has the next largest financial stake and satisfies the requirements of Rule 23.

### 1. Largest Financial Interest

The Boston Group contends that it has the largest financial stake in this litigation as measured by approximate economic loss. Boston Mot. at 6. Klin argues that it instead has the largest economic interest as measured by percentage of the movants' respective portfolios. ECF Klin Opp'n at 2–3. The Court will first discuss the methodology it will use to assess which plaintiff has "the largest financial interest in the relief," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and then apply that methodology.

### a. Methodology

The Ninth Circuit has provided limited guidance on how the district court should "calculate each potential lead plaintiff's interest in the litigation." *In re Cavanaugh*, 306 F.3d at 730 n.4. District courts "may select accounting methods that are both rational and consistently applied." *Id.* Given this discretion, courts have applied different methods to determine a movant's interest in the litigation. *See, e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011) (explaining different methods used to calculate financial interest).

**\*4**  Klin suggests that the Court calculate financial interest by looking to each movant's losses as a relative percentage of the movant's overall portfolio. Klin Opp'n at 8–9. However, Klin fails to cite a single in-circuit case using that methodology and instead relies on nearly decades-old orders from outside this circuit. *See* Klin Opp'n at 8 (citing, for example, *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00-152 (JEI), 2000 WL 486956, at *2 (D.N.J. Apr. 24, 2000)). Unsurprisingly, courts in this district have rejected this approach because it "would result in individual investors nearly always having the largest financial stake relative to institutional investors whose holdings frequently amount to hundreds of millions of dollars." *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *7 (N.D. Cal. Apr. 27, 2012). "Such a result would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions." *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *7 (N.D. Cal. Apr. 27,

In re Cloudera, Inc. Securities Litigation, Slip Copy (2019)

2012). The Court therefore declines to consider the movants' losses as a relative percentage of their portfolios.

Instead, most courts have equated financial interest with either approximate economic losses suffered or potential recovery. *See Perlmutter*, 2011 WL 566814, at *3 (applying both methods). In this case, Dixon advocates using the approximate economic losses methodology, *see* Dixon Mot. at 5–6, but Klin argues that the Court should instead use the potential recovery theory, which Klin calls the "*Dura* methodology," Klin Opp'n at 4–8. The Boston Group argues that under either of those measures, it would still have the largest financial stake. Boston Reply at 2.

The Court agrees that the Boston Group has the largest financial stake under both approaches; thus, the Court need not determine which of these tests is most appropriate given the allegations in this case. Below, the Court analyzes both the approximate economic losses methodology and the potential recovery theory using Klin's *Dura* methodology. Both methodologies yield the same result.

To evaluate approximate economic losses, courts frequently weigh four factors that were first introduced in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11 1997), and *In re Olsten Corporation Securities Litigation*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998). *See, e.g.*, *Banerjee v. Avinger, Inc.*, No. 17-cv-03400-CW, 2017 WL 4552063, at *2 (N.D. Cal. Oct. 11, 2017) (applying *Lax-Olsten* test); *Vancouver Alumni Asset Holding, Inc. v. Daimler AG*, No. 16-02942-SJO, 2016 WL 10646304, at *2 (C.D. Cal. July 20, 2016) (same). Under the *Lax-Olsten* test, courts consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten*, 3 F. Supp. at 295. Courts applying this test consider the factors together as a whole to approximate each movant's losses. *See, e.g.*, *Vancouver Alumni Asset Holding, Inc.*, 2016 WL 10646304, at *2–3.

For the three movants, the four *Lax-Olsten* factors are as follows:

b. Approximate economic losses

| Movant | (1) *Shares Purchased* | (2) *Net Shares Purchased* | (3) *Net Funds Expended* | (4) *Approximate Loss* |
|---|---|---|---|---|
| Boston Group | **284,700** | **284,400** | **$3,195,558.21** | **$1,630,533.84** |
| Klin | 260,150 | 133,835 | $1,752,814.25 | $1,009,563.13 |
| Dixon | 97,557 | 97,557 | $1,340,912.76 | $799,471.41 |

*See* ECF Nos. 18-2, 34-3, 48-4. The Court utilizes a "last-in-first-out" ("LIFO") method for calculating total approximate losses, which comports with "[t]he weight of authority" and avoids artificially inflating losses with market activity outside of the class period. *See Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) (quoting *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016)). The four *Lax-Olsten* factors establish a consistent trend: the Boston Group suffered the highest approximate economic losses followed by Klin, with Dixon having the lowest approximate economic losses.

c. Potential Recovery Under Klin's *Dura* Methodology

 **\*5** Klin argues that the Court should consider potential recovery instead of economic losses in light of the United States Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). In *Dura*, the Supreme Court clarified that some losses may not be recoverable in a securities fraud action where a plaintiff cannot not establish loss causation, i.e., that the loss was attributable to the fraud, rather than other market factors. *Id.* at 342–43, 125 S.Ct. 1627. In so holding, the Supreme Court made it clear that a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations. *Id.* The Court observed that the lower price at which

purchasers of inflated stock resell their stock "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* Klin argues that, because plaintiffs may not recover all of the economic loss suffered during the Class Period, the Court should instead estimate each movant's potential recovery to determine the party with the largest financial interest. Opp'n at 6–7.

However, even under the methodology used by Klin, the results are identical to the approximate economic losses analysis above. Klin proposes that the Court calculate "for

each corrective disclosure ... the number of shares held by each movant," then "multiply that number of shares by the alleged stock price drop, and reduc[e] those losses to the statutory cap on damages, if applicable." [2] Opp'n at 7 (citing *Espinoza v. Whiting*, No. 4:12CV1711 SNLJ, 2013 WL 171850, at \*1 (E.D. Mo. Jan. 16, 2013)). Doing so, Klin offers the following results:

[2]  The Boston Group faults Klin's calculation of potential recovery because it does not account for the purchase price of the shares. Boston Reply at 5. Because the Court finds that the Boston Group has the largest financial interest even under Klin's methodology, the Court need not reach this issue.

| Movant | *Dura* Methodology |
|---|---|
| Boston Group | **$1,007,838.00** |
| Klin | $861,897.40 |
| Dixon | $628,395.88 |

Klin Opp'n at 7. As with the approximate economic losses analysis above, the Court again determines that the Boston Group has the largest potential recovery in this case, followed by Klin, with Dixon having the smallest potential recovery of any remaining movant.

Klin attempts to circumvent this result by arguing that the Court should disaggregate the potential recovery of the Boston Group. Klin Opp'n at 9–11. Klin argues that disaggregating the potential recovery would show that Klin has a larger potential recovery than either member of the Boston Group individually. *Id.* at 7. Specifically, the Boston Group is comprised of Boston Retirement and Local 338, and Klin argues that his potential recovery of $861,897.40 is greater than Boston Retirement's potential recovery of $729,948.00 and Local 338's potential recovery of $277,890.00. *Id.* However, the PSLRA directs the Court to determine "the largest financial interest in the relief sought" for any "person or *group of persons.*" *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). The statute thus instructs courts to calculate the financial interest for each movant, even if the movant is a plaintiff group rather than an individual. *Id.* Instead of disaggregating the Boston Group's losses, the Court construes Klin's argument to be that the Boston Group has not established its adequacy to be appointed as a lead plaintiff group, an argument the Court considers below. *See infra* Section III.2.a.

**2. Rule 23 Requirements**

"Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732. The test for adequacy asks whether the class representative and counsel "have any conflicts of interest with other class members" and whether the class representative and his counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The test for typicality asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)); *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012). This showing need not be as thorough as what would be required on a class certification motion. *See Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010).

**\*6**  The Court will first determine whether the movant with the largest financial stake, the Boston Group, satisfies the requirements of Rule 23. Because the Court concludes that the Boston Group does not satisfy the adequacy requirement,

the Court will then consider whether the movant with the next largest financial stake, Klin, satisfies Rule 23's requirements.

#### a. The Boston Group

Klin and Dixon both argue that the Boston Group does not satisfy the adequacy requirement of Rule 23 because it has not sufficiently justified its composition of unrelated investors with no disclosed decision-making structure. Klin Opp'n at 9–12; Dixon Reply at 2–5. The Court agrees, and thus need not consider whether the Boston Group satisfies Rule 23's typicality requirement.

As discussed above, the PSLRA itself provides that a lead plaintiff may be a group, as long as the group satisfies the same requirements set forth in the statute. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Consequently, as with any other movant for lead plaintiff, a plaintiff group must be able to establish that it satisfies the adequacy requirement, i.e., that the group will "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). For plaintiff groups, courts consider as part of the adequacy analysis whether the group will be able to function cohesively to monitor counsel and make critical litigation decisions as a group. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at \*7–9 (N.D. Cal. Aug. 22, 2008). Those courts find that a group of unrelated plaintiffs fails to satisfy the adequacy requirement where the group does not sufficiently demonstrate that it can adequately monitor counsel and make important decisions together. *Id.* at \*8.

Consequently, as the *Eichenholtz* court noted: "[C]ourts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Id.* at \*7 (N.D. Cal. Aug. 22, 2008) (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)). For example, Chief United States District Judge Phyllis Hamilton found that plaintiff groups could not be "the most adequate plaintiffs" where the members were "unrelated to each other" until introduced by their lawyers. *In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2006 WL 648683, at \*, 2005 U.S. Dist. LEXIS 45246 at \*33 (N.D. Cal. May 10, 2005). Similarly, the Third Circuit has explained that, if a court "were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude,

based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).

Similarly, in *Eichenholtz*, the court rejected a plaintiff group's bid to be lead plaintiff because the plaintiff group was nothing more than an arrangement made by the group's lawyers. 2008 WL 3925289, at \*9. In so doing, the court noted a number of deficiencies that rendered the group inadequate. For example, the court noted that the group failed to provide more than conclusory explanations of the member's relationships to one another. *Id.* The group had merely stated that they had "preexisting and professional and personal relationships." *Id.* Similarly, the court explained that the group had failed to "clarify how the group will tackle the massive coordination and strategic issues" likely to arise in the litigation. *Id.* Instead, the group had merely explained that they intended to "communicate regularly, devote in-house counsel to the litigation and exercise joint decision-making." *Id.* The group had also stated that it intended to make decisions by "simply one vote per constituent entity, independent of the number of shares held by the entity." *Id.* The court found that such a "conclusory declaration has little or no substance." The *Eichenholtz* court likened that plaintiff group to a case in which:

> **\*7** The only thing the investors in [the] group have in common ... is the lawyer. They have no link to each other. They are not organized with any group decisionmaking apparatus. They attended no organizing meetings. They have no cohesive identity. They have no name other than one arbitrarily selected by the lawyers.

*Id.* (citing *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)). The *Eichenholtz* court thus declined to appoint the group as lead plaintiff despite the group's overall largest financial interest in the litigation. *Id.* at \*10.

In the instant case, the Court finds that the Boston Group is comprised of "unrelated individuals" that have failed to provide more than a conclusory declaration with "little or no substance." *See id.* at \*9. The Boston Group is comprised of the Boston Retirement System ("Boston Retirement") and

the Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338"). *See* ECF No. 48-5 ("Boston Decl."), at ¶ 1. Boston Retirement, headquartered in Boston, Massachusetts, is a defined benefit pension plan for public-sector employees. *Id.* at ¶ 2. Local 338, headquartered in Mineola, New York, is a multi-employer pension fund for a variety of private-sector employees. *Id.* at ¶ 3. The two funds explain that each fund had "independently determined to seek appointment as Lead Plaintiff," but they "learned of the possibility of serving together" after discussions with their counsel, Bernstein Litowitz. *Id.* at ¶ 4. They further elaborate that they had a preexisting relationship because they "jointly served as plaintiffs in a class action arising from investments in pharmaceutical company PTC Therapeutics," where Boston Retirement served as a co-lead plaintiff and Local 338 served as an "additional plaintiff." *Id.* at ¶¶ 2, 5 (citing *In re PTC Therapeutics, Inc. Sec. Litig.*, No. 2:16-cv-01224 (D.N.J.)). Other than describing one conference call where the funds discussed their "strategy for prosecuting this action" and their "interests in prosecuting the case in a collaborative, like-minded manner," the Boston Group provided no further information about how it would jointly manage the case or resolve disagreements. *See id.* at ¶ 8.

These facts resemble the facts before United States District Judge Edward Chen in *Isaacs v. Musk*, No. C 18-4865 EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018). In *Isaacs*, Judge Chen declined to appoint a lead plaintiff group that was unable to substantiate its claim that the group members would be able to work well together. *Id.* at *3. The group had provided a "joint declaration" that merely confirmed that the members were "unrelated and were introduced to one another by their lawyers." *Id.* As in the instant case, Judge Chen found that the group members were connected by nothing more than "one joint call prior to filing the motion for appointment." *Id.*

The cursory details in the instant case do nothing to move the needle toward establishing the Boston Group's adequacy to serve as a lead plaintiff group. As in *Eichenholtz*, the only connection that the two funds have to each other is their counsel. 2008 WL 3925289, at *9 (citing *Network Assocs.*, 76 F. Supp. 2d at 1026). The Boston Group makes nothing more than a flimsy attempt to show that the funds are not just unrelated entities. The funds explain that they previously worked together on the *PTC* case but fail to elaborate in what capacity, especially since Local 338 merely served as an "additional plaintiff" rather than as a co-lead plaintiff with Boston Retirement. *See id.* at ¶¶ 2, 5. Nor are they "organized with any group decisionmaking apparatus." *See Eichenholtz,*

2008 WL 3925289, at *9. In fact, the Boston Group has provided no detail whatsoever about any decisionmaking process. Its declaration falls far short of the information provided by the proposed plaintiff group in *Eichenholtz*, which had included the group's proposed voting structure, but which the court there held to be insufficiently detailed. *See id.*

**\*8** In the instant case, the Court accordingly holds that the Boston Group has failed to show that it would be an adequate representative of the class as required by Rule 23, which disqualifies the Boston Group from being appointed lead plaintiff.

#### b. Klin

Because the Court determined that the Boston Group does not meet the adequacy requirement of Rule 23, the Court must proceed to the movant with the next largest financial interest to determine whether that plaintiff satisfies the Rule 23 requirements. *In re Cavanaugh,* 306 F.3d at 731. Because the Court finds that Klin has the next largest financial interest in the litigation and satisfies both Rule 23 requirements, Klin is the presumptive lead plaintiff.

With regard to adequacy, Klin stands in stark contrast to the Boston Group. Klin seeks lead plaintiff status for himself, Marius J. Klin, and on behalf of the Marius J. Klin MD PA 401K Profit Sharing Plan (the "Klin 401K Plan"), for which he is the only trustee. Klin Mot. at 1. Unlike the Boston Group, Klin is not a plaintiff group comprised of "unrelated individuals" brought together by attorneys, *see Eichenholtz,* 2008 WL 3925289, at *7, but is one individual acting on behalf of himself and his 401K retirement plan. Thus, by contrast, Klin's motion raises none of the organizational or decision-making process concerns that the *Eichenholtz* court found dispositive and that the Court found unaddressed by the Boston Group's motion. *See id.*

Moreover, Klin noted that he has no conflicts with any other members of the alleged class. Klin Mot. at 12. He further argued that, in light of the "large financial losses" he sustained, which amounted to nearly one-third of his portfolio, Klin Reply at 2, he is motivated to "vigorously pursue the interests of the Class." *Id.* at 12. Accordingly, the Court is assured that Klin will adequately prosecute the action on behalf of the prospective class.

Klin also satisfies the typicality requirement. The test for typicality asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. In this case, like all other purported class members, Klin purchased Cloudera securities during the Class Period, at prices artificially inflated by the alleged fraud, and suffered damages as a result. *See* Klin Opp'n at 11. Klin's claims appear to be identical to the claims of other members of the putative class, thus satisfying the typicality requirement for purposes of lead plaintiff appointment. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-CV-06039-LHK, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (finding typicality requirement met when proposed lead plaintiff "purchased [the defendant's] common stock during the Class Period, allegedly in reliance upon [the d]efendants' purported false and misleading statements, and alleged[ly] suffered damages as a result").

### B. No other purported class member has rebutted the presumption.

Having established that Klin has the greatest financial stake and satisfies the requirements of Rule 23, Klin is presumptively the most adequate plaintiff to represent the class. This presumption may be rebutted only upon proof by a member of the purported plaintiff class that Klin either (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(3)(B)(iii)(II).

**\*9** The Court finds that no purported class member has come forward with such evidence to rebut the presumption in favor of Klin. Rather than offering any evidence to rebut the presumption, Dixon argues that the Court should not consider Klin's declaration because it was not filed initially with Klin's motion. *See* Dixon Reply at 9. However, the Court did not rely above on the declaration Klin filed with his reply to consider whether he would satisfy the requirements of the PSLRA. Klin provided sufficient information to establish his eligibility for appointment with lead plaintiff with his initial motion. *See, e.g.*, Klin Mot. at 1 (explaining that Klin is the sole trustee for the Klin 401K Retirement Plan). Moreover, Dixon fails to cite any precedent finding the presumption rebutted merely because a movant's declaration was filed after the movant's initial motion for appointment of lead plaintiff. *See id.* Dixon's only citation simply repeats the

PSLRA's requirement that motions be filed within 60 days of publication of the notice—the case does not at all address whether a declaration filed with a movant's reply is untimely. *Id.* (citing *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 5:11-CV-04003-LHK, 2012 WL 78780, at *3, 2012 U.S. Dist. LEXIS 2776, *9 (N.D. Cal. Jan. 9, 2012)). In any event, the Court finds that a substantial, preexisting relationship between Marius J. Klin and the Marius J. Klin MD PA 401K Plan is self-evident. Dixon's argument is thus immaterial to the Court's analysis.

Accordingly, because no other movant has offered any actual evidence to the contrary, the Court concludes that the presumption that Klin is the most adequate lead plaintiff has not been rebutted. The Court therefore need not consider any other movants. *See In re Cavanaugh*, 306 F.3d at 730–31. Thus, the Court appoints Klin to be lead plaintiff group in this action.

### C. Klin's choice of lead counsel is reasonable.

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The decision of lead counsel belongs to the lead plaintiff. *In re Cavanaugh*, 306 F.3d at 734 n.14. Klin has chosen the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky"). Klin Mot. at 12. The Court has reviewed the firm's resume, ECF No. 34-5, and is satisfied that the lead plaintiff has made a reasonable choice of counsel. Accordingly, the Court defers to Klin's choice in counsel.

### IV. CONCLUSION

For the reasons stated above, the Court appoints Klin as the lead plaintiff in this action and approves Klin's selection of Levi & Korsinsky as lead counsel. The Court accordingly GRANTS Klin's motion, ECF No. 34. The Court DENIES the remaining motions: ECF No. 17 (Dixon), ECF No. 26 (Miami Fire Fighters' and Police Officers' Retirement Trust and Peoria Police Pension Fund); ECF No. 36 (Abramowitz and Muniz); ECF No. 43 (Gumm); ECF No. 48 (the Boston Group); and ECF No. 54 (Mahendra).

To ensure efficiency, the Court adopts the following protocols. Other than Levi & Korsinsky, no other law firms shall work on this action for the putative class without prior approval of the Court. Motions for approval of additional Plaintiffs' counsel shall identify the additional Plaintiffs' counsel and their background, the specific proposed tasks,

and why Levi & Korsinsky cannot perform these tasks. The Court further orders that any billers who will seek fees in this case, including staff, consultants, and experts, shall maintain contemporaneous billing records of all time spent litigating this case. By "contemporaneous," the Court means that an individual's time spent on a particular activity should be recorded no later than seven days after that activity occurred. The Court notes that "a one-tenth hour timekeeping practice is generally reasonable." *Jacobson v. Persolve, LLC,* 2016 WL 7230873, at \*10 (N.D. Cal. Dec. 14, 2016) (citing

*Kalani v. Starbucks Corp.,* 2016 WL 379623, at \*8 (N.D. Cal. Feb. 1, 2016)). Mr. Adam C. McCall shall review and approve attorneys' fees and costs each month and strike any duplicative or unreasonable fees and costs.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 6842021

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.