## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **LOUISIANA SHERIFFS' PENSION & RELIEF FUND**, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> **CARDINAL HEALTH, INC., GEORGE S. BARRETT, DONALD M. CASEY, JR., MICHAEL C. KAUFMANN, JORGE M. GOMEZ, and DAVID J. WILSON**, <br><br> Defendants. | **Case No. 2:19-cv-3347** <br><br> Judge Edmund A. Sargus <br><br> Magistrate Judge Elizabeth A. Preston Deavers <br><br> **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ..................................................................................................................................1

I. THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 10(b). ....................................1

    A. The complaint fails to plead facts showing that defendants' statements about Cordis contained any material misrepresentations or omissions. ......................................1

        1. Vague and subjective "puffing" statements. ...........................................................2

        2. Forward-looking statements within the PSLRA's safe harbor. ...............................4

        3. Accurate statements of historical results. ...............................................................7

    B. The complaint fails to plead facts showing that the company's financial statements contained material misrepresentations or omissions that caused plaintiff's alleged economic loss. .............................................................................8

        1. Immateriality. ...........................................................................................................8

        2. No loss causation. ..................................................................................................10

    C. The complaint fails to plead facts showing that defendants acted with scienter in making any of the allegedly false or misleading statements. ..........................................11

        1. Disclosures of problems with the Cordis integration throughout the class period negate an inference of scienter. ..................................................................11

        2. Plaintiff identifies no factual information to support its scienter claim ................13

        3. The timing of statements does not support an inference of scienter. .....................15

        4. Allegations that the individual defendants' compensation was tied to Cardinal Health's stock price do not support an inference of scienter. .................16

        5. Allegations that some of the individual defendants sold stock during the class period do not support an inference of scienter. ............................................16

        6. Allegations that some of the individual defendants left their positions during the class period do not support an inference of scienter. ...........................19

        7. Accounting adjustments made after the class period do not support an inference of scienter. ............................................................................................19

i

II.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 20(a) OR § 20A. ..................20

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey* v. *Esperion Therapeutics, Inc.*,
No. 18-11438, 2019 WL 3296235 (E.D. Mich. Feb. 19, 2019)...............................................18

*Boynton Beach Firefighters' Pension Fund* v. *HCP, Inc.*,
No. 3:16-cv-1106, 2019 WL 6251435 (N.D. Ohio Nov. 22, 2019)................................. 19-20

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .......................................................................................2, 3, 15

*City of Pontiac Gen. Emps.' Ret. Sys.* v. *Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................................10

*City of Pontiac Gen. Emps.' Ret. Sys.* v. *Stryker Corp.*,
865 F. Supp. 2d 811 (W.D. Mich. 2012) .............................................................................7

*Doshi* v. *Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) .............................................................................................15

*Dougherty* v. *Esperion Therapeutics, Inc.*,
905 F.3d 971 (6th Cir. 2018) ...............................................................................................15

*Fidel* v. *AK Steel Holding Corp.*,
No. C-1-00-320, 2002 WL 31545952 (S.D. Ohio Sept. 19, 2002)...........................................5

*Fidel* v. *Farley*,
392 F.3d 220 (6th Cir. 2004) .........................................................................................19, 20

*Frank* v. *Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) .........................................................................................13, 20

*Garden City Emps. Ret. Sys.* v. *Psychiatric Sols., Inc.*,
No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011).........................................14

*Gauquie* v. *Albany Molecular Rsch., Inc.*,
No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)........................13

*Grae* v. *Corrections Corp. of Am.*,
No. 3:16-cv-2267, 2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) ..................................3, 13

*Harris* v. *Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) .........................................................................................5, 6

iii

*Helwig* v. *Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) (en banc) ............................................................. *passim*

*I.B.E.W.* v. *Ltd. Brands, Inc.*,
    788 F. Supp. 2d 609 (S.D. Ohio 2011) ..........................................................9, 12, 16

*Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016)......................................................................... 8-9

*Ind. State Dist. Council* v. *Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) ..................................................................... 10-11

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ............................................................ 3-4

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018).......................................................... 16-17

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015)...............................................................9

*In re Cardinal Health Inc. Sec. Litigs.*,
    426 F. Supp. 2d 688 (S.D. Ohio 2006) ......................................................3, 11, 17

*In re Diebold Sec. Litig.*,
    No. 5:05CV2873, 2008 WL 3927467 (N.D. Ohio Aug. 22, 2008) .........................................20

*In re Dwight's Piano Co.*,
    No. 3:04-CV-066, 2005 WL 8161985 (S.D. Ohio Mar. 17, 2005)...........................................4

*In re Enron Corp.*,
    No. H-01-3624, 2003 WL 21418157 (S.D. Tex. Apr. 24, 2003).............................................17

*In re Envision Healthcare Corp. Sec. Litig.*,
    No. 3:17-cv-01112, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019)..................................6, 7

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-cv-04883-BLF, 2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)...................................4

*In re Fed.-Mogul Corp. Sec. Litig.*,
    166 F. Supp. 2d 559 (E.D. Mich. 2001)..............................................................4, 5

*In re Ford Motor Co. Sec. Litig.*,
    381 F.3d 563 (6th Cir. 2004) ........................................................................7

*In re Huffy Corp. Sec. Litig.*,
    577 F. Supp. 2d 968 (S.D. Ohio 2008) ...............................................................8

iv

*In re Huntington Bancshares Inc. Sec. Litig.*,
  674 F. Supp. 2d 951 (S.D. Ohio 2009) ...............................................................14, 18

*In re Omnicare, Inc. Sec. Litig.*,
  769 F.3d 455 (6th Cir. 2014) ...................................................................................11

*In re Oxford Health Plans, Inc.*,
  187 F.R.D. 133 (S.D.N.Y. 1999) .............................................................................17

*In re Proquest Sec. Litig.*,
  527 F. Supp. 2d 728 (E.D. Mich. 2007)...................................................................14

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
  124 F. Supp. 2d 527 (S.D. Ohio 2000) .............................................................. 17-18

*In re Sofamor Danek Grp.*,
  123 F.3d 394 (6th Cir. 1997) .................................................................................7, 8

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003)......................................................................17

*Konkol* v. *Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) ...................................................................................13

*Kyrstek* v. *Ruby Tuesday, Inc.*,
  No. 3:14-cv-01119, 2016 WL 1274447 (M.D. Tenn. Mar. 31, 2016) .....................12

*Ley* v. *Visteon Corp.*,
  543 F.3d 801 (6th Cir. 2008) ...................................................................................14

*Litwin* v. *Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2016).......................................................................................9

*Loc. 295/Loc. 851 IBT Emp. Grp.* v. *Fifth Third Bancorp*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010) ...............................................................11, 20

*Miller* v. *Champion Enters. Inc.*,
  346 F.3d 660 (6th Cir. 2003) .................................................................................6, 7

*Nguyen* v. *New Link Genetics Corp.*,
  297 F. Supp. 3d 472 (S.D.N.Y. 2018).......................................................................17

*PR Diamonds, Inc.* v. *Chandler*,
  364 F.3d 671 (6th Cir. 2004) ...................................................................................20

*Roberti* v. *OSI Sys., Inc.*,
  No. CV 13-9174-MWF (VBKx), 2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)....................13

*Ross* v. *Abercrombie & Fitch Co.*,
    501 F. Supp. 2d 1102 (S.D. Ohio 2007) ...................................................................11

*S.E.C.* v. *Mozilo*,
    No. CV 09-3994-JFW (MANx), 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010)....................13

*Sanchez* v. *Centene Corp.*,
    407 F. Supp. 3d 831 (E.D. Mo. 2019)...................................................................12

*Setzer* v. *Omega Healthcare Invs., Inc.*,
    968 F.3d 204 (2d Cir. 2020)............................................................................ 12-13

*Slayton* v. *Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010).................................................................................6

*Stein* v. *U.S. Xpress Enters., Inc.*,
    No. 1:19-cv-98, 2020 WL 3584800 (E.D. Tenn. June 30, 2020) ...........................................14

*Wilkof* v. *Caraco Pharm. Labs., Ltd.*,
    No. 09-12830, 2010 WL 4184465 (E.D. Mich. Oct. 21, 2010).................................................8

*Willis* v. *Big Lots, Inc.*,
    No. 2:12-cv-604, 2016 WL 8199124 (S.D. Ohio Jan. 21, 2016)...................................5, 17, 19

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A)................................................................................................7

15 U.S.C. § 78u-5(c)(1)(B)................................................................................................7

15 U.S.C. § 78u-5(i)(1)(D) ...............................................................................................5

**PRELIMINARY STATEMENT**

Plaintiff's answering brief confirms that none of the statements the complaint challenges were fraudulent.  In the years since Cardinal Health agreed to acquire Cordis, defendants have expressed optimism about the acquisition but have been clear about its risks.  Defendants' positive statements are non-actionable puffery and their views about the prospects of the Cordis deal are protected by the PSLRA safe harbor for forward-looking statements.  Nor has plaintiff shown any fraud in Cardinal Health's disclosures about historical results—claims that cannot negate the reality that Cordis contributes only a tiny fraction of Cardinal Health's revenues.

The complaint also fails because it alleges no facts giving rise to the required "strong inference" of scienter.  The "holistic" analysis that plaintiff advocates shows that any such inference is implausible.  Defendants repeatedly disclosed problems at Cordis, negating any suggestion that they intended to deceive.  The factors that plaintiff invokes further point away from scienter.  For example, while two defendants sold stock over the long class period, they increased their total holdings; the other defendants never sold at all.  And although plaintiff focuses on departures of a few defendants, it ignores that the others were promoted to CEO and CFO.  The most compelling inference is that defendants endeavored to provide investors honest information, while going about their careers over several years—not that they committed fraud.

The complaint should be dismissed in its entirety with prejudice.

**ARGUMENT**

**I.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 10(b).**

**A.      The complaint fails to plead facts showing that defendants' statements about Cordis contained any material misrepresentations or omissions.**

The misstatements alleged in the complaint are immaterial as a matter of law.  Def. Br. 14-20.  Plaintiff acknowledges that "questions of materiality may be decided as a matter of law"

in certain circumstances but contends that the complaint here raises factual issues precluding dismissal. Opp. 12. Plaintiff is wrong. Controlling case law and the PSLRA establish that statements like those alleged here, even if true, are legally insufficient to support a fraud claim.[1]

### 1. Vague and subjective "puffing" statements.

Two categories of alleged statements—general positive statements about the advantages of the Cordis acquisition and about the integration—are immaterial puffery. Def. Br. 15-17.

*a. Statements about advantages of acquisition.* Plaintiff contends that statements to the effect that Cordis was "a strategic growth engine" with "an incredible set of assets" and that the combination presented "a great opportunity," Def. Br. 15-16, were material given the importance of the acquisition to Cardinal Health, Opp. 13-14. The cases plaintiff cites, however, show that such vague statements are "generally deemed non-actionable puffery" unless "the proposition at issue can be proven or disproven using standard tools of evidence." *City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 674 (6th Cir. 2005); Opp. 14. In *City of Monroe*, the defendant tire company stated that "*objective data* clearly reinforces our belief that these are high-quality, safe tires." 399 F.3d at 672 (emphasis added). The Sixth Circuit held that this was not "a statement of general optimism or purely opinion" because it "was an assertion of a relationship between data and a conclusion, one that a finder of fact could test against record evidence." *Id.* at 674. But the court dismissed as puffery other statements that could not be verified, including that the defendant employed "[r]igorous testing under diverse conditions" and had products that demonstrated "global consistent quality." *Id.* at 670-71.

---

[1] Citations to "Def. Br." refer to Defendants' Motion to Dismiss, ECF No. 31, PageID # 3225-64; citations to "Opp." refer to Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 32, PageID # 3265-32; citations to "Am. Compl." refer to the Consolidated Amended Complaint, ECF No. 28, PageID # 420-89; and citations to "Ex." are to the exhibits to the Declaration of David S. Bloomfield, Jr., ECF Nos. 29 and 30, PageID # 490-3224.

The vague statements here about the quality of Cordis and its assets, and the value of combining Cordis with Cardinal Health, are like those that the Sixth Circuit in *City of Monroe* found to be puffery.  Plaintiff does not contend that there is any objective metric against which to measure the truth of these statements.  Therefore, they were immaterial as a matter of law.[2]

Plaintiff focuses on certain statements about "the positive impact" of Cardinal Health's RFID technology.  Opp. 16 (citing Am. Compl. ¶¶ 33, 42, 45, 58).  These statements were about benefits of the technology to Cordis's customers and thus could not be rendered false by the alleged internal inventory-management problems at Cordis.  Def. Br. 16; *see, e.g.*, Ex. 6, Mar. 2, 2015 Transcript at 2 (quoted in Am. Compl. ¶ 33) (describing benefits for "large integrated delivery networks"); Ex. 61, Dec. 16, 2016 Transcript at 54 (quoted in Am. Compl. ¶ 58) (discussing benefits for "interventional cardiology lab[s]").  In any event, these statements—such as that the company is "offering innovative solutions in supply chain management"—are the type of non-verifiable puffing statements touting a company's products and capabilities that are also immaterial as a matter of law.  Def. Br. 16-17; *see also City of Monroe*, 399 F.3d at 670-71.

**b. Statements about progress of integration.**  Plaintiff argues that general positive statements that the Cordis integration was "off to a successful start" or "on track" are material because they were "contradicted" by "true facts."  Opp. 17-18 & n.5.  But plaintiff does not allege that the statements were sufficiently specific or could be measured against an objective metric.  In *In re Akorn, Inc. Securities Litigation*, the statements were more specific—that Akorn

---

[2] Plaintiff's other cases are distinguishable.  For example, *In re Cardinal Health Inc. Securities Litigations* involved extensive "specific facts," not vague and general statements.  426 F. Supp. 2d 688, 749 (S.D. Ohio 2006); Opp. 13.  And *Grae* v. *Corrections Corp. of America* involved factual statements about the company's "actual history of performance and its clients' historical and contemporaneous assessments thereof," not opinions about future performance.  No. 3:16-cv-2267, 2017 WL 6442145, at *18 (M.D. Tenn. Dec. 18, 2017); Opp. 15.

3

was "on track with our plans to fully integrate [the business] by the end of this year and on track to realize about $20 million in cost synergies by the end of this year"—and the realization of those near-term goals could be measured against an integration plan.  240 F. Supp. 3d 802, 816 (N.D. Ill. 2017); *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2018 WL 1411129, at *18 (N.D. Cal. Mar. 21, 2018) (statements that integration was "ahead of plan" implied a plan existed when none did); *see* Opp. 18.  By contrast, the statements here "lack[] the sort of quantification necessary to show materiality" and therefore "are mere puffery."  *In re Fed.-Mogul Corp. Sec. Litig.*, 166 F. Supp. 2d 559, 562-63 (E.D. Mich. 2001); *see* Def. Br. 17.[3]

### 2.  Forward-looking statements within the PSLRA's safe harbor.

The safe harbor for "forward-looking statements" protects guidance about earnings accretion and synergies expected from the acquisition, as well as statements about the progress of the integration.  Def. Br. 17-19.  Plaintiff concedes that the guidance is forward-looking, but contends that certain statements about the integration included "past or current facts," such as that the integration was "off to a successful start" or was "on track."  Opp. 20-21.

To begin, such vague statements are puffery as shown above, and puffery is typically considered forward-looking.  *In re Dwight's Piano Co.*, No. 3:04-CV-066, 2005 WL 8161985, at *9 (S.D. Ohio Mar. 17, 2005).  Moreover, despite the snippets of present- or past-tense language that plaintiff quotes, statements about the ongoing integration are forward-looking because they relate to the company's ability to achieve the expected synergies and earnings accretion from the acquisition in the future.  Thus, in *Helwig* v. *Vencor, Inc.*, the Sixth Circuit held that statements

---

[3] Plaintiff cites an August 2016 earnings call, on which a defendant stated that Cardinal Health closed the Cordis acquisition "on time" and "hit [its] integration and performance benchmarks." Ex. 46, Aug. 2, 2016 Transcript at 6 (quoted in Am. Compl. ¶ 54); *see* Opp. 18 n.5.  However, unlike in the cases plaintiff cites, there is no allegation that defendants did not close the acquisition "on time" or hit any existing "benchmarks" as of the time the statement was made.

4

about the impact of already-enacted legislation on earnings, even though relating to "existing condition," were "forward-looking in that they concerned 'assumptions underlying or relating to' economic predictions."  251 F.3d 540, 554 (6th Cir. 2001) (en banc) (quoting 15 U.S.C. § 78u-5(i)(1)(D)).  Similarly, in *Federal-Mogul*, the court held that statements about an ongoing integration, including that it "continues as planned," "while in the present tense, are inherently forward-looking."  166 F. Supp. 2d at 565.  The court reasoned that "a statement about the state of a company whose truth or falsity is discernible only after it is made necessarily refers only to future performance."  *Id.* (quoting *Harris* v. *Ivax Corp.*, 182 F.3d 799, 804-05 (11th Cir. 1999)).  So too, here, the statement that the integration was "on track" is forward-looking because it is inherently a prediction of whether the integration will succeed in meeting its future goals.[4]

Plaintiff also argues that defendants' statements fall outside the safe harbor because they were not accompanied by "meaningful" cautionary language.  Opp. 22-23.  Plaintiff is wrong.  Defendants warned of specific risks and uncertainties relating to the acquisition, such as that Cardinal Health might not be able to "successfully integrate the acquired business into Cardinal Health's operations" or "achieve the expected synergies as well as accretion in earnings."  Def. Br. 18 (citing Ex. 5, Mar. 2, 2015 Form 8-K at Ex. 99.1).[5]  Such disclosures of specific risks satisfy the PSLRA.  *See Helwig*, 251 F.3d at 559 ("[W]hen an investor has been warned of risks

---

[4] The cases plaintiff cites (Opp. 21) involved specific representations relating to historical performance and are thus distinguishable.  *See Willis* v. *Big Lots, Inc.*, No. 2:12-cv-604, 2016 WL 8199124, at *14-16 (S.D. Ohio Jan. 21, 2016) (statements relating to the financial results and performance in the *prior quarter* were not forward-looking); *Fidel* v. *AK Steel Holding Corp.*, No. C-1-00-320, 2002 WL 31545952, at *19-20 (S.D. Ohio Sept. 19, 2002) (same).

[5] Defendants' opening brief collects other examples of disclosures containing such cautionary language, Def. Br. 18, and numerous other examples are included in the documents that plaintiff cites in the complaint, *see, e.g.*, Ex. 21, Aug. 13, 2015 Form 10-K at 2, Ex. 99.1; Ex. 35, Feb. 2, 2016 Form 10-Q at 1, Ex. 99.1; Ex. 52, Aug. 12, 2016 Form 10-K at 2, Ex. 99.1; Ex. 68, Feb. 7, 2017 Form 10-Q at 1, Ex. 99.1; Ex. 80, Aug. 10, 2017 Form 10-K at 2, Ex. 99.1.

of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision . . . ." (quoting *Harris*, 182 F.3d at 807)).  A company need not "detail every facet or extent of [a] risk to have adequately disclosed the nature of the risk."  *Miller* v. *Champion Enters. Inc.*, 346 F.3d 660, 678 (6th Cir. 2003).

Nor can plaintiff challenge the "meaningfulness" of the warnings because they remained similar over time.  Opp. 23.  Plaintiff's cases concern situations where the cautionary language "remained the same even while the problem changed," *Slayton* v. *American Express Co.*, 604 F.3d 758, 772-73 (2d Cir. 2010), or where the warnings grew "more cursory and abstract" as the risks became more concrete, *Helwig*, 251 F.3d at 559.  Plaintiff here does not allege any new facts that changed the nature of the risks.  Even accepting plaintiff's claim that defendants were aware of a "Dark Period" for Cordis's electronic inventory management system in the summer of 2017 that required Cordis to use manual tracking, Opp. 23, this situation would have only impacted Cardinal Health's ability to achieve the expected synergies and earnings accretion from the acquisition, which were the very risks that defendants disclosed from the outset.

Plaintiff's reliance on *In re Envision Healthcare Corp. Securities Litigation*, No. 3:17-cv-01112, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019), is misplaced.  In that case, the defendants warned of "the risk of changes in volume, payor mix and third-party reimbursement rates" at a time when, the plaintiff alleged, the company was "already experiencing changes in payor mix or third-party reimbursement rates."  *Id.* at \*16.  Here, there is no allegation that the disclosed risks about Cardinal Health's ability to "successfully integrate" Cordis or "achieve the expected synergies" could have already come to pass when the integration was still ongoing.  Indeed, the statements that plaintiff challenges stretch back to the day that Cardinal Health announced the acquisition (e.g., Am. Compl. ¶ 31)—certainly before any risks could materialize.

Finally, plaintiff argues that defendants are "not entitled to safe harbor protection" because any forward-looking statements were made with "actual knowledge" of falsity. Opp. 23-24. But as plaintiff acknowledges earlier in its brief, *id.* at 22, the PSLRA safe harbor applies if *either* (A) the forward-looking statement is accompanied by meaningful cautionary statements, *or* (B) the plaintiff fails to prove that the forward-looking statement was made with "actual knowledge" that it was false or misleading. 15 U.S.C. § 78u-5(c)(1)(A)-(B). Therefore, "if the statement qualifies as 'forward-looking' and is accompanied by sufficient cautionary language, a defendant's statement is protected regardless of the actual state of mind." *Miller*, 346 F.3d at 672; *see also Envision*, 2019 WL 6168254, at *15 ("[T]he state of mind is irrelevant if the forward-looking statement is accompanied by meaningful cautionary language."). Because defendants' cautionary language here was meaningful, the safe harbor applies.

### 3. Accurate statements of historical results.

Plaintiff argues that the financial results disclosed in 2017, although accurate, were misleading because they were not accompanied by disclosure of inventory problems at Cordis. Opp. 20. As defendants showed, however, "[t]he disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." Def. Br. 19 (quoting *In re Sofamor Danek Grp.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997)).[6]

Plaintiff claims that this case is not like *Sofamor Danek* because the defendants there "stayed silent" about problems that could impact future results, whereas defendants here disclosed the company missed its accretion target for Cordis in part due to inventory write-offs. Opp. 19-20 & n.7. But plaintiff does not explain how disclosure of some problems could be

---

[6] *See also In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (results not misleading even though company knew profits came from sale of defective products); *City of Pontiac Gen. Emps.' Ret. Sys.* v. *Stryker Corp.*, 865 F. Supp. 2d 811, 823-24 (W.D. Mich. 2012) (results not misleading even though they "were achieved by cutting corners on quality controls").

worse than no disclosure. Nor does plaintiff allege how any undisclosed information would have contradicted the disclosures that defendants did make or render those disclosures misleading. The cases plaintiff cites (Opp. 19-20) involved disclosures that were directly contradicted by undisclosed information. *See In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 1007 (S.D. Ohio 2008) (statements that accounts receivable doubled were misleading where defendants knew receivables were uncollectible); *Wilkof* v. *Caraco Pharm. Labs., Ltd.*, No. 09-12830, 2010 WL 4184465, at *5 (E.D. Mich. Oct. 21, 2010) (statements that company was compliant with FDA practices were contrary to communications from FDA). Thus, *Sofamor Danek* controls here: the company's financial results did not become misleading because defendants are alleged to have known other information that could cause future results to become less favorable.

### B.    The complaint fails to plead facts showing that the company's financial statements contained material misrepresentations or omissions that caused plaintiff's alleged economic loss.

Plaintiff claims that Cardinal Health's financial statements were false or misleading because the company failed to take inventory write-offs as Cordis's inventory losses emerged. Opp. 25-28. This claim fails to plead either materiality or loss causation. Def. Br. 20-22.

#### 1.    Immateriality.

Plaintiff admits that it has not quantified the impact of the allegedly missing inventory write-offs on Cardinal Health's financial statements and acknowledges that "Cordis's annual revenues were only a small part of Cardinal's total revenue." Opp. 25, 27. Instead, plaintiff argues that materiality can be inferred from the supposed importance of the Cordis acquisition and from Cardinal Health's miss of its earnings target in the third quarter of 2018. *Id.* at 25-27.

Plaintiff's arguments find no support. As plaintiff's cases show, where a business contributes only a small portion of a company's revenues, the plaintiff must plead specific facts showing that the business was nonetheless material. For example, in *Indiana Public Retirement*

8

*System* v. *SAIC, Inc.*, the plaintiff showed that the failure to disclose an investigation of a contract "worth a fraction of [the company's] yearly revenues" could be material because it "presented a market opportunity" valued at 20 percent of yearly revenues. 818 F.3d 85, 96 (2d Cir. 2016). The other cited cases concerned an issue affecting "a particularly noteworthy segment" contributing a significant portion of the company's overall revenue. *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 737-38 (S.D.N.Y. 2015); *Litwin* v. *Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2016) (omissions related to "a particularly important segment," and business at issue was "reasonably likely to have a material effect on the revenues of [that] segment and, in turn, on [the company] as a whole").

Here, plaintiff does not explain how a problem at Cordis, which had annual revenues of $780 million when Cardinal Health agreed to acquire it, would have a material effect on the $11.4 billion revenues of the Medical segment, let alone the $100 billion-plus revenues of Cardinal Health as a whole. Def. Br. 3, 21. Indeed, when Cardinal Health took an increase in its inventory reserve relating to Cordis later in 2018—an increase of $71 million (from $76 million to $147 million), Am. Compl. ¶ 91—it amounted to only 0.6% of the company's total inventories and 0.17% of its total assets that year. *See* Ex. 102, Aug. 22, 2018 Form 10-K at 45, 49.

Plaintiff argues that this Court's decision in *I.B.E.W.* v. *Limited Brands, Inc.*, 788 F. Supp. 2d 609 (S.D. Ohio 2011), is inconsistent with a purely "quantitative analysis" of materiality. Opp. 27. But this Court in *I.B.E.W.* found materiality was lacking where the plaintiff had "not plausibly pleaded a scenario in which a failed $18 million investment . . . was material to the economic condition of a company" that had $10 billion in sales and $700 million in profits. 788 F. Supp. 2d at 636. So too here, plaintiff does not plead how inventory write-offs of unspecified amounts at Cordis could be material to a company the size of Cardinal Health.

Finally, plaintiff's hindsight argument based on the size of Cardinal Health's earnings miss in the third quarter of 2018 does not salvage its claim. Nothing about the miss—which Cardinal Health attributed to a negative change in its effective tax rate relating primarily, but not entirely, to Cordis, Def. Br. 11-12—suggests that the company should have taken a write-off for Cordis inventory in any prior quarter, much less that any write-off would have been material. Indeed, the statement from Cardinal Health's CEO that the complaint cites explained that the issues at Cordis included both operating costs and inventory reserves that came in higher than expected in the third quarter—not that there had been any failure to take reserves in the prior quarters. *Id.* Plaintiff thus has not pled any plausible basis to conclude that Cardinal Health's financial statements were materially false or misleading.[7]

### 2. No loss causation.

Plaintiff acknowledges that Cardinal Health never admitted that it should have taken inventory write-offs nor restated its financials. Opp. 51-52. Plaintiff claims the failure to take write-offs nevertheless affected the company's stock price, which declined after disclosures of Cordis issues in August 2017 and May 2018. *Id.* But plaintiff does not explain how those declines, which followed earnings announcements, could have been caused by write-offs that Cardinal Health did not take and never suggested it had to take. Plaintiff's theory "rests entirely on speculation and is substantially undercut both by the lack of any financial restatements on [Cardinal Health's] part and by the willingness of third-party auditors to continue to certify [Cardinal Health's] GAAP compliance." *Ind. State Dist. Council of Laborers & Hod Carriers*

---

[7] Plaintiff also suggests that materiality can be inferred because analysts were "disappointed" in Cardinal Health's earnings results. Opp. 26. In the case plaintiff cites, *City of Pontiac General Employees' Retirement System* v. *Lockheed Martin Corp.*, 875 F. Supp. 2d 359 (S.D.N.Y. 2012), however, the court found materiality based not just on analyst disappointment, but on specific allegations that the division at issue was the company's "fastest growing business" and that projected profit for the division decreased 11-12 percent. *Id.* at 368-69.

*Pension & Welfare Fund* v. *Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009); Def. Br. 21-22.

Plaintiff's cited cases do not change this conclusion.  Opp. 51-52.  In those cases there was a clear linkage between the alleged misrepresentations and the subsequent revelations.  *See Ross* v. *Abercrombie & Fitch Co.*, 501 F. Supp. 2d 1102, 1118-19 (S.D. Ohio 2007) (concealed inventory and gross margin figures were subsequently disclosed); *Cardinal Health*, 426 F. Supp. 2d at 758-61 (misrepresentations about revenue later revealed by restatements and admissions of accounting errors).  Any such linkage is absent here, as there was never a revelation that Cardinal Health's financial statements were inaccurate.  Without such a revelation, any financial inaccuracy could not have caused plaintiff's loss.

### C.    The complaint fails to plead facts showing that defendants acted with scienter in making any of the allegedly false or misleading statements.

The complaint should be dismissed for the independent reason that it fails to plead scienter with the required particularity.  Def. Br. 22-28.  Plaintiff acknowledges that the inference of scienter must be "cogent and at least as compelling" as competing inferences.  Opp. 29.  As plaintiff also notes, "*all* of the facts alleged, taken collectively"—not individual allegations in isolation—must "give rise to a strong inference of scienter."  *Id.*  The totality of the allegations here undermine any inference of scienter.[8]

#### 1.    Disclosures of problems with the Cordis integration throughout the class period negate an inference of scienter.

Plaintiff asks the Court to infer that defendants intentionally misled investors to inflate Cardinal Health's stock price.  Opp. 47.  This inference is not compelling.  Defendants made

---

[8] Plaintiff identifies nine factors that courts have considered in a holistic analysis, but plaintiff only even attempts to argue that four of them are satisfied here.  Opp. 29-30.  The absence of a factor, although not dispositive, undermines an inference of scienter.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 473 (6th Cir. 2014); *see also Loc. 295/Loc. 851 IBT Emp. Grp.* v. *Fifth Third Bancorp*, 731 F. Supp. 2d 689, 724 (S.D. Ohio 2010).

repeated disclosures about problems at Cordis, even when they would adversely impact the stock price. Def. Br. 22-25; *see* Am. Compl. ¶ 70 (August 2017 disclosure caused 8 percent stock-price decline). "The fact that the negative statements were made throughout the class period suggests an inference of honest and frank behavior on the part of Defendants, as opposed to an intent to commit fraud and a scheme to inflate the stock price." *I.B.E.W.*, 788 F. Supp. 2d at 631.

Plaintiff argues that "partial disclosures" cannot negate scienter. Opp. 36-39. This Court rejected such an argument in *I.B.E.W*: although plaintiffs alleged that the defendants "did not disclose all of the information they had" about problems at a new distribution center, the Court held that "any inference of fraud that can be drawn from these allegations is essentially negated by the fact that . . . Defendants provided information to their investors concerning the problems at the distribution center." 788 F. Supp. 2d at 630. So too here, while plaintiff alleges that defendants should have disclosed *more* negative information about Cordis, the repeated negative disclosures that defendants did make refute an inference that they intended to deceive.

The cases plaintiff cites do not undermine this conclusion. Opp. 37. In *Kyrstek* v. *Ruby Tuesday, Inc.*, scienter was adequately pled because "disclosing the good while withholding the bad . . . suggests deliberate concealment." No. 3:14-cv-01119, 2016 WL 1274447, at *9 (M.D. Tenn. Mar. 31, 2016). The case did not involve disclosures of *negative* information like this case.[9] *Setzer* v. *Omega Healthcare Investors, Inc.* likewise involved misleading positive disclosures, as well as intentional concealment. Officers of a real estate investment trust reassured investors that the company's largest tenant was paying rent, but made a "conscious

---

[9] The finding of scienter in *Sanchez* v. *Centene Corp.*, Opp. 37, was also based on allegations of misleading positive statements: the defendants failed to disclose material information about the company's reserves while "instead reassuring investors on the stability and adequacy of such reserves on multiple occasions." 407 F. Supp. 3d 831, 845-47 (E.D. Mo. 2019).

12

decision" not to disclose that the company loaned the tenant money to make those payments. 968 F.3d 204, 215 (2d Cir. 2020).  There are no allegations here that defendants consciously concealed such a specific fact.  And in *S.E.C.* v. *Mozilo*, any disclosures that could have undermined scienter were "scattered among various SEC filings and earnings calls, and buried in thousands of pages of prospectus supplements."  No. CV 09-3994-JFW (MANx), 2010 WL 3656068, at \*19 (C.D. Cal. Sept. 16, 2010).  Plaintiff here alleges that the negative disclosures were prominent enough to impact Cardinal Health's stock price.  *See* Am. Compl. ¶¶ 69-70.

### 2.   Plaintiff identifies no factual information to support its scienter claim.

Plaintiff argues the Court can infer scienter because defendants disregarded information about Cordis before speaking.  Opp. 31-35.  But the complaint does not identify documents or sources supporting this alleged knowledge.  Def. Br. 24-25.  "[G]eneralized statements cannot substitute for *specific* facts through which a factfinder can strongly infer that the Defendants themselves knew of or recklessly disregarded the falsity of [their statements]."  *Konkol* v. *Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009).  Even plaintiff's cases involved specific allegations showing the basis of the defendants' knowledge.  Opp. 31-32.  For example, in *Grae*, the plaintiff "provided a concrete, plausible explanation of how and why [the company's] executives would have been aware of facts contradicting their public statements," and the complaint alleged "dozens of deficiencies that were affirmatively brought to the company's attention."  2017 WL 6442145, at \*21; *see also Frank* v. *Dana Corp.*, 646 F.3d 954, 959-60 (6th Cir. 2011) (complaint alleged "internal reports and information").[10]

---

[10] Plaintiff's out-of-circuit cases (Opp. 31 n.12) likewise involved specific facts showing defendants' knowledge.  *See, e.g.*, *Gauquie* v. *Albany Molecular Rsch., Inc.*, No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591, at \*2 (E.D.N.Y. July 26, 2016) (witness detailed company's awareness of power outage and resulting contamination); *Roberti* v. *OSI Sys., Inc.*, No. CV 13-9174-MWF (VBKx), 2015 WL 1985562, at \*13 (C.D. Cal. Feb. 27, 2015) (defendants had "actual access" to the database that listed problems directly contradicting public statements).

Without specific facts to allege, plaintiff resorts to generalized arguments that scienter should be inferred because of the supposed importance of Cordis to Cardinal Health or because of defendants' high-level positions at the company. These arguments fail.

First, plaintiff invokes the "core operations" doctrine to argue that the Court should presume knowledge. Opp. 32-33. This doctrine does not apply because of Cordis's small size within the company. *See, e.g.*, *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 970 (S.D. Ohio 2009) (doctrine did not apply where business was "just 2.8 percent of Huntington's total assets"); *Stein* v. *U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, 2020 WL 3584800, at *39 (E.D. Tenn. June 30, 2020) (doctrine did not apply where allegations related to issue that affected a customer that accounted for 10 percent of business).

Second, plaintiff claims scienter should be inferred because some defendants signed Sarbanes-Oxley certifications. Opp. 49-50. But a Sarbanes-Oxley certification does not relieve plaintiff of its obligation to "allege facts to suggest that [defendants] had reason to know or should have suspected accounting irregularities or other 'red flags' at the time they signed the certifications." *Ley* v. *Visteon Corp.*, 543 F.3d 801, 812 (6th Cir. 2008). Consistent with this principle, the cases plaintiff cites (Opp. 49-50) involved allegations that the certifiers knew specific facts contradicting their statements. *See, e.g.*, *Garden City Emps.' Ret. Sys.* v. *Psychiatric Sols., Inc.*, No. 3:09-00882, 2011 WL 1335803, at *51, *56 (M.D. Tenn. Mar. 31, 2011) (certifiers were aware of "rising malpractice expenses and declining staffing levels" that were contrary to their statements); *In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 742-43 (E.D. Mich. 2007) (certifiers "knew about the improper accounting practices"). By contrast, plaintiff's argument here is that defendants were in a position to receive material information about Cordis. Opp. 49. But plaintiff fails to identify any specific information that defendants actually knew.

14

### 3. The timing of statements does not support an inference of scienter.

Plaintiff also argues that the Court should infer scienter because the last alleged misstatement came "just seven weeks" before the "revelation" of supposedly "inconsistent" information. *Id.* at 39. The Sixth Circuit has found that such timing can be, at most, "minimally" probative of scienter, *Dougherty* v. *Esperion Therapeutics, Inc.*, 905 F.3d 971, 981 (6th Cir. 2018), and it could not tip the balance of factors weighing against scienter here. Moreover, the theory provides no basis to infer scienter for the vast majority of the alleged misstatements, which date back to March 2015. Am. Compl. ¶ 31. This over three-year gap is far beyond anything the Sixth Circuit has considered in a scienter analysis. *See City of Monroe*, 399 F.3d at 684, 687-88 (four-month gap "too distant in time to draw an adverse inference"); *Doshi* v. *Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016) (86-day gap too long).

In any event, there is no inconsistency in the statements plaintiff invokes. At an investor conference on March 13, 2018, an analyst asked about the company's previously disclosed issues with Cordis. Ex. 96, Mar. 13, 2018 Transcript at 3 (cited in Am. Compl. ¶ 82). Cardinal Health's then-CFO, Gomez, acknowledged that there had been "a lot of challenges along the way," including "write-offs of inventory because we didn't have enough visibility in all the overseas markets with respect to levels." *Id.* at 3-4. He also disclosed that Cardinal Health had "gone live" with a new IT platform "to enable us to have better visibility into the supply chain," but said improvements were just "starting." *Id.* Gomez concluded with mild optimism that Cordis would be "getting back to the growth trajectory that we want," while cautioning that "the growth, the top line growth, is not translating to the bottom line." *Id.*

Plaintiff argues that these remarks were contradicted by Cardinal Health's May 3, 2018 announcement that it missed its earnings target. Opp. 40. That disclosure, however, was consistent with Gomez's caution that "the bottom line"—i.e., earnings—was not improving.

15

Ex. 96, Mar. 13, 2018 Transcript at 3-4. The other statements made on May 3, including that Cardinal Health had implemented new ways to manage Cordis inventory, Opp. 41, are also in line with Gomez's statements that the company previously lacked "enough visibility" into inventory and had gone live with a new IT platform. Ex. 96, Mar. 13, 2018 Transcript at 4. Plaintiff's theory that defendants made contradictory statements in quick succession is thus supported by neither the law nor the alleged facts.

### 4. Allegations that the individual defendants' compensation was tied to Cardinal Health's stock price do not support an inference of scienter.

Plaintiff next attempts to show scienter by claiming that their stock-based compensation incentivized defendants to inflate Cardinal Health's stock price. Opp. 47-48. But plaintiff offers no response to defendants' argument that "any inference of fraud that could be drawn based on the motive of Defendants to keep the stock price high, and thus increase their own compensation, is effectively negated by the fact that . . . they were releasing negative information about [Cordis] throughout that class period that possibly resulted in substantial declines in [Cardinal Health's] stock price." *I.B.E.W.*, 788 F. Supp. 2d at 631; Def. Br. 25.

### 5. Allegations that some of the individual defendants sold stock during the class period do not support an inference of scienter.

Plaintiff also contends that the Court should infer scienter because two of the five defendants, Barrett and Casey, sold Cardinal Health stock during the class period. Opp. 43-47. This allegation does not show scienter for three reasons. Def. Br. 25-27.

First, by the end of the class period, Barrett and Casey both owned more shares than they owned at the beginning. *Id.* at 26. Plaintiff claims that stock acquisitions should not be considered because the shares were acquired through "costless option grants" or through option exercises at below-market prices. Opp. 45. But "the decisive question in assessing whether an insider's sales are indicative of scienter is how many shares the insider sold during the class

16

period relative to the total number of shares that he or she *could have* sold." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (considering zero-cost shares acquired in scienter analysis); *Willis*, 2016 WL 8199124, at *33 (noting that shares acquired as "part of the normal course of compensation" should be considered); *Cardinal Health*, 426 F. Supp. 2d at 735 (finding defendant's retention of shares acquired through option exercises weighed against scienter). The Court should, therefore, consider all shares defendants acquired, which show that their sales do not give rise to an inference of scienter.[11]

Second, it was not unusual for these defendants to trade at some point during the over three-year class period. Def. Br. 26. Plaintiff cites cases that involved similarly long class periods, Opp. 45-46, but there were specific reasons to believe the sales there were suspicious despite the long class periods. For example, in *Cardinal Health*, the court recognized that "a broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter," but held that this principle did not apply where one defendant's class period sales exceeded his pre-class period sales "by more than 600 percent," another sold shares after every alleged false statement, and two others sold over 90 percent of their holdings during the class period. 426 F. Supp. 2d at 731-35.[12] Nothing like that is alleged here. Moreover, all the sales here occurred early in the class period and well before the alleged corrective disclosures. Def. Br. 26-27. Plaintiff claims, citing *In re SmarTalk Teleservices, Inc. Securities Litigation*, 124 F.

---

[11] Plaintiff cites *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999) (Opp. 45), but that decision has been limited or rejected by other courts within its circuit. *See, e.g.*, *Nguyen* v. *New Link Genetics Corp.*, 297 F. Supp. 3d 472, 496 (S.D.N.Y. 2018) (seeing "no compelling reason" why stock options "should be treated any differently" in assessing scienter).

[12] *See also In re Enron Corp.*, No. H-01-3624, 2003 WL 21418157, at *3 (S.D. Tex. Apr. 24, 2003) (defendants sold while serving on a committee that was presented with warning signs); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 403 (S.D.N.Y. 2003) (defendant sold 67 percent of holdings at a discount to "hedge against the impending collapse in the share price").

Supp. 2d 527, 541 (S.D. Ohio 2000), that the timing of the sales relative to the alleged false statements, and not the corrective disclosures, is what matters. Opp. 46. But *SmarTalk* is inapplicable because, unlike here, the defendants sold significant portions of their stock at "peaks in the [company's] stock price." 124 F. Supp. 2d at 542; *see* Am. Compl. ¶ 112.

Third, three of the five individual defendants sold no Cardinal Health stock during the class period. Def. Br. 27. Plaintiff responds that "personal financial gain" is not necessary for scienter, Opp. 47, but this argument misses the point. A scenario in which only two of five defendants sold over a long class period is not consistent with an inference that the defendants schemed together to defraud investors to inflate Cardinal Health's stock price. *See, e.g.*, *Bailey* v. *Esperion Therapeutics, Inc.*, No. 18-11438, 2019 WL 3296235, at *4 (E.D. Mich. Feb. 19, 2019) (because "the CEO and CFO would have been essential participants in any scheme," their failure to trade undermines any inference of scienter based on the defendants who did trade).

Finally, plaintiff argues that the Court should disregard public filings showing stock acquisitions that are not alleged in the complaint. Opp. 45. But as shown in Defendants' Opposition to Plaintiff's Motion to Strike, such information is properly considered on a motion to dismiss in a securities case. *See, e.g.*, *Huntington*, 674 F. Supp. 2d at 969-70. Indeed, the information that plaintiff pleads about defendants' stock sales all comes from such public filings. *Compare* Am. Compl. ¶ 112 (alleging stock sales) *with* Exs. 16, 24, 27, 50-51, 60, 69 (public filings reporting these stock sales). Plaintiff cannot pick and choose which public information about defendants' stock holdings to introduce. The Court is entitled to the full picture, which refutes plaintiff's claim.[13]

---

[13] Despite filing a motion to strike, plaintiff does not mention it in any other part of its opposition to defendants' motion to dismiss. Defendants respectfully submit that the motion to strike should be denied, but it has no impact on whether this motion to dismiss should be granted.

**6. Allegations that some of the individual defendants left their positions during the class period do not support an inference of scienter.**

Plaintiff also tries to show scienter by alleging that three of the five defendants left Cardinal Health during the class period. Opp. 49 n.19. But the one case plaintiff cites in support of this argument is inapposite. *Id.* at 49. There, a defendant whose mismanagement led to many of the false statements resigned on the last day of the class period, and another defendant resigned a few months later in the wake of a government investigation into his insider trading. *Willis*, 2016 WL 8199124, at *34. No such allegations are made here. And while plaintiff argues the Court cannot consider that the two other defendants were promoted to CEO and CFO during the class period (Opp. 49 n.19), plaintiff alleges these promotions in the complaint. Am. Compl. ¶¶ 15-16. It is not plausible to conclude that three defendants were somehow forced to resign because of their culpability for a fraud, while the other two alleged participants in that fraud were promoted to the highest positions at the company. *See* Def. Br. 27.

**7. Accounting adjustments made after the class period do not support an inference of scienter.**

Plaintiff also argues that the Court should draw an inference of scienter from the "sheer size" of a goodwill impairment charge and reserve increase that Cardinal Health took in August 2018—three months after the end of the class period, and based only in part on inventory issues at Cordis. Opp. 41-43. As defendants explained, however, the Sixth Circuit has made clear that the magnitude of a subsequent accounting adjustment does not support an inference of scienter. Def. Br. 28 (citing *Fidel* v. *Farley*, 392 F.3d 220, 231-32 (6th Cir. 2004)).

Plaintiff responds that *Fidel* predates precedents establishing a "holistic approach" to assessing scienter. Opp. 43. But defendants rely on the well-established principles that fraud cannot be pled through hindsight and that accounting errors alone do not show scienter. *Fidel*, 392 F.3d at 231. These principles remain vital. *See, e.g.*, *Boynton Beach Firefighters' Pension*

19

*Fund* v. *HCP, Inc.*, No. 3:16-cv-1106, 2019 WL 6251435, at *6 (N.D. Ohio Nov, 22, 2019) (rejecting allegations that "rest on nothing more than hindsight" (quoting *Fidel*, 392 F.3d at 232)); *In re Diebold Sec. Litig.*, No. 5:05CV2873, 2008 WL 3927467, at *10 (N.D. Ohio Aug. 22, 2008) ("[T]he magnitude of the financial fraud is not a factor in determining defendants' scienter." (citing *Fidel*, 392 F.3d at 231)); *see also Loc. 295/Loc. 851 IBT*, 731 F. Supp. 2d at 724 ("Accounting violations, 'standing alone, do not create an inference of scienter, much less a strong one.'" (quoting *PR Diamonds, Inc.* v. *Chandler*, 364 F.3d 671, 694 (6th Cir. 2004))).

Plaintiff relies principally on the Sixth Circuit's decision in *Frank* v. *Dana Corp.* for the proposition that the "magnitude of the impact of misrepresented or concealed facts is relevant to a court's holistic analysis of scienter." Opp. 41. But the portion of *Dana* that plaintiff cites is a summary of the plaintiffs' allegations. *See Dana*, 646 F.3d at 960. The court did not include the magnitude of the fraud in its recitation of factors that are "usually relevant" to scienter, *id.* at 959 n.2 (citing *Helwig*, 251 F.3d at 552), and the court's "holistic" assessment of scienter focused on other allegations, *id.* at 961-62. Indeed, plaintiff here concedes that the magnitude of the fraud is not one of the factors that may be "probative of scienter" in this Circuit. Opp. 29-30.

All of the factors discussed above point away from an inference of scienter. Plaintiff's hindsight allegation about the supposed magnitude of the fraud cannot tip the balance.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 20(a) OR § 20A.

The complaint fails to state a § 10(b) claim for the reasons set forth above and in defendants' opening brief. Plaintiff does not contest that, if the § 10(b) claim is dismissed, the secondary-liability claims under §§ 20(a) and 20A must also be dismissed. Opp. 53; Def. Br. 29.

### CONCLUSION

The consolidated amended complaint should be dismissed with prejudice.

February 5, 2021

Of Counsel:

William Savitt
Graham W. Meli
Anitha Reddy
Alexandra P. Sadinsky
WACHTELL LIPTON ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Tel:  (212) 403-1000
Fax:  (212) 403-2000

/s/ Robert W. Trafford by
David S. Bloomfield, Jr.
Robert W. Trafford (0024447)
Trial Attorney
David S. Bloomfield, Jr. (0068158)
Kirsten R. Fraser (0093951)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street, Suite 2800
Columbus, OH  43215
Tel.:  (614) 227-2000
Fax:  (614) 227-2100
Email:  rtrafford@porterwright.com
            dbloomfield@porterwright.com
            kfraser@porterwright.com

*Attorneys for Defendants Cardinal Health, Inc.,
George S. Barrett, Donald M. Casey, Jr., Michael
C. Kaufmann, Jorge M. Gomez, and David J.
Wilson*

21

## CERTIFICATE OF SERVICE

I certify that on this 5th day of February, 2021, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following:

Of Counsel:

ROBBINS GELLER RUDMAN
 & DOWD LLP
Spencer A. Burkholz (admitted PHV)
Laurie L. Largent (admitted PHV)
Jennifer N. Caringal (admitted PHV)
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel.:  (619) 231-1058
Fax:  (619) 231-7423
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
jcaringal@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

JOSEPH F. MURRAY
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
E-mail:  murray@mmmb.com

*Local Counsel for Lead Plaintiff*

*/s/ David S. Bloomfield, Jr.*
David S. Bloomfield, Jr. (0068158)