Case: 2:19-cv-03347-EAS-EPD Doc #: 94-11 Filed: 07/22/22 Page: 1 of 4  PAGEID #: 6634

# EXHIBIT 10

Page 1

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

------------------------------------------

LOUISIANA SHERIFFS' PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated,
    Plaintiffs

   v.

CARDINAL HEALTH, INC., GEORGE S. BARRETT, DONALD M. CASEY, JR., MICHAEL C KAUFMANN, JORGE M. GOMEZ, and DAVID J. WILSON,
    Defendants

Case No. 2:19-CVL-03347

------------------------------------------

REMOTE VIDEO DEPOSITION OF
Nicholas Smith, Individually and as Corporate Designee of Columbia Management Investment Advisers
May 26, 2022
Lead: Alexandra P. Sadinsky, Esquire
Firm: Wachtell Lipton Rosen & Katz

FINAL COPY
JANE ROSE REPORTING 1-800-825-3341

Page 2

A P P E A R A N C E S

ATTORNEYS FOR PLAINTIFF

    J. Marco Janoski Gray, Esquire
    Laurie L. Largent, Esquire
    Jennifer N. Caringal, Esquire
    Megan A. Rossi, Esquire
    Robbins Geller Rudman & Dowd LLP
    655 West Broadway
    Suite 1900
    San Diego, California 92101
    (619) 239-3247

ATTORNEYS FOR DEFENDANTS

    Alexandra P. Sadinsky, Esquire
    Wachtell Lipton Rosen & Katz
    51 West 52nd Street
    New York, New York 10019
    (212) 403-1000

Page 3

A P P E A R A N C E S  C O N T I N U E D

ATTORNEYS ALSO ON BEHALF OF DEFENDANTS

    Bide B. Akande, Esquire
    Porter Wright Morris & Arthur LLP
    321 North Clark Street
    Suite 400
    Chicago, Illinois 60654
    (312) 756-8500

   -AND-

    Lindsey M. Woods, Esquire
    Porter Wright Morris & Arthur LLP
    41 South High Street
    Suites 2800 - 3200
    Columbus, Ohio 43215
    (614) 227-2000

Page 4

A P P E A R A N C E S  C O N T I N U E D

ATTORNEYS FOR COLUMBIA MANAGEMENT INVESTMENT ADVISERS LLC & THE DEPONENT

    Michael W. DeWitt, Esquire
    DeWitt Law, LLC
    4200 Regent Street
    Suite 200
    Columbus, Ohio 43219
    (614) 683-2683

ALSO PRESENT:

    Max Obmascik, Paralegal
      Wachtell Lipton Rosen & Katz

JANE ROSE REPORTING
    74 Fifth Avenue
    New York, New York 10011
    1-800-825-3341
    Joan V. Cain, Court Reporter
    Marvin Oltman, Videographer

LA Sheriffs' Pension
v. Cardinal Health Inc.

FINAL

May 26, 2022
Nicholas Smith

Page 5

## TABLE OF CONTENTS

Witness:
Nicholas Smith

Examination
By Ms. Sadinsky............................Page 8

Reporter Certificate.......................Page 360

Notice to Read and Sign....................Page 362

Index of Exhibits..........................Page 364

Page 7

Morris & Arthur for the defendants.

MR. JANOSKI:  If that's it for your side, this is Marco Janoski from Robbins Geller on behalf of lead plaintiff and the proposed class.  I'm joined here in the room, but off camera, by Laurie Largent, Jen Caringal, and Megan Rossi.

MR. DeWITT:  Okay.  Michael DeWitt on behalf of the deponent CMI and Mr. Smith.  DeWitt Law.  Sorry.

THE COURT REPORTER:  Good morning.  My name is Joan Cain.  I am a court reporter and a Notary Public in the Commonwealth of Virginia.  I am the deposition officer for today's deposition.

All parties in today's deposition are appearing remotely to comply with the guidance of the Centers for Disease Control in response to the COVID-19 pandemic occurring in our country at this time.  I have collected everyone's appearances off the record, and they will appear on the appearance page of the transcript.

Before we proceed, I will ask counsel for today's deposition to stipulate on the record that this deposition officer may swear in the deponent, even though I am not in the physical presence of the deponent, and that there is no objection to that at

Page 6

                P R O C E E D I N G S
                        - - -
                  12:03 p.m. EDT
                  May 26, 2022
                        - - -
THE VIDEOGRAPHER:  Here begins Media No. 1, Volume 1 in the deposition of Nick Smith in the matter of Louisiana Sheriffs' Pension & Relief Fund versus Cardinal Health, Incorporated.

Today's date is May 26th, 2022.  The time is now 12:04 p.m. Eastern Time.

My name is Marvin Oltman, the legal video specialist.  The court reporter is Joan Cain.  We are both with Jane Rose Reporting, New York, New York.

Will counsel please identify themselves and state who they represent, beginning with the party noticing this proceeding, and please remember to speak slowly for the court reporter today.  Thank you.

MS. SADINSKY:  Alexandra Sadinsky from Wachtell Lipton for the defendants.

MS. WOODS:  Lindsey Woods from Porter Wright Morris & Arthur for the defendants.

MR. AKANDE:  Bide Akande from Porter Wright

Page 8

this time, nor will there be an objection to it at a future date.

Let's start with the noticing attorney, please.

MS. SADINSKY:  We so stipulate.

MR. JANOSKI:  So stipulated by plaintiffs.

MR. DeWITT:  Stipulated by deponent.

NICHOLAS SMITH, having been duly sworn under penalties of perjury by the Notary Public, was examined and did testify as follows:

THE COURT REPORTER:  Thank you.  Please begin.

MS. SADINSKY:  Thank you.

EXAMINATION BY COUNSEL FOR DEFENDANTS
BY MS. SADINSKY:

Q   Hi, Mr. Smith.

MS. SADINSKY:  Before we begin, I want to state on the record the challenges we faced with getting a timely, complete production from Columbia.  We served a document subpoena on February 1st, 2022.  Columbia produced documents within a month of the subpoena.  After review, there were several notable deficiencies which were addressed in discussions with Columbia and its counsel.

LA Sheriffs' Pension
v. Cardinal Health Inc.

FINAL

May 26, 2022
Nicholas Smith

Page 37

Q   Okay.  Do you know whether or not 1199SEIU or SEIU is still a client of Columbia?

A   I do not know if it is still a client of Columbia.

Q   Did you ever meet with anyone from SEIU?

A   Not that I recall.

Q   Did you generally meet with clients that were invested in the Contrarian strategy?

A   On many occasions, and I've met with many different clients over the years.

Q   And what types of meetings would you have?  What would be the purpose of meetings?

A   They would either be introductory meetings, where they wanted to learn about our product and potentially invest, or they were update meetings, where they wanted to hear from us as to our performance and our thoughts on the space and whether they wanted to continue investing with us.

Q   Okay.  Can you describe the steps for a securities transaction in the Contrarian portfolio so -- and maybe I can just flesh that out a little.  Does, you know, an analyst make a -- so would Mr. Sonderling make a recommendation to you about Cardinal and then you would make a recommendation to Mr. Pope and then Mr. Pope would

Page 38

ultimately decide whether to buy or sell?  How does it work?

A   That's a very vague question because there are lots -- that could be an hour-long answer.  I'll keep it short.  The four of us on the team are generalists, and we source ideas from hundreds of different possible ways, including ourselves, our internal analysts, external analysts, reading voraciously.

Q   Before a buy or sell decision is made, would you have a conversation with any of the clients that are invested in the Contrarian strategy?  Would you go to SEIU, for example, and say, "Hey, can we buy this stock?"

A   No.

Q   Would you ever do that?

A   No.

Q   Why not?

A   I believe that we are not allowed to solicit client input.  We are held to a standard that we alone have discretion on the investments we make.

Q   Do you know whether SEIU ever instructed Columbia or anyone on the Contrarian strategy to sell Cardinal Health stock?

Page 39

A   I wouldn't know that.

Q   Do you remember ever discussing with anyone from SEIU any trades that -- that Columbia made in the Contrarian strategy before they were made?

A   No.

Q   Do you remember ever discussing Cardinal Health with anyone at SEIU?

A   No.

Q   Has the SEIU portfolio with -- actually, strike that.  Has the Contrarian strategy ever taken a short position in any security?

A   No.

Q   Why not?

A   We're a long-only fund.

Q   Has the Contrarian strategy ever held put options on any security?

A   No.

Q   Does the Contrarian fund ever invest in any securities other than common stock?

A   It depends -- I don't know because, the definition of common stock -- I don't know how foreign securities would be treated that are traded as ADRs; however, I believe that to be correct.

Q   So either common stock and potentially

Page 40

ADRs, but probably only common stock, correct?

A   I believe ADRs would qualify as common stock as well.

Q   Okay.  Did the Contrarian strategy ever take a position that was intended to hedge potential losses on investments in Cardinal Health stock?

A   No.

Q   What about losses on investments in -- in stocks within the healthcare sector generally?

A   Can you clarify the question?  Are you asking if we ever hedged?

Q   Yes.

A   No.

Q   Did the Contrarian strategy ever invest in mutual funds?

A   No.

Q   Any third-party funds?

A   No.

Q   Any indirectly held positions in a security?

A   I don't know what you mean by that question.

Q   So -- so, for example, I'm referring to third-party funds and, you know, if there's any other sort of thing that could have an indirectly