# EXHIBIT 12

Case: 2:19-cv-03347-EAS-EPD Doc #: 94-13 Filed: 07/22/22 Page: 2 of 5 PAGEID #: 6643

LA Sheriff's Pension
v. Cardinal Health Inc.

REVISED FINAL
CONFIDENTIAL

April 25, 2022
William Supple

**Page 1**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO EASTERN DIVISION
-------------------------------------------
LOUISIANA SHERIFFS' PENSION &
RELIEF FUND, Individually and On
Behalf of All Others Similarly Situated,
     Plaintiffs

   v.

CARDINAL HEALTH, INC., GEORGE S.
BARRETT, DONALD M. CASEY, JR.,
MICHAEL C. KAUFMANN, JORGE M. GOMEZ,
and DAVID J. WILSON
     Defendants

No. 2:19-cv-03347
-----------------------------------------

VIDEO DEPOSITION OF
William Supple
April 25, 2022
Boston, Massachusetts
Lead: Alexandra P. Sadinsky, Esquire
Firm: Wachtell Lipton Rosen & Katz

REVISED FINAL COPY - CONFIDENTIAL
JANE ROSE REPORTING 1-800-825-3341

**Page 2**

APPEARANCES:

ROBBINS GELLER RUDMAN & DOWD LLP
    By Jennifer Caringal, Esquire
    Marco Janoski, Esquire
    655 West Broadway
    San Diego, CA 92101
    619.231.1058
    jcaringal@rgrdlaw.com
    mjanoski@rgrdlaw.com
    Counsel for the Plaintiffs

WACHTELL LIPTON ROSEN & KATZ
    By Alexandra P. Sadinsky, Esquire
    Elizabeth N. Brandt, Esquire
    51 West 52nd Street
    New York, NY 10019
    212.403.1000
    apsadinsky@wlrk.com
    enbrandt@wlrk.com
    Counsel for the Defendants

**Page 3**

APPEARANCES: (Continued)

ALSO PRESENT:
    William Butterly, In-House Counsel,
    Boston Partners

    Jackson Martin, Wachtell Lipton Paralegal

JANE ROSE REPORTING
    74 Fifth Avenue
    New York, New York 10011
    1-800-825-3341
    Janet McHugh, Court Reporter
    Gayle Ashton, Videographer

**Page 4**

INDEX

| WITNESS | PAGE |
|---|---|
| WILLIAM J. SUPPLE | |
| By Ms. Sadinsky | 6 |
| Exhibit Index | 205 |
| Court Reporter Certificate | 207 |
| Errata | 208 |

LA Sheriff's Pension
v. Cardinal Health Inc.

REVISED FINAL
CONFIDENTIAL

April 25, 2022
William Supple

Page 5

P R O C E E D I N G S

THE VIDEOGRAPHER:  Good afternoon.  We are now on the record.  Here begins Media No. 1, Volume 1, in the deposition of William Supple in the matter of Louisiana Sheriffs' Pension & Relief Fund versus Cardinal Health, Inc.  Today's date is April 25, 2022, and the time is 2:04 p.m. Eastern Daylight Time.  This deposition is being taken remotely.

I am Gayle Ashton, the videographer, and the court reporter is Janet McHugh from Jane Rose Reporting, New York.

Counsel, please identify yourselves and state whom you represent.

MS. SADINSKY:  Alexandra Sadinsky, Wachtell, Lipton, Rosen & Katz.  I represent the defendants.

MS. BRANDT:  Elizabeth Brandt, Wachtell, Lipton, Rosen & Katz.  I represent the defendants.

MR. MARTIN:  Jackson Martin, Wachtell, Lipton, for the defendants.

MR. BUTTERLY:  Bill Butterly, Boston Partners, for Boston Partners.

Page 6

MS. CARINGAL:  Jennifer Caringal from Robbins Geller Rudman & Dowd on behalf of the plaintiffs.

MR. JANOSKI:  And Marco Janoski, also from Robbins Geller, on behalf of the plaintiffs.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness.

WILLIAM J. SUPPLE, having been duly sworn, after presenting identification in the form of a driver's license, deposes and says as follows:

DIRECT EXAMINATION

BY MS. SADINSKY:

Q.  Hi, Mr. Supple.  My name is Alexandra Sadinsky and I will be asking you some questions today.

Before we get started, I want to cover some parameters for the day.  It's my job to ask you questions and it's your job to answer them as best as you can.  If you don't understand a question, please tell me so I can try and rephrase it or explain the question.

Please give audible, verbal responses to the questions.  The transcript cannot reflect that

Page 7

you're merely nodding your head.

A.  Yes.

Q.  Remember that you are -- remember that you are testifying on behalf of Boston Partners. There will be times when I am asking for your personal knowledge or experience as an employee of Boston Partners as well.  If you're ever unsure whether I'm asking you a question personally or as Boston Partners' representative, please ask me and I'll be happy to clarify.

Does that all make sense?

A.  It does.

Q.  Okay.  If you need to take a break, please let me know.  We can take a break any time you want as long as there's not a question pending.

Your lawyer may object to certain of my questions or Robbins Geller may object to certain of my questions for purposes of the record.  But unless your lawyer instructs you not to answer, you should fully and completely answer the question even if there's an objection.

Does that make sense?

A.  It does make sense.

Page 8

Q.  Is -- do you understand you're under oath?

A.  I do understand that.

Q.  Is there any reason you're not able to give complete and accurate testimony today?

A.  There is none.

There is something that's bothering me at the moment that I -- I have a brother who is involved in securities litigation and I'm trying to remember what the name of his firm is, and I don't know if that -- if I had thought of this earlier, I would have shared this earlier.

Q.  Does anything about your brother's involvement in a securities litigation make you unable to give complete and accurate testimony today?

A.  Not that I would be aware of, no.

Q.  Okay.  Do you know any of the details of your brother's involvement in a securities litigation?

A.  I know very little about what he's doing other than he works for a securities litigation firm.  But I know nothing in relation to this particular matter.

LA Sheriff's Pension
v. Cardinal Health Inc.

REVISED FINAL
CONFIDENTIAL

April 25, 2022
William Supple

Page 193

four, five -- the sixth column, is there a "B" or an "S"?

A.   On the last transaction?

Q.   Yeah.

A.   There's a "B."

Q.   I'll stipulate to you that "B" stands for "buy."

So is the last transaction listed here, a purchase of shares of Cardinal Health in December of 2019?

A.   I don't know.  Can we make the thing a little bit smaller?  I can't see.  I see zeros.

MR. BUTTERLY:  Smaller?

THE WITNESS:  Make it a little smaller.

A.   Yeah, I don't know how to interpret that line.  The last columns have zeros.  It has a zero U.S. dollars.

MS. SADINSKY:  Scroll up so he can see the names of the columns.

A.   So I'm not sure what "realized_gl_base" means, but that has a zero in it.  So I don't know what -- what I'm to make of that.

Q.   So if you focus on the "par_or_shares" column and the sell/buy column, these are talking

Page 194

about the actual transactions made, and ignore the other columns.

I'm going to stipulate to you that "B" and "S" stands for buying or selling shares; that the "par_or_shares" column refers to how many shares were either bought or sold.?

MS. SADINSKY:

Does the last transaction here show a purchase of 17 -- 1,705 shares of Cardinal Health stock on December 5, 2019?

MS. CARINGAL:  Objection.  Foundation.  Speculation.

MR. BUTTERLY:  You can answer, Bill.

A.   Okay.  With those stipulations and the fact that I don't understand the chart and I've never seen it before, the answer is yes, it looks to me like it's a buy.

Q.   So Boston Partners currently -- and, again, I'm representing to you that this is a document that your lawyers provided listing every transaction in Cardinal Health securities that Boston Partners has made on behalf of any of its clients.

Does this indicate to you that Boston

Page 195

Partners currently holds Cardinal Health securities on behalf of some of its clients?

MS. CARINGAL:  Objection.  Foundation.  Speculation.

A.   I don't know.

Q.   Why?

A.   I just don't understand.  You're giving me a document I don't use, I don't understand, and I don't know what it means.

If this is given to you by the company, I assume it's accurate.  But you're asking me to verify something that I just don't know anything about.

Q.   Okay.  Assume that Boston Partners currently holds Cardinal Health stock on behalf of its clients.

MS. SADINSKY:  And maybe, Bill, you can stipulate to that.  Can you do that?

MR. BUTTERLY:  I don't know if we do, because these may -- there may have been --

THE WITNESS:  Bill, I can't hear you.

MR. BUTTERLY:  Yeah, sorry.  I said there may have been a couple of derivatives in another product, so these may have been buys to

Page 196

settle.  I'm not sure.  It's a year later, so I don't -- I just don't know.

MS. SADINSKY:  Okay.

MR. BUTTERLY:  And as to mid cap, we didn't have any derivatives.  As to whether this was held in one of the long/short portfolios, I don't know.  So I'd have to look up those two transactions.

MS. SADINSKY:  Okay.  Well, what if we focus on November 20th, all of these other dates.

These aren't in the long/short portfolio; right?

MR. BUTTERLY:  There's no portfolio code on here, so I don't know.

MS. SADINSKY:  Okay.  Let's move on.

Q.   Has the SEIU portfolio for Boston Partners at any time held a short position in any --

MS. SADINSKY:  You can put this document down.

Q.   Has the SEIU portfolio with Boston Partners at any time held a short position in any Cardinal Health security?

A.   I don't know, but not to my knowledge.

LA Sheriff's Pension
v. Cardinal Health Inc.

REVISED FINAL
CONFIDENTIAL

April 25, 2022
William Supple

Page 197

Q. To your knowledge, has Boston Partners ever shorted Cardinal Health in any strategy?

A. I have no knowledge of what we've shorted.

Q. Has the SEIU portfolio at Boston Partners at any time held put options on any Cardinal Health security?

A. I don't know.

Q. Are put options part of the mid cap value strategy?

A. Not to my knowledge.

Q. Is Boston Partners aware of any Cardinal Health securities that SEIU owns or has owned other than common stock?

A. I don't know.

Q. Are any securities other than common stock part of the mid cap value strategy?

A. I don't know.

Q. It's possible that there are securities other than common stock that are part of the mid cap value strategy?

MS. CARINGAL: Objection. Speculation.

Q. You can answer.

A. I'm not sure exactly how you're

Page 198

defining "common stock." I don't know if there are -- ADRs are included in that listing. I don't know what the definition of "common stock" you're using is.

Q. Is Boston Partners aware of any mutual funds with investments in Cardinal -- with investments in Cardinal Health in the SEIU portfolio?

A. You have to repeat the question for me again, please.

Q. Does the mid cap portfolio include any mutual funds?

A. Not to my knowledge.

Q. So to your knowledge, the mid cap portfolio does not include any mutual funds that have a position in Cardinal Health securities?

A. You know, I don't know. Not to my knowledge, no.

Q. Does the mid cap portfolio have investments in any -- anything else that may have -- strike that.

Does the mid cap portfolio have an investment in anything with an indirectly held position?

Page 199

MS. CARINGAL: Objection. Vague and ambiguous.

MS. SADINSKY: Yeah, it is. Let me try again. I'm getting tired.

Q. Okay. Does the mid cap portfolio have any indirect investments in securities, either through a mutual fund, other third-party fund, or anything else?

MS. CARINGAL: Same objection.

MS. SADINSKY: That was better.

A. I don't know.

Q. Okay. All right. My last question for the day, and I promise it will be quick.

I'm going to ask you some questions about the litigation.

When was the first time -- and we've already discussed a bunch of these -- the first time that you became aware of the litigation was in connection with this deposition and the documents produced in connection with this deposition; correct?

A. That's correct.

Q. Have you ever seen the Amended Complaint filed on behalf of SEIU in this

Page 200

litigation?

A. Not that I recall.

Q. Not that you recall? Have you read a Complaint ever?

A. I'm not even sure exactly what a Complaint means. I think I got an email that might have had like a whole bunch of documents with it, but I don't recall reading a Complaint or doing anything like that.

MS. SADINSKY: Let's mark Tab 2 as the next exhibit, which I think is Exhibit --

MR. MARTIN: 11.

MS. SADINSKY: -- 11.

(Complaint for Violation of the Federal Securities Laws marked Exhibit 11.)

MS. SADINSKY: And we'll put it on the screen.

MR. BUTTERLY: Alex, I don't know if you want to stipulate. He only received from me the document list.

MS. SADINSKY: Okay.

BY MS. SADINSKY:

Q. This is the Complaint. Let's just scroll up so we can see the whole first page. A