# EXHIBIT 19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| RICHARD THORPE and DARREL WEISHEIT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| | ) | **Case No.: 14-cv-20880-UU** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| WALTER INVESTMENT MANAGEMENT, CORP., MARK J. O'BRIEN, DENMAR DIXON, KEITH A. ANDERSON, BRIAN COREY, CHARLES E. CAUTHEN and C. MARC HELM, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**EXPERT REPORT OF KENNETH M. LEHN**

**September 30, 2015**

**Exhibit**
P0012

## I. QUALIFICATIONS

1. I am the Samuel A. McCullough Professor of Finance in the Joseph M. Katz School of Business at the University of Pittsburgh. I teach undergraduate and graduate level courses in finance, including courses on business valuation, corporate restructuring, and corporate governance. I also am an affiliated professor of law at the University of Pittsburgh. I have published more than 40 scholarly papers, primarily in the field of corporate finance. I have served on the editorial boards of several scholarly journals and am a founding editor of the Journal of Corporate Finance.

2. I was chief economist of the Securities and Exchange Commission ("SEC") from 1987 to 1991 and deputy chief economist from 1984 to 1985. During my time at the SEC, my staff and I assisted the SEC's division of enforcement on dozens of matters involving alleged violations of U.S. securities laws. Much of this work involved event study analysis that examined how securities prices reacted to the release of information. Since leaving the SEC, I have been retained by various parties in litigation, including both plaintiffs and defendants to opine on, among other issues, price impact, materiality, loss causation and damages. On multiple occasions, I have submitted reports and provided testimony on issues related to class certification.

3. I received a B.A. in economics from Waynesburg College in 1975, an M.A. in economics from Miami University in 1976, and a Ph.D. in economics from Washington University in 1981. My curriculum vitae, which lists my publications and recent testimony, is attached hereto as **Exhibit A**. I am being compensated at a rate of $1,050 per hour. I also expect to receive compensation from Compass Lexecon for my work in this matter. My compensation is not contingent on the outcome of this case.

1

alleged misrepresentations."[24]  In his deposition, taken on September 16, 2015, Dr. Nye elaborated on his opinion, stating that the alleged corrective disclosure dates "are the three dates in which I think it's clear that price impact can be demonstrated"[25] and that on the dates of the alleged corrective disclosures "there's a clear price stock decline so yes I think this demonstrates price impact."[26]

14.     Dr. Nye also opines that "damages for investors who purchased Walter stock during the Class Period can be calculated using a method that is common to the class."[27]  Dr. Nye purports to describe a "general economic framework for quantifying per-share damages on a class-wide basis."[28]  He states that "[p]rice inflation may be measured by analyzing the change in a security's price caused by a corrective disclosure and/or materialization of a concealed risk" and that the "decline in a security's price in response to corrective disclosures reflects the dissipation of price inflation created by earlier misrepresentations and/or omissions."[29]

15.     Counsel for the Defendants has asked me to review and respond to Dr. Nye's report and deposition testimony.  In particular, counsel has asked me to respond to (i) Dr. Nye's opinion regarding "price impact" and (ii) his proposed methodology for estimating alleged class-wide damages.  Compass Lexecon's professional staff has assisted me in this matter.  **Exhibit B** lists the materials I have relied on.  I am submitting this report in connection with the Plaintiffs' motion for class certification.  I reserve the right to

---

24. Nye Report, ¶ 7.
25. Videotaped Deposition of Zachary Nye ("Nye Deposition"), September 16, 2015, 25:5-7.
26. Nye Deposition, 27:6-8.
27. Nye Report, ¶ 8.
28. *Id.*, ¶ 70.
29. *Id.*, ¶ 72.

8

supplement this report in response to any supplemental report submitted by Dr. Nye. In addition, as the litigation moves forward, I also reserve the right to provide supplemental and/or additional opinions on the matters addressed herein as well as other matters that may be relevant to the claims and defenses at issue in later stages of this case.

16.     Based on my review and analysis, as well as my general background and expertise, I have reached the following principal conclusions:

- The statistically significant decline in Walter's stock price on March 19, 2013 does not demonstrate that the alleged misrepresentations had an impact on the price of Walter's common stock (*i.e.*, a "price impact").

  i.     The alleged corrective disclosure on March 18, 2013 is substantively different from the information that allegedly was concealed by the alleged misrepresentations. The alleged corrective disclosure involves Walter's disclosure of a material weakness in its internal controls over financial reporting in the fourth quarter of 2012, whereas the alleged misrepresentations involve Walter's internal controls over mortgage servicing protocols and procedures during the entire Class Period. Hence, there is no reliable basis to conclude that the decline in Walter's stock price on March 19, 2013 demonstrates price impact.

  ii.     Because the alleged corrective disclosure on March 18, 2013 pertained to information about a weakness in Walter's internal controls over financial reporting in the fourth quarter of 2012, this information could not have been disclosed as of the dates of the prior alleged misrepresentations, all of which occurred before the fourth quarter of 2012. Accordingly, there is no economic link between the price impact of the alleged misstatements and the price impact of the alleged corrective disclosure on March 18, 2013.

  iii.     Analyst commentary on March 18-19, 2013 focused on confounding information released by Walter on March 18, 2013 (including information about its core earnings and projections for depreciation, amortization, and runoff rates) and largely ignored the alleged corrective disclosure. Analysts attributed the decline in their projections of Walter's earnings and target stock prices to the confounding information, not the alleged corrective disclosure. Further, no securities analyst attributed the decline in the price of Walter's stock on March 19, 2013 to the alleged corrective disclosure. Instead, the analysts attributed the stock price decline on that date to other confounding information.

occurring. Hence, there is no reliable basis to conclude that the decline in Walter's stock price on February 26, 2015 demonstrates price impact.

ii. The alleged corrective disclosure on February 26, 2015 could not have been disclosed by Defendants as of the dates of the prior alleged misrepresentations, given that a settlement with the FTC and CFPB, let alone the terms of a proposed settlement, had not been reached as of these dates. Accordingly, there is no economic link between the price impact of the alleged misstatements and the price impact of the alleged corrective disclosure on February 26, 2015.[30]

iii. Analyst commentary focused on confounding information released on February 26, 2015, including information about Walter's 2014 earnings and its earnings guidance, and not the information regarding the proposed settlement with the FTC and CFPB. Moreover, analysts generally viewed the settlement as positive, not negative, news for Walter. This suggests that if the announcement of the proposed settlement had any impact on Walter's stock price it was a positive impact. As a result, there is no reliable basis to link the price changes on February 26, 2015 to any inflation in the price of Walter's stock during the proposed class period.

- Dr. Nye's methodology for estimating class-wide damages, as described in both his report and deposition, is unreliable.

  i. The statistically significant declines in Walter's stock price on the three alleged corrective disclosure dates cannot be used to show loss causation and, hence, do not measure the alleged inflation in Walter's stock price during the Class Period for the same reasons they fail to demonstrate price impact (as discussed above).

  ii. Dr. Nye's proposed methodology does not isolate the effects, if any, of specific alleged misstatements on the alleged inflation in Walter's stock price during the Class Period. As a result, Dr. Nye's proposed methodology is not able to adjust the estimate of alleged inflation in Walter's stock price if the Court finds Defendants liable for some, but not all, of the alleged misstatements.

  iii. Dr. Nye provides no reliable basis to conclude that the effect, if any, of the alleged misrepresentations on Walter's stock price as of the start of and

---

30. I understand that the Court's Omnibus Order, dated June 30, 2015, holds that post-Class Period disclosures cannot be used to establish loss causation. Because Plaintiffs seek to use the declines in Walter's stock price on the dates of the alleged corrective disclosures, from an economic standpoint, loss causation and price impact are closely related in this case. However, my opinions concerning the February 26, 2015 disclosure do not depend on the Court's Omnibus Order.

11

during the Class Period is the same as the effect of the alleged corrective disclosures. The number of loans that Walter serviced more than doubled over the Class Period, which complicates an analysis of alleged inflation at the start of and during the Class Period. Also, the regulatory environment for mortgage servicing firms changed during the Class Period, further confounding an analysis of the effects of the alleged misrepresentation on Walter's stock price during the Class Period.

17.     I elaborate upon and provide the bases for my opinions in the remainder of this report.

### III.     Dr. Nye's opinion regarding price impact is flawed and unreliable

18.     Dr. Nye does not analyze the changes in Walter's stock price on the dates when Plaintiffs allege Walter made false and misleading statements.[31]  Dr. Nye testified that he is "not offering the opinion that price impact can be demonstrated using dates other than the three listed in this report" and that the alleged misrepresentations are "innocuous."[32]  His own event study model shows that Walter's stock price did not increase by a statistically significant amount on any of the dates on which the alleged

---

31. Plaintiffs allege that the Company made false and misleading statements on eight dates, some of which occurred after market close and therefore could not have impacted Walter's stock price until the next trading day. The nine dates on which the alleged false and misleading statements may have had an impact on Walter's stock price are reported in Exhibit C under the header "Stock Price Reaction Date."
32. Nye Deposition, 24:18-20 & 33:2-5.

a disappointing quarter from an earnings standpoint we still saw the following items as positive in the quarter: 1) settlement with the CFPB, ….”[83] Similarly, an analyst at Morgan Stanley stated, “Another EPS Miss, but positive movement on … FTC/CFPB.”[84] As Dr. Nye agreed to at his deposition, when analysts provide favorable commentary about a new piece of information, it generally has, if anything, a positive impact on the stock price.[85] Moreover, none of the analysts commented that Walter's disclosure regarding the settlement revealed that any of its prior statements were inaccurate when made.

49.    In sum, for the aforementioned reasons, the statistically significant decline in Walter's stock price on this date does not demonstrate price impact of any of the alleged misrepresentations.

### IV.    Dr. Nye does not demonstrate that alleged class-wide damages can be calculated in this matter subject to a reliable methodology consistent with plaintiffs' claims

50.    Dr. Nye purports to describe a "general economic framework for quantifying per-share damages on a class-wide basis."[86] He states that, for each allegedly damaged share, damages are equal to inflation at time of purchase less inflation at time of sale.[87] He claims that "[p]rice inflation may be measured by analyzing the change in a security's price caused by a corrective disclosure and/or materialization of a concealed risk" and that the "decline in a security's price in response to corrective disclosures reflect the

---

83. "Downgrading to Neutral on Lower Earnings Power," Credit Suisse, February 26, 2015.

84. "Quick Comment: Another EPS Miss, But Positive Movement on Strategic Initiatives, FTC/CFPB," Morgan Stanley, February 26, 2015.

85. Nye Deposition, 64:22-65:11.

86. Nye Report, ¶ 70.

87. *Id.*, ¶ 73.

dissipation of price inflation created by earlier misrepresentations and/or omissions."[88]  He further opines that "[o]nce the decline caused by the corrective disclosures has been determined, the daily levels of price inflation can be calculated throughout the Class Period."[89]  Dr. Nye proposes an event study analysis of Walter's stock price on the dates of the three alleged corrective disclosures as the basis for his estimate of alleged inflation in Walter's stock price during the Class Period.  However, for the reasons set forth above in my discussion of Dr. Nye's opinion regarding price impact, Dr. Nye does not establish that he has developed a reliable methodology of estimating alleged class-wide damages that is consistent with Plaintiffs' claims.  Dr. Nye also has not submitted an actual model that he would use to calculate damages consistent with the Plaintiffs' allegations in this case.

51.     As explained above, the event study analysis described by Dr. Nye cannot establish that the alleged misrepresentations had an impact on Walter's stock price throughout the Class Period because (1) the information revealed by the alleged corrective disclosures is substantively different from the information allegedly concealed by the alleged misrepresentations, (2) the alleged corrective disclosures could not have been made as of the time of the alleged misrepresentations, and (3) Dr. Nye does not provide a reliable methodology for disentangling the effects on Walter's stock price of confounding information released on the alleged corrective disclosure dates from the effects, if any, of

---

88. *Id.*, ¶ 72.
89. *Id.*, ¶ 73.

the alleged corrective disclosures.[90]   For the same reasons, the event study methodology

proposed by Dr. Nye is not capable of estimating the alleged inflation in Walter's stock

price during the Class Period that is attributable to the alleged misrepresentations.  As a

result, Dr. Nye has not established that he has a reliable methodology to estimate class-wide

damages in this matter.

52.       Moreover, Plaintiffs claim multiple alleged misstatements regarding

the alleged weakness in Walter's internal controls regarding servicing protocols and

procedures and the Company's mortgage servicing practices during the Class Period.  Dr.

Nye's methodology does not isolate the effect of each alleged misstatement on Walter's

stock price.  Dr. Nye does not even discuss any of the alleged misstatements in his report, as

he acknowledged in his deposition.[91]  As a result, Dr. Nye has not proposed a methodology

that would allow him to adjust his estimate of alleged inflation if the Defendants are found

liable for some but not all of the alleged misstatements.  For example, Dr. Nye's estimate of

per share inflation associated with the alleged misstatements regarding Walter's mortgage

servicing practices are based on the statistically significant declines in Walter's stock price

---

90. In response to the question how to determine damages related to the March 18, 2013
disclosure assuming that the alleged corrective disclosure is distinct from all other
information released on that day, Dr. Nye testified: "[I]t would be very difficult to
estimate the impact of that particular internal control problem.  I'm not saying it's
impossibility haven't done the analysis, but it would be a difficult undertaking."  In
response to the question whether he could disentangle the impact of the alleged
corrective disclosure from the other information on Walter's stock price on the other two
alleged corrective disclosure dates, Dr. Nye testified that, it is "more likely" that he
could disentangle the CFPB and FTC disclosures from the other information  for the
August 11, 2014 disclosure and that he did not have an opinion on this issue for the
February 25, 2015 disclosure.  Nye Deposition, 293:6-294:23.
91. Nye Deposition, 107:18-22 ("Q. Your report does not really specifically discuss any of
the alleged statements that are challenged in this case, correct? A. Well, no, not the
statements.")

34

on August 11, 2014 and February 26, 2015. However, this estimate is identical regardless of whether the Defendants are found liable for one, some, or all of the alleged misstatements regarding mortgage servicing practices.

53. Dr. Nye's proposed methodology also does not describe how he plans to address the fact that both an alleged misrepresentation as well an alleged corrective disclosure were made on March 18, 2013. The alleged corrective disclosure concerns internal controls over financial reporting while the alleged misrepresentation concerns the separate topic of compliance with servicing regulations. Whereas the alleged corrective disclosure is believed by Dr. Nye to have had a negative effect on Walter's stock price, the alleged misrepresentation, according to Plaintiffs' claims, had the effect of either adding artificial inflation to Walter's stock price or maintaining some amount of the alleged inflation in Walter's stock price. Given that Dr. Nye's event study shows that there was a statistically significant decline in Walter's stock price on March 19, 2013, Plaintiffs' claim must be that but for the alleged misrepresentation on this date the decline in Walter's stock price would have been even larger. Dr. Nye has not described a reliable methodology for parsing the alleged countervailing effects of the alleged corrective disclosure and the alleged misrepresentation on Walter's stock price on March 19, 2013, nor am I aware of a reliable methodology that is capable of doing this.

54. Dr. Nye's methodology also cannot be used to measure inflation allegedly caused by the alleged misrepresentations regarding the Company's internal controls over financial reporting issued on May 10, 2013. According to Plaintiffs' claims, the only alleged corrective disclosure regarding internal controls over financial reporting occurred on March 18, 2013, i.e., prior to this alleged misrepresentation. In his deposition, Dr. Nye also conceded that he is unaware of any corrective disclosures regarding the

35

Company's weakness in internal controls over financial reporting after March 18, 2013.[92] Hence, presumably there is no inflation in Walter's stock related to the alleged misrepresentations regarding the Company's internal controls after the alleged corrective disclosure on March 18, 2013. Importantly, the May 10, 2013 alleged misrepresentation never is corrected according to Plaintiffs and Dr. Nye. Therefore, Dr. Nye's methodology to measure inflation "by analyzing the change in a security's price caused by a corrective disclosure and/or materialization of a concealed risk" cannot be applied to the May 10, 2013 alleged misrepresentation.[93]

55.    Dr. Nye provides no reliable basis to assume that the impact of any alleged misrepresentations regarding the Company's mortgage servicing practices would have been the same at the start of the Class Period as it was at the end of the Class Period or at any point in between. This appears to be important because Walter grew substantially during the Class Period. For example, the number of loans it serviced more than doubled, from approximately 1 million with an unpaid principal balance of $90.1 billion at the end of 2012 to 2.1 million with an unpaid principal balance of $218 billion at the end of 2013.[94] In addition, as Dr. Nye agreed and was disclosed by Walter in its SEC filings, the regulatory environment for mortgage servicing companies changed during the course of the Class Period, with both the applicable regulations and regulatory enforcement growing more stringent over time.[95] Given that Dr. Nye purports to use the statistically significant declines in Walter's stock price on the alleged corrective disclosure dates, he has not established that

---

92. Nye Deposition, 165:15-167:10.
93. Nye Report, ¶ 72.
94. 2012 10-K, at 7; and 2014 10-K, at 6.
95. Nye Deposition, 278:3-15; 2012 10-K, at 12-13.

36

these price declines would have occurred earlier in the Class Period when Walter was a substantially smaller company and subject to different regulations.

56. In sum, Dr. Nye has failed to demonstrate a reliable methodology for calculating class-wide damages in this matter.


_____

Kenneth M. Lehn