UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:19-cv-03347 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | District Judge Edmund A. Sargus, Jr. |
| | ) | Magistrate Judge Elizabeth A. Preston Deavers |
| vs. | ) | |
| CARDINAL HEALTH, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CLASS CERTIFICATION,
AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

4874-5824-8279.v1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................2

II.    THE TERMS OF THE SETTLEMENT ...............................................................3

III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................6

        A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class...............................................................................7

        B.    The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length Negotiation Process ...............................................................................7

        C.    The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria....................9

                1.    The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal .............................................................................9

                2.    The Method of Distributing Relief Is Effective........................................10

                3.    Attorneys' Fees and Expenses ..................................................................11

                4.    Identification of Agreements .....................................................................12

        D.    Settlement Class Members Are Treated Equitably.................................................13

        E.    The Judgment of Experienced Trial Counsel........................................................13

        F.    The Sixth Circuit's Public Interest Factor Is Satisfied..........................................14

IV.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .......................................15

V.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ....................................................................................................................16

        A.    The Settlement Class Meets the Requirements of Rule 23(a) ...............................17

                1.    Numerosity...............................................................................................17

                2.    Commonality.............................................................................................18

                3.    Typicality .................................................................................................19

                4.    Adequacy of Class Representatives............................................................20

        B.    The Settlement Class Meets the Requirements of Rule 23(b) ...............................21

VI.    PROPOSED SCHEDULE OF EVENTS.....................................................................24

4874-5824-8279.v1

**Page**

VII.     CONCLUSION.................................................................................................24

- ii -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................21, 22

*Beach v. Healthways, Inc.*,
2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010).......................................................17

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) .........................................................19, 21, 22, 23

*Burges v. Bancorpsouth, Inc.*,
2017 WL 2772122 (M.D. Tenn. June 26, 2017)....................................................19

*Califano v. Yamasaki*,
442 U.S. 682 (1979).................................................................................................23

*Cates v. Cooper Tire & Rubber Co.*,
253 F.R.D. 422 (N.D. Ohio 2008) .........................................................................19

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .................................................................................17

*Deutschman v. Beneficial Corp.*,
132 F.R.D. 359 (D. Del. 1990) ...............................................................................21

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) .................................................................................15

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981), *vacated on other grounds and modified*,
670 F.2d 71 (6th Cir. 1982) ...................................................................................14

*Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*,
2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ................................................17, 18, 19, 21

*Grae v. Corrections Corp. of Am.*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ......................................................12

*Hyland v. HomeServices of Am., Inc.*,
2012 WL 122608 (W.D. Ky. Jan. 17, 2012).............................................................8

*In re Accredo Health, Inc.*,
2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ....................................17

4874-5824-8279.v1

**Page**

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................................17, 18, 19, 20

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ................................................................21

*In re Direct Gen. Corp. Sec. Litig.*,
  2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ........................................18, 19, 20

*In re Genworth Fin. Sec. Litig.*,
  2016 WL 7187290 (E.D. Va. Sept. 26, 2016)........................................................12

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
  2009 WL 1473975 (S.D. Ohio May 27, 2009) ......................................................12

*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015).......................................................11

*In re Se. Milk Antitrust Litig.*,
  2013 WL 2155387 (E.D. Tenn. May 17, 2013).......................................................12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)....................................................13

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................................7

*IUE-CWA v. GMC*,
  238 F.R.D. 583 (E.D. Mich. 2006) .......................................................................13

*Kizer v. Summit Partners, L.P.*,
  2012 WL 1598066 (E.D. Tenn. May 7, 2012)........................................................15

*Miracle v. Bullitt Cnty., Ky.*,
  2008 WL 3850477 (W.D. Ky. Aug. 15, 2008) .........................................................8

*Motter v. O'Brien*,
  2014 WL 12892732 (S.D. Ohio June 12, 2014) ...............................................14, 15

*NYS Tchrs' Ret. Sys. v. GMC*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom.*
  *Marro v. NYS Tchrs' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ........11

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
  1996 WL 739170 (W.D. Mich. Sept. 27, 1996) ....................................................23

4874-5824-8279.v1

**Page**

*Putnam v. Davies*,
169 F.R.D. 89 (S.D. Ohio 1996) ............................................................................18

*Randleman v. Fid. Nat'l Title Ins. Co.*,
247 F.R.D. 528 (N.D. Ohio 2008) ..........................................................................17

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009) ......................................................................17, 18

*Schuh v. HCA Holdings, Inc.*,
2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014) ....................................................21

*Schuh v. HCA Holdings, Inc.*,
2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ....................................................11

*Sprague v. GMC*,
133 F.3d 388 (6th Cir. 1998) ..................................................................................19

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ..................................................................................20

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) ..................................................................................14

*Weinberg v. Insituform Techs.*,
1995 WL 368002 (W.D. Tenn. Apr. 10, 1995) ...................................................21, 22

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ..............................................................................13, 15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) ....................................................................................................................19
§78t(a) ................................................................................................................18, 19
§78t-1 .....................................................................................................................19
§78u-4(a)(4) .....................................................................................................3, 4, 12
§78u-4(a)(7) ...........................................................................................................16

Federal Rules of Civil Procedure
Rule 23 ..............................................................................................................3, 19, 23
Rule 23(a) ...........................................................................................................17, 20
Rule 23(a)(1) .......................................................................................................17, 18
Rule 23(a)(2) ...........................................................................................................18
Rule 23(a)(3) ...........................................................................................................19

4874-5824-8279.v1

**Page**

Rule 23(a)(4) ................................................................................................20, 21
Rule 23(b) ...................................................................................................21, 22
Rule 23(b)(3)............................................................................................9, 22, 23
Rule 23(c)(2) .....................................................................................................16
Rule 23(e).................................................................................................7, 14, 15
Rule 23(e)(1) .....................................................................................................2, 6
Rule 23(e)(1)(B)................................................................................................15
Rule 23(e)(2) .....................................................................................................2, 6
Rule 23(e)(2)(A) .................................................................................................7
Rule 23(e)(2)(B).................................................................................................7
Rule 23(e)(2)(C).................................................................................................9
Rule 23(e)(2)(C)(i).............................................................................................9
Rule 23(e)(2)(C)(ii)..........................................................................................10
Rule 23(e)(2)(C)(iii).........................................................................................11
Rule 23(e)(2)(C)(iv).........................................................................................12
Rule 23(e)(2)(D) ..............................................................................................13
Rule 23(e)(3) ......................................................................................................6

26 C.F.R.
§1.468B-1...........................................................................................................4

4874-5824-8279.v1

Lead Plaintiff 1199SEIU Health Care Employees Pension Fund ("Lead Plaintiff") respectfully submits this memorandum in support of its motion for preliminary approval of the settlement reached in this Litigation (the "Settlement"). This proposed Settlement provides a recovery of $109,000,000 in cash to resolve this securities class action against all Defendants.[1] The Settlement is memorialized in the Stipulation of Settlement dated March 31, 2023 (the "Stipulation"), filed concurrently herewith. Counsel for Lead Plaintiff has met and conferred with counsel for Defendants, and they do not oppose the relief requested herein.

By this motion, Lead Plaintiff seeks entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; (3) preliminarily granting class certification for settlement purposes; and (4) setting a hearing date for final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Lead Plaintiff's application for an award reflecting its time and expenses (the "Final Approval Hearing"), and a schedule for various deadlines relevant thereto ("Notice Order"). As shown below, the Settlement is an excellent result for the Settlement Class under the circumstances, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants preliminary and ultimately final approval of this Court.

On March 25, 2022, Lead Plaintiff filed its motion for class certification, which is pending before the Court. ECF 72. Pursuant to the Stipulation, and in light of Lead Plaintiff's request that the Court preliminarily grant class certification for settlement purposes, Lead Plaintiff withdraws its pending class certification motion without prejudice.

---

[1]  Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation. Emphasis is added and citations are omitted throughout unless otherwise noted.

4874-5824-8279.v1

## I.  INTRODUCTION

As set forth in the Stipulation, the Settlement provides for the payment of $109 million in cash to resolve this securities class action against all Defendants.  This is a significant recovery for the Settlement Class.  It was reached by experienced counsel after arm's-length mediation overseen by a highly experienced mediator, the Hon. Layn R. Phillips (Ret.).  The proposed Settlement easily satisfies Rule 23(e)(2) and the Sixth Circuit's standards for settlement approval.  The Settlement is fair, reasonable, and adequate as it provides for an all-cash recovery without the risks of further litigation.

Lead Plaintiff and Lead Counsel approve of the Settlement.  Lead Plaintiff is a sophisticated institutional investor with billions of dollars of assets under management and experience overseeing securities fraud litigation.  Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has substantial securities litigation experience and has litigated hundreds of cases to resolution; its attorneys are recognized as leading experts in the field.  Lead Plaintiff retained Robbins Geller specifically because of its experience and acumen in large complex securities matters like this one, as well as its experience with this Court.  In accepting the mediator's proposal, Lead Plaintiff and Lead Counsel understood that there were serious risks in continued litigation.  Although Lead Plaintiff believes very strongly in the merits of this case, Defendants believe very strongly in their defenses.  At trial, Lead Plaintiff would have had the burden of proving each of the elements of its claims; Defendants would have to defeat just one to prevail.  Discovery and trial would have been very expensive, an inevitably lengthy claims process and appeal would have taken years, and either side could have prevailed.

At this stage, the Court need only determine that it will "likely" be able to approve the proposal under Rule 23(e)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Settlement Class should be notified of the proposed Settlement.  In light of the substantial recovery obtained and the risks and

- 2 -

expenses posed by a trial of this case, Lead Plaintiff respectfully requests that the Court enter the Notice Order, which will, among other things:

- certify the Settlement Class for settlement purposes only;

- approve the form and content of the Notice, Summary Notice and Postcard Notice, attached as Exhibits A-1, A-3 and A-4 to the Notice Order;

- find that the procedures for distribution of the Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995; and

- set a schedule and procedures for: disseminating the Postcard Notice and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and litigation expenses, including an award to the Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4); submitting papers in support of final approval of the Settlement; and the Final Approval Hearing.

## II.     THE TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves, fully, finally and with prejudice, the claims against Defendants by a class of all Persons who, between March 2, 2015 and May 2, 2018, inclusive, purchased or otherwise acquired Cardinal Health, Inc. common stock.  Pursuant to the proposed Settlement, Defendants will cause the deposit of $109 million (the "Settlement Amount") into an interest-bearing escrow account (the "Escrow Account") within twenty-one (21) calendar days of the later of: (a) preliminary approval of the Settlement by the Court; and (b) Lead Plaintiff having provided to Defendants' Counsel required tax information and payment instructions. Interest on the Settlement Amount will accrue for the benefit of the Settlement Class and is included in what is referred to herein as the Settlement Fund.  Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund.  Stipulation, ¶2.11.  Lead Plaintiff proposes that a nationally recognized class action

- 3 -

4874-5824-8279.v1

settlement administrator, Gilardi & Co. LLC ("Gilardi"), be retained here.  The proposed notice plan and plan for claims processing is discussed below in §IV.

Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable.  All Settlement Fund Taxes and Tax Expenses shall be paid out of the Settlement Fund.

Lead Plaintiff intends to request an amount not to exceed $35,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.  Any such amount the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of up to 30% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation in an amount not to exceed $850,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.

Once Notice and Administration Costs, Settlement Fund Taxes, Tax Expenses and Court-awarded attorneys' fees, expenses, and interest thereon, any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release any and all claims against Defendants that (i) arise out of, or relate in any way to, or are based upon, directly or indirectly, the allegations, transactions, acts, facts, events, matters,

- 4 -

4874-5824-8279.v1

occurrences, representations or omissions involved, set forth, alleged or referred to in the operative complaint in the Litigation, or in any other complaint in the Litigation, and (ii) in any way are based upon or related to the purchase, acquisition, sale, disposition, or holding of Cardinal Health common stock purchased or otherwise acquired by Members of the Settlement Class during the Class Period. Stipulation, ¶1.28.

The Notice of Pendency and Proposed Settlement of Class Action ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants once the Settlement becomes effective. The Notice also informs Settlement Class Members of, among other information, Lead Counsel's application for attorneys' fees and expenses and the proposed Plan of Allocation for distributing the Net Settlement Fund. The Notice further details: (i) the procedures and deadlines for opting out of the Settlement Class and objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Final Approval Hearing.

If the Court grants preliminary approval, the Claims Administrator will mail the Postcard Notice (attached as Exhibit A-4 to the Stipulation) to Settlement Class Members who can be identified with reasonable effort. The Postcard Notice will direct putative Settlement Class Members to the Settlement website, where the Notice and Proof of Claim form may be accessed, downloaded, or printed. Additionally, the Claims Administrator will cause the Summary Notice (attached as Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over a national newswire service.

## III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(2) provides:

> (2)  ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)  the class representatives and class counsel have adequately represented the class;
> >
> > (B)  the proposal was negotiated at arm's length;
> >
> > (C)  the relief provided for the class is adequate, taking into account:
> >
> > > (i)  the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)  the terms of the proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)  any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, "[w]hen determining whether the proposed settlement is fair, adequate, and reasonable," courts in the Sixth Circuit take into account the following factors (several of which overlap with Rule 23(e)(2)):

> (1)  the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
>
> (2)  the complexity, expense and likely duration of the litigation;
>
> (3)  the stage of the proceedings and the amount of discovery completed;
>
> (4)  the judgment of experienced trial counsel;

4874-5824-8279.v1

(5)      the nature of the negotiations;

(6)      the objections raised by the class members; and

(7)      the public interest.

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

The proposed Settlement for $109 million in cash easily satisfies Rule 23(e), as well as the Sixth Circuit's factors, each of which is addressed below (some together, to the extent they overlap).

**A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

Lead Plaintiff and its counsel have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's closely related third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf.  This includes, among other things: drafting the operative complaint; successfully opposing Defendants' motion to dismiss; conducting extensive fact discovery; and engaging in a mediation process with Judge Phillips.  Lead Plaintiff and Lead Counsel's efforts resulted in a Settlement of $109 million, which will provide a significant recovery for the Settlement Class.

**B.      The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length Negotiation Process**

After extensive arm's-length negotiations with the assistance of an experienced mediator, Judge Phillips, spanning a two-month period, Lead Plaintiff and Lead Counsel reached an agreement with Defendants to settle for $109 million in cash.  Accordingly, Rule 23(e)(2)(B) (the proposal was negotiated at arm's length) and the Sixth Circuit's overlapping fifth factor (the nature of the negotiations) are clearly satisfied.

Specifically, the parties attended a full-day, in-person mediation with Judge Phillips on December 1, 2022.  Following this full-day mediation session, the parties attended two Zoom

- 7 -

sessions focused on specific, hotly contested issues in the case on January 4, 2023 and January 20, 2023, during which the parties gave detailed presentations regarding their respective positions on the issues.  On February 8, 2023, the parties attended a second formal, full-day, in-person mediation session with Judge Phillips.  While a settlement was not reached during the February 8, 2023 mediation session, the parties continued their good faith efforts to resolve the case and on February 21, 2023, Judge Phillips made a mediator's recommendation to settle the case for $109,000,000, which the parties accepted on February 23, 2023.[2]

The negotiations were at arm's length and well informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Defendants and interviews with former Cardinal Health and Cordis employees; (ii) contentious motion practice seeking dismissal of the claims and whether the class should be certified; (iii) review and analysis of close to 2 million pages of documents produced by Defendants in response to Lead Plaintiff's discovery requests; (iv) review and analysis of over 94,000 documents produced by third parties; and (v) nine expert and fact witness depositions.  Lead Plaintiff and Lead Counsel were unquestionably well-informed regarding the strengths and weaknesses of their case.  *See Hyland v. HomeServices of Am., Inc.*, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (when determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval'"); *see also Miracle v. Bullitt Cnty., Ky.*, 2008 WL 3850477, at *5 (W.D. Ky. Aug. 15, 2008) (evaluating preliminary approval of a settlement based on whether

---

[2]    During negotiations on the settlement documentation, a dispute arose among the Settling Parties, which required the further involvement of Judge Phillips.

4874-5824-8279.v1

negotiations were at arm's length, whether there was evidence of collusion, and whether there was preferential treatment to segments of the class).

### C.  The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

#### 1.  The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The proposed Settlement satisfies the Rule 23(e)(2)(C)(i) adequacy standard, taking into account the costs, risks, and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense, and likely duration of the litigation). The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount). It provides an immediate and substantial benefit of $109 million in cash for the Settlement Class.

Given the complexities of this Litigation, the many issues in contention, the amount in controversy and the substantial risks of continued litigation, Lead Counsel believes the Settlement represents a favorable resolution of this Litigation. Importantly, the Settlement eliminates the risk that Lead Plaintiff and the Settlement Class might recover less, or even nothing, if the Litigation continued.

Although Lead Plaintiff believes its case is strong, it acknowledges, as it must, that there are risks to litigation and ultimate recovery. Defendants' arguments, including their arguments opposing class certification, highlight the risks Lead Plaintiff would face proving its claims. For example, Defendants have argued that Lead Plaintiff's proposed damage model cannot satisfy Rule 23(b)(3)'s requirement that class-wide issues predominate, claiming that the alleged disclosures largely represented the materialization of the risks that Defendants previously and adequately disclosed during the Class Period about the Cordis acquisition. Defendants have likewise challenged Lead Plaintiff's recoverable damages, maintaining that the stock price declines on the alleged disclosure dates were not caused by any alleged fraud but rather by information relating to Cardinal Health's

- 9 -

Pharmaceutical segment. Even if the Court granted Lead Plaintiff's Motion for Class Certification, Defendants' arguments would likely serve as a basis for an appeal under Fed. R. Civ. P. 23(f), the outcome of which would be uncertain and the litigation of which would entail additional delays and expenses. Defendants have also argued that Lead Plaintiff could not establish the element of scienter, because the evidence did not support that any statements were made with the requisite intent to defraud. Defendants have also argued that Lead Plaintiff would not be able to show that any of the challenged misstatements or omissions were material given the relative size of Cordis and the disclosures concerning Cordis during the Class Period. In sum, Lead Counsel was fully informed of the strengths and weaknesses of Lead Plaintiff's case. Given these and other risks faced by the Settlement Class, a positive result was far from assured.

### 2. The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §IV and includes direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. Gilardi will use time-tested methods to ensure Settlement Class Members who hold Cardinal Health common stock in their own names, as well as those who hold Cardinal Health common stock in street name, will receive a copy of the Postcard Notice. First, Gilardi will obtain the names of Settlement Class Members who hold Cardinal Health common stock in their own names from Cardinal Health's transfer agent. In addition, Gilardi will contact the brokers, banks, and other institutions known as Nominee Holders. Based on experience locating class members who hold securities in street name, Gilardi has developed a proprietary list of approximately 250 Nominee Holders, to whom it will send a Postcard

- 10 -

4874-5824-8279.v1

Notice and cover letter.[3]  Lastly, Gilardi will establish a case-specific website and post important documents regarding the Settlement, including the Stipulation, Notice, Claim Form, and all briefs and declarations in support of approval of the Settlement, and will provide a toll-free number that Settlement Class Members can call to make inquiries about the Settlement.  This notice program has regularly been found to satisfy due process.  *See NYS Tchrs' Ret. Sys. v. GMC*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. NYS Tchrs' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared by Lead Plaintiff's damages expert.  A thorough claim review process is explained in the Stipulation and the Notice.

### 3. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intends to seek.  As discussed above in §II, Lead Counsel intends to request fees in the amount of up to 30% of the Settlement Amount and expenses in an amount not to exceed $850,000, plus interest on both amounts.  This fee request falls within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases similar to this one.  *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) (awarding fees of 30% of a $215 million recovery in securities class action); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *7 (N.D.

---

[3] Gilardi will also send a Postcard Notice and cover letter to the approximately 4,500 financial institutions registered with the SEC as potential Nominee Holders.  In addition, Gilardi will send additional copies of the Postcard Notice to those Nominee Holders who indicate they will directly send the Postcard Notice to their clients who may be Settlement Class Members.

- 11 -

4874-5824-8279.v1

Ohio Feb. 26, 2015) (awarding fees of 30% of a $147.8 million recovery); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit").  *See also Grae v. Corrections Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) ("The Court finds that the amount of fees awarded [one-third of $56 million recovery] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit").

In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

Further, Lead Plaintiff intends to request an amount not to exceed $35,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.

### 4. Identification of Agreements

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action.  The Settling Parties have entered into a standard supplemental agreement that provides if a threshold number of valid opt-outs are received, Defendants will have the right (but not the obligation) to terminate the Settlement, as set forth in the Supplemental Agreement.  Stipulation, ¶7.3.

- 12 -

4874-5824-8279.v1

### D.     Settlement Class Members Are Treated Equitably

As reflected in the Plan of Allocation (Stipulation, Ex. A-1 at 15-20), the Settlement treats Settlement Class Members equitably relative to each other, while taking into account the timing of their purchase or acquisition of Cardinal Health common stock and their subsequent disposition of such common stock, if any, and provides that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation.  Accordingly, Rule 23(e)(2)(D) is satisfied.

### E.     The Judgment of Experienced Trial Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied.  Lead Plaintiff, through its counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Defendants; the likelihood of prevailing on the claims; the risk, expense, and duration of continued litigation; and any appeals and subsequent proceedings, has concluded that the Settlement is fair, reasonable, and in the best interest of the Settlement Class.

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class.  *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer to the judgment of experienced counsel who have evaluated the strength of plaintiff's case); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (when a "'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair'"); *IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").  Here, Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action recoveries

- 13 -

4874-5824-8279.v1

throughout the country, including in this District and within the Sixth Circuit. *See* www.rgrdlaw.com. Given the experience possessed by Lead Counsel, weight should be given to its determination that, taking into account the strength of the claims alongside the time, expense, complexity of the issues, and uncertainty of trial and any appeals, the Settlement set forth in the Stipulation is a good result that confers substantial, immediate benefits on the Settlement Class.

### F. The Sixth Circuit's Public Interest Factor Is Satisfied

The public interest factor supports approval of the Settlement. Indeed, as a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this. *See, e.g.*, *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("the law generally favors and encourages the settlement of class actions"), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982); *Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014) ("The Court further recognizes that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $109 million recovery are clear. Given the litigation risks involved, it is a great result for the Settlement Class. It could not have been achieved without full commitment by Lead Plaintiff and its counsel. Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be sent to the Settlement Class. While Lead Plaintiff and its counsel believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked simply to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing, pursuant to Fed. R. Civ. P. 23(e), to consider any expressed views by Settlement Class Members of the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of

- 14 -

fees and expenses, including Lead Plaintiff's request for an award of its time and expenses incurred in representing the Settlement Class. Fed. R. Civ. P. 23(e); *Motter*, 2014 WL 12892732, at *1.

## IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the Rule provides, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Notice Order will require the Claims Administrator to (i) notify Settlement Class Members of the Settlement by mailing a copy of the Postcard Notice by First-Class Mail to all Settlement Class Members who can be identified with reasonable effort,[4] and (ii) cause a copy of the Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. The proposed method of giving notice to Settlement Class Members is appropriate because it is calculated to reach Settlement Class Members who can be identified with reasonable effort. *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (notice scheme sufficient because it was "'reasonably calculated to reach interested parties'"); *Williams*, 720 F.2d at 921 (plaintiff class must receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort); *Kizer v. Summit Partners, L.P.*, 2012 WL 1598066, at *9 (E.D. Tenn. May 7, 2012) (sufficient notice where mailings were made to last known addresses of class members); Fed. R. Civ. P. 23(e)(1)(B) (courts "must

---

[4] The Postcard Notice will include a QR Code which will take the user directly to the case-specific website (www.CardinalHealthSecuritiesSettlement.com), which contains the long form Notice and Proof of Claim form.

- 15 -

direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]").

As required by Fed. R. Civ. P. 23(c)(2) and the PSLRA (15 U.S.C. §78u-4(a)(7)), the Notice describes in plain English the nature of the Litigation; sets forth the definition of the Settlement Class; states the Settlement Class' claims; and discloses the right of Settlement Class Members to object to the Settlement, Plan of Allocation, and/or Lead Counsel's fee and expense request or award to Lead Plaintiff, and explains that Settlement Class Members may exclude themselves from the Settlement Class, provides the deadline and procedure for doing so, and warns of the binding effect of settlement approval proceedings on Settlement Class Members who do not exclude themselves. In addition, the Notice describes the Settlement; the Settlement Amount, both in the aggregate and on an average per-share distribution basis; explains the Plan of Allocation; sets out the amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis and the amount sought by Lead Plaintiff for its time and expenses; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement.  The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for appearing at the hearing.  Lead Counsel believes that the Notice will fairly apprise Settlement Class Members of their rights with respect to the Settlement, that it is the best notice practicable under the circumstances, and that it should be approved.

## V.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As part of the Settlement, the parties request that the Court certify the following Settlement Class:

- 16 -

4874-5824-8279.v1

all Persons who purchased or otherwise acquired Cardinal Health common stock between March 2, 2015 and May 2, 2018, inclusive, and were allegedly damaged thereby. Excluded from the Settlement Class are: (i) the Defendants; (ii) the current and Class Period officers and directors of Cardinal Health; (iii) the Immediate Family Members of the Individual Defendants; and (iv) the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party and any entity in which such excluded persons have or had a controlling interest. Also excluded from the Settlement Class is any Person who would otherwise be a Member of the Settlement Class but who validly and timely requests exclusion in accordance with the requirements set by the Court in connection with the Settlement.

Stipulation, ¶1.35.

In certifying a class for purposes of settlement, courts are afforded broad discretion. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Moreover, courts within this Circuit overwhelmingly find securities fraud actions appropriate for class treatment. *See, e.g.*, *Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012); *Beach v. Healthways, Inc.*, 2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010). As demonstrated below, for settlement purposes only, the requirements of Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy) and (b)(3) (predominance of common questions of fact or law and superiority of the class action as the method of adjudication) are readily satisfied here.

### A.    The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.    Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. As the Sixth Circuit has held, "[n]umerosity is not measured by a strict numerical test." *Randleman v. Fid. Nat'l Title Ins. Co.*, 247 F.R.D. 528, 534 (N.D. Ohio 2008) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). Rather, a "substantial" number of members usually satisfies the requirement. *Id*.

Courts have regularly recognized that the numerosity requirement can be assumed in class action suits that involve "'nationally traded securities,'" such as this one. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009); *see also In re Accredo Health, Inc.*, 2006 U.S.

- 17 -

Dist. LEXIS 97621, at *17 (W.D. Tenn. Mar. 7, 2006) (in cases involving a nationally traded security, "'the prerequisite expressed in Rule 23(a)(1) [numerosity] is generally assumed to have been met'"); *In re Direct Gen. Corp. Sec. Litig.*, 2006 WL 2265472, at *2 (M.D. Tenn. Aug. 8, 2006) (citing *Am. Med. Sys.*, 75 F.3d at 1079) (certifying similar class).

The numerosity requirement is satisfied here because during the Class Period, an average of 2.46 million shares of Cardinal Health common stock traded on a daily basis, meaning there are likely thousands of Settlement Class Members.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mandate that all class members make identical claims and arguments. *Ross*, 257 F.R.D. at 442 ("The claims of the potential class members need not be factually identical."). Rather, "'the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation.'" *Id.* (quoting *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)). In fact, "[t]he commonality test requires only a single issue common to all class members." *Psychiatric Sols.*, 2012 WL 1071281, at *35.

Here, the Complaint's allegations raise numerous questions common to the Settlement Class, including, *inter alia*, whether: (1) Defendants made materially false or misleading statements or omissions to investors regarding the acquisition and performance of Cordis; (2) Defendants acted with scienter; (3) Defendants' alleged misrepresentations caused the putative Settlement Class to suffer damages; (4) Defendants violated the federal securities law; (5) the Individual Defendants were "controlling persons" within the meaning of §20(a) of the Exchange Act (Complaint, ¶¶155-157); and (6) whether defendant Barrett's sales of Cardinal Health common stock were made contemporaneous with Lead Plaintiff's and other Settlement Class Members' purchases in violation

- 18 -

of §20(A) of the Exchange Act.  Because all Settlement Class Members' claims depend on the answers to these common questions, commonality is established.  *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003) (explaining that questions bearing upon misrepresentations and materiality are among "the paradigmatic common question[s] of law in a securities fraud class action").  Other courts have likewise found the commonality requirement satisfied under similar circumstances.  *See Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *3 (M.D. Tenn. June 26, 2017); *Psychiatric Sols.*, 2012 WL 1071281, at *34-*36; *Direct Gen.*, 2006 WL 2265472, at *2. Thus, because Lead Plaintiff's claims arise from the same set of facts, are based on common legal arguments, and arise from the same course of fraudulent conduct, Rule 23's commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "'The requirement of typicality is not onerous.'"  *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008).  So long as the claims and defenses of a proposed class representative arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory,'" they are typical.  *Am. Med. Sys.*, 75 F.3d at 1082; *Direct Gen.*, 2006 WL 2265472, at *3.  In other words, typicality exists where, as here, a "'sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'"  *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, neither the facts nor the legal theories on which this action is based (violations of §§10(b), 20(a) and 20(A) of the Exchange Act) are unique to Lead Plaintiff because all Settlement Class Members' claims arise from their investment in Cardinal Health common stock during the

- 19 -

4874-5824-8279.v1

Class Period. Lead Plaintiff and all other Settlement Class Members also allege that their purchase of artificially-inflated Cardinal Health common stock was a result of Defendants' alleged material misrepresentations and omissions as described in the Complaint. Lead Plaintiff's claims satisfy the typicality requirement.

### 4. Adequacy of Class Representatives

The Sixth Circuit's criteria for determining the adequacy requirements in Rule 23(a) provide that: (i) "'the representative must have common interests with unnamed members of the class'"; and (ii) "'it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083; *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) ("The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another."). The first of these two requirements overlaps with the commonality and typicality prerequisites and merely acts to ensure that the representatives have interests coextensive with, rather than antagonistic to, the interests of the unnamed class members. *See Direct Gen.*, 2006 WL 2265472, at *4. The second factor requires that the representatives have sufficient financial and personal involvement to encourage them to prosecute the action vigorously and that they have adequate resources and legal representation to meet the demands of maintaining the action. *Id.* Lead Plaintiff satisfies both prongs of Rule 23(a)(4)'s adequacy test.

Lead Plaintiff's interests are neither antagonistic to nor in conflict with the interests of the other Settlement Class Members. To the contrary, Lead Plaintiff acquired Cardinal Health common stock during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Settlement Class Members. In prosecuting its claims,

4874-5824-8279.v1

Lead Plaintiff has also vigorously prosecuted the claims of other Settlement Class Members.  Lead Plaintiff actively participated in the prosecution of this Litigation.

Moreover, Lead Counsel is highly qualified and its attorneys are experienced in the successful prosecution of class actions, satisfying the second prong of Fed. R. Civ. P. 23(a)(4).  *See* www.rgrdlaw.com.  Lead Counsel has been commended by this Court in this District and across the country for the quality of its representation in class action lawsuits.  *See, e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (recognizing that the representation provided by Robbins Geller, under its former name, was "superb" and "demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution" of the action); *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *10 (M.D. Tenn. Sept. 22, 2014) (affirming that Robbins Geller will "vigorously prosecute" the litigation); *Psychiatric Sols.*, 2012 WL 1071281, at *39 (finding Robbins Geller "experienced and will protect the interests of the class").

### B.     The Settlement Class Meets the Requirements of Rule 23(b)

"'The predominance test is not a numerical test and does not require the court to add up the common issues and the individual issues and determine which is greater.'"  *Bovee*, 216 F.R.D. at 605 (quoting *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 375 (D. Del. 1990)).  "'Rather, the court must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members.'"  *Id.*  As the Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

"Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones."  *Weinberg v.*

*Insituform Techs.*, 1995 WL 368002, at \*7 (W.D. Tenn. Apr. 10, 1995). Here, it is clear that common questions of law and fact predominate over individual questions because Defendants' liability turns on issues that are common to all the Settlement Class Members, *i.e.*, whether the Defendants made material misrepresentations and/or omissions with the requisite scienter.

Where, as here, a plaintiff alleges a continuous course of conduct on the part of defendants, and attempts to prove that alleged activity with evidence common to the class, the predominance test is met. *See Bovee*, 216 F.R.D. at 607 (noting when fraud-on-the-market theory is invoked, courts agree that legal and factual issues common to all members of class predominate).

The superiority analysis of Rule 23(b) requires that the Court examine whether a class action is superior to other methods of adjudication, such as joinder. Fed. R. Civ. P. 23(b)(3). This provision is intended to permit class actions that would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615. The Court must consider four factors to ensure that superiority is met: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability or undesirability of concentrating claims in one forum; and (4) the difficulties likely to be encountered in management of a class action. *Id*. at 616. Courts have found the superiority requirement is met where, as alleged here: (1) many of the class investors likely have suffered only small losses, making it improbable that they can afford to proceed with their claims as individuals; (2) use of the class action vehicle will achieve judicial economy, as well as prevent inconsistent judgments; (3) there are no other actions against the company involving the same claims; and (4) the court foresees no particular difficulties with adjudicating the class action. *Weinberg*, 1995 WL 368002, at \*8.

- 22 -

There is no indication that a substantial number of absent Settlement Class Members would prefer to control the prosecution of their claims individually. In any event, any Settlement Class Member who desires to do so will have the opportunity to opt-out of the Settlement Class. Additionally, Lead Counsel is unaware of any other litigation in the United States by investors against Defendants asserting the claims involved in this Litigation. Further, concentration of the Litigation in one forum is desirable to avoid potentially inconsistent adjudications and promote fairness and efficiency. Finally, this case presents no unusual difficulties in maintaining the class action or providing notice to the Settlement Class.

Not only is the class action device the superior method for adjudicating the claims alleged in the instant case, it is the only practical method of obtaining a fair and efficient disposition of these claims. *See Bovee*, 216 F.R.D. at 607 ("Given that the proposed class consists of thousands of members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute."). The alternative to a class action either leaves potentially thousands of investors without recourse, or requires a multiplicity of suits throughout the United States resulting in the inefficient administration of justice. *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 1996 WL 739170, at *9 (W.D. Mich. Sept. 27, 1996) (Stating, "[i]f this Court does not certify this class, hundreds of small shareholders . . . will be effectively barred from seeking legal redress of their claims. Furthermore, because the potential class members 'seek a determination on essentially the same issues, . . . a class action would enhance judicial economy and efficiency.'"). This is precisely "the evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

In short, because the class action device is far superior to any other means available to this Court, the requirements of Rule 23(b)(3) are met.

- 23 -

4874-5824-8279.v1

## VI.  PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a Final Approval Hearing date, dates for mailing the Postcard Notice and publishing the Summary Notice, and deadlines for objecting to the Settlement, opting out of the Settlement Class, and filing papers in support of the Settlement.  The parties propose the following schedule:

| | |
|---|---|
| Postcard Notice mailed to the Settlement Class (the "Notice Date") | 21 calendar days after the Notice Order is signed and entered |
| Summary Notice published | 7 calendar days from the Notice Date |
| Deadline for filing Proofs of Claim | 90 calendar days from the Notice Date |
| Deadline for filing papers in support of the Settlement, Plan of Allocation, Lead Counsel's request for an award of attorneys' fees and expenses, and Lead Plaintiff's award of time and expenses | 35 calendar days prior to the Final Approval Hearing |
| Deadline for objecting to the Settlement, Plan of Allocation or attorneys' fees and expenses and for opting out of the Settlement Class | 21 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers in support of the Settlement, Plan of Allocation, Lead Counsel's request for an award of attorneys' fees and expenses, and Lead Plaintiff's award of time and expenses | 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, at least 100 calendar days after the entry of the Notice Order |

## VII.  CONCLUSION

The proposed $109,000,000.00 Settlement is an outstanding result for the Settlement Class. For the reasons set forth above, Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the Notice Order.

- 24 -

4874-5824-8279.v1

DATED:  April 3, 2023

Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP


s/ Joseph F. Murray
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
TOR GRONBORG
LAURIE L. LARGENT
JENNIFER N. CARINGAL
CHRISTOPHER R. KINNON
J. MARCO JANOSKI GRAY
MEGAN A. ROSSI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
torg@rgrdlaw.com
llargent@rgrdlaw.com
jcaringal@rgrdlaw.com
ckinnon@rgrdlaw.com
mjanoski@rgrdlaw.com
mrossi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 25 -

4874-5824-8279.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Joseph F. Murray
JOSEPH F. MURRAY

MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

Email:  murray@mmmb.com

# Mailing Information for a Case 2:19-cv-03347-EAS-EPD Louisiana Sheriffs Pension & Relief Fund v. Cardinal Health, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laura M Andracchio**
  landracchio@rgrdlaw.com

- **David S Bloomfield , Jr**
  dbloomfield@porterwright.com,mruyf@porterwright.com,LMKofke@wlrk.com,djosef@porterwright.com,wdsavitt@WLRK.com

- **Elizabeth N. Brandt**
  enbrandt@wlrk.com

- **Spencer Burkholz**
  SpenceB@rgrdlaw.com

- **Jennifer Caringal**
  JCaringal@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com,ckopko@ecf.courtdrive.com

- **Edward John Jacobs**
  ejacobs@bakerlaw.com

- **Marco Janoski**
  mjanoski@rgrdlaw.com

- **Christopher R. Kinnon**
  CKinnon@rgrdlaw.com,agonzales@ecf.courtdrive.com

- **Lauren M. Kofke**
  lmkofke@wlrk.com

- **Laurie Largent**
  llargent@rgrdlaw.com,AGonzales@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Todd Aaron Long**
  tlong@mcneeslaw.com,kfoster@mcneeslaw.com,talattorney@gmail.com

- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com,tiffany@ecf.courtdrive.com,murray@ecf.courtdrive.com

- **Darren J Robbins**
  tedp@rgrdlaw.com

- **Megan Allison Rossi**
  MRossi@rgrdlaw.com

- **Alexandra P. Sandinsky**
  APSadinsky@wlrk.com

- **William Savitt**
  wdsavitt@wlrk.com

- **Robert Ward Trafford**
  rtrafford@porterwright.com,tmagley@porterwright.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`