RICHARD W. NAGEL
CLERK OF COURT

202 JUL 11  PM 2: 23

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
EAST DIV. COLUMBUS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LOUISIANA SHERIFF'S PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated<br>Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH, INC., et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 2:19-cv-03347

CLASS ACTION

District Judge Edmund A. Sargus Jr.

Magistrate Judge

Elizabeth A. Preston Deavers

## OBJECTION
## TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD
## AND REQUEST FOR DOWNWARD ADJUSTMENT

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim ID: CHSS-400701-8) submits this **OBJECTION, to apply to the entire class,** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, and respectfully requests modification and downward adjustment of any pending or submitted Plaintiff's Motion/Application For Award of Attorneys' Fees and Expenses, and denial of any Class Representative Service Award (herein the 'Motion' or 'Application') because such Motions are unreasonable, unfair and not in the best interest of the Settlement Class Members.

2. Dates, prices and number of Cardinal Health, Inc. (stock symbol 'CAH") purchased/sold by me during the Class Period, to the best of my knowledge are shown in the attached Exhibit A Fidelity Investments Trade Confirmation for CAH Shares between March 2, 2015 and May 2, 2018.

3. I have participated to the best of my recollection in making objections in the following Class Actions:  Circuit Court Of Cook County, Illinois County Department, Chancery Division, Case No. 2021ch05392; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; United States District Court Southeren District Of New York, Civil Action No. 1:18-Cv-07143-Jmf; In The United States District Court For The Eastern District Of Michigan Southern Division, Case No. 2:19-Cv-

11745; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; In the United States District Court Southern District of New York, Case No. 1:20-cv-10041-PKC

*This Objection is based on those documents of record in Plaintiffhttps://www.CardinalHealthSecuritiesSettlement.com,, as of the date of this Objection.*

## OBJECTION

3.      Rationale behind this Objection, includes...

3.1 Although Representative Plaintiffs and Defendants in this Class Action Lawsuit have ostensibly approved the Application, I, a class member, do not agree with such approval, and hereby submit this Objection.

3.2 An up to 30% contingency attorney fee and payment representative plaintiff's are not in the best interest of Settlement Class Members and are not reasonable.

3.3 Any request for attorney fees must be thoroughly tested for its reasonableness, and should take into account:

3.3.1   American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness takes into account...
    - the time and labor required,
    - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
    - the fee customarily charged in the locality for similar legal services;
    - the amount involved and the results obtained;
    - the time limitations imposed by the client or by the circumstances;
    - the nature and length of the professional relationship with the client;
    - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
    - whether the fee is fixed or contingent

3.3.2   The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in
- o   Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
    - o   Determining reasonable fees under the **lodestar method** is a two-step process.
        - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.

- The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
- Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- Reasonableness takes into account the factors used by the traditional fee *determination.*

3.3.3 Class Action Fairness Act of 2005;

- o Since the case was brought under CAFA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval which takes into account…
  - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5. The economics of the requested Motion indicate:

5.1 The advertised proposed total (gross before attorney fee, expense deductions) Settlement to all Class Members is $109,000,000.

5.2 Individual Class Member award are estimated to be $0.21 per share (gross, before deduction of attorneys fees and costs) or in my case for 79 shares, $16.59 or net after attorneys fees and expenses of about $11.75 (less 30%). A simple calculation of dividing the $109,000,000 settlement amount by estimated outstanding CAH shares (approximately 320,000,000 during the period of interest) indicates a $0.34 per share back of the envelope result, in the ballpark with the cited $0.21 per share The allegation of trying to establish approximately 0.4% to 0.2% ($0.21/$55 and $0.21/$91, range of indicative stock value during the period of interest) of the stock value of CAH as being associated with fraud (with the stock price during the period of interest ranging from about $55 to $91), is consistent with opinionated experts finding a tempest in a teapot since statisticians who for hire can 'prove' anything given enough rhetoric and time – the fog index. To cite a swing of $0.21 in a stock price hovering between $55 to $91 per share as fraud related would indeed take a keen expert eye to define that volatility in 'natural' non-fraud related free

market stock swings as being definitively associated with fraud. That as it may be, the economic expert is the one making the case not astute legal acumen, using the counting of reviewed pages (most of which are irrelevant) as a big part of an 'argument' to defend huge fees – thus clearly a need to review the reasonableness of a an up to 30% contingency attorney fee claim as being unreasonable.[1]

5.4 Total Attorney Expenses applied for are $ 850,000, and no doubt the consulting fee of economic experts, the real workers in the case, buried in that number.

5.5 Attorney Fees applied for up to 30% of $109,000,000 or $32,700,000!

5.6 Attorney hours spent on the case and hourly rates are unspecified.

5.7 The Court is requested to deny any requests for the any payments or bounty fee, the cited $35,000 payment, to any Representing Plaintiff's, since such payment is for all practical purposes in the nature of a bounty paid for winning the race to the courthouse to first file a lawsuit, and such fee merely an inducement for courthouse racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members which is considered to be outrageous, unreasonable and not fair. The Class Members are all victims and to treat some grossly different than others shocks the conscience of justice and should likewise shock the conscience of the Court.

5.8 The disparity between the expert statistics determined yet speculative amount of recovery, to each Class Member, compared to the 'firm' paycheck each attorney would receive points to an exorbitant and unreasonable basis of on which to base attorney fees.

6. The proposed Attorney Fee Application/Motion is unreasonable in the following respects:
   - A fee of up to $32,700,000 based on a 30% contingency amount of the Settlement is outrageous, unreasonable and should shock the conscience of the Court, as it relegates a non-tort law consumer/investor stock claim based on white collar fraud allegations, with one based on tort law, to the same characteristic of ambulance chasing attorney's associated with negligence claims where contingency fees have become the norm and a key incentive factor for tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident truck drivers) to

---

[1] An outrageous unreasonable request for an up to 30% contingency attorney fee (and if 'up to', how about landing on something like say '5%'? as a reasonable based guess?) is comparable to the Russian parable where a Russian Admiral was defending the loss of a Russian submarine and in that argument concentrated on 'saving' 10,000 forks, 10,000 spoons, 10,000 plates, 10,000 cups...etc., yet 'lost' only one submarine, is a comical example of outrageous defense for being justified in one's request for putting forth an effort. This parable is no less applicable to economic experts citing less than 0.5% stock price swing as being associated with fraud yet the related market price swing exceeding 50% as not being fraud related, would even to the most casual observer, resonate as being statistical wizardry and has nothing to with expended attorney fee hours. As the attached discussion paper advises, another example of the Class Action lawsuit industry primarily being used as a transport vehicle for asserting huge and outrageous and unnecessary attorney fee reimbursement. The Court has a chance to put justice right by honorably using its absolute discretionary powers and finding an attorney contingency fee of 30% to be outrageous and unreasonable, and landing on a much more reasonable result...maybe 5%?

advance cases and big attorney pay checks sourced from the real suffering of others, whether they have merit or not, because of the vicissitudes faced by defendant's burdened more so with not defending the merits of a case but the emotions and sympathy of a jury (or the Court), stirred up by plaintiff counsel rhetoric. The more honest argument is attorney fee claims should/must be based on defense of time and hourly rate as the proper measure of 'earned' attorney fee, not convenient negligent type contingency fee claims. Using an argument that other Courts have permitted high contingency fee as a basis of defending such a fee, is no less hollow an argument than a small child arguing why he or she should also get a cookie since his sibling received one.

- The case claim is all about hired gun academic or consultive experts, using the wizardry of statistical analysis – where just about any hypothesis including those associated with security fraud complaints associating published statements with creating a fraud and how it affects decimal place value of stock, whether real or imaginary (especially when the natural variance of the stock market is what the market is all about or it would not exist) – is defended as being possible, probable or likely. And the vagaries of security fraud law coupled with counsel crafting a case…whether real or fantasy….further insulates plaintiff's from finding the real truth of a claim and a defendant deprived of being given the honest right to address and defend real issues. What all this means is that the substance of a case is primarily based on the hired gun statistical driven experts establishing and 'proving' the case with statistical proofs and not the acumen of the lawyers…who are predominantly advancing procedural tasks. Consequently the real and honest 'value' of fees and effort of the claim is buried in the $850,000 expense claim, where ostensibly the hired gun expert fee is buried and not in ancillary claimed 30% contingency attorney fee. How $850,000 real expense is converted to a justified and shamelessly defined as a reasonable $32,700,000 phantom attorney fee claim is part of the magic (and an incentive to craft and advance Class Action lawsuits by attorneys) of the Class Action industry process and why contingency fees should/must be disallowed in favor of defending time and hourly rate attorney fee defenses so long as that defense is reasonable, realistic and not pumped up like a circus barker.

- While Class Actions at times have their place in justice, like all things in life the Class Action process – and associated attorney fee claims - can be **used** for its intended purpose (seeking real justice – though small as it may be for each 'victim' where there are many victims and real bad guys) or otherwise **misused** or **abused**, by incentives other than justice such as a vehicle for securing huge attorney fees. That misuse and abuse option is fertile ground for crafty counsel to formulate a Class Action case much based on the vagaries of security law (incentivized by a huge multi-million dollar contingency fee pay check paid for by the 'victims') based on Class Action causes of action vagaries and uncertainties, resulting in an attack on well meaning defendants (most of which are law abiding advocates and publicly traded companies who are duty bound to adhere to a myriad of regulatory standards, who consistently hire their own experts to give them guidance regarding compliance with the law and honestly try to do the right thing) and they then paying out huge (and generally unreasonable) settlement checks a huge portion of which are paid to attorneys. That is not reasonable. The accompanying Amicus Curiae brief on the Class

Action industry and attorney fee abuse further illustrates the misuse and abuse of the Class Action industry process, which this Claim is alleged to be part of, and what can be advanced to put real justice back into the definition of Class Action, and not a transport vehicle misused or abused to create huge attorney fee paychecks.

- Every day every human in life faces a continuum of events that could arguably be viewed as causing some type of Class Action harm (where harm is not in the best interest of the victim). There is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny…else we all would all be borne in the courthouse and never leave. An unusual long crossing train at a road intersection that has stopped moving traffic and the stalled driver's time being 'stolen' by the slow moving train; the vending machine stealing our quarter with no product in return because of a mechanical glitch in the machine; lightening induced power outages affecting utility operators and the loss of consumer production time; stock values that naturally and constantly go up and down – buy low/sale high strategy does not always work and without that variance the market would not exist; are all just some examples of assumed risk in society. Basing huge Class Action attorney's fees on converting an otherwise assumed risk into a justice claim…is but one of many circumstances courts are charged with assisting with and defining what justice means and to what extent one pays for the claims of another. Consequently, yet more arguments why Class Action attorney fee claims should be based on defending time spent and hourly rate as being reasonable, not based on the tort industry contingency fee arena, and not inflated due to crafting a case – then citing copious pages of reviewed case documents - instead of asserting righteous justice merits.

7 Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to unreasonable attorney fees.

8. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $32,700,000 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate. The weight and justification of an argument should not be based on the weight of the case document pages but on the weight of the evidence, merits of the case and what justice is all about…righting a wrong but not at the unreasonable expense of victims and defendants paying outrageous and unreasonable attorney fees.

9. Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o While it is instructive to take into account attorney work claims of:

- o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of security fraud issues, are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.
- o The merits of the case are determined by the expert fee buried in the $850,000 expense claim and NOT in an up to 30% contingency fee payment to attorneys. Just like the loss of the Russian submarine, the alleged stock fraud loss is defined by the hands of the expert statisticians and not in the attorney rhetoric citing the weight of case documents as the basis of a fee – the saved spoons if you will…

10, It is hoped that the Court considers this Objection in the context of how it affects all Class members and not in the confines of the small number of shares this Applicants owns, and not ignored as yet another small irrelevant squeaky wheel. Justice for ALL sort of thing…

Respectfully submitted

This _29_ day of _June_ , 2023.

_Larry D. Killion_

[Larry D. Killion, Applicant]
Settlement Class Member

713 906-9135, (mobile)
11235ldk@comcast.net email
2114 Oxford Street
Houston, Harris County, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the _29_ day of _June_ , 2023, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE MOTION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

**OFFICE OF THE CLERK
UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO
Joseph P. Kinneary U.S.
Courthouse
Room 121
85 Marconi Boulevard**

Columbus, OH 43215

LEAD COUNSEL
ROBBINS GELLER
RUDMAN & DOWD LLP
Ellen Gusikoff Stewart
655 West Broadway,
Suite 1900
San Diego, CA 92101

DEFENDANT'S COUNSEL
WACHTELL, LIPTON, ROSEN & KATZ
Lauren M. Kofke
51 West 52nd Street
New York, NY 10019

I, Larry D. Killion, further certify I am a Settlement Class Member.

_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**EXHIBIT A**

**Dates, prices and number of CAH purchased/sold during the Class Period.**

Cardinal Health Inc. Class Action

Single transaction between Mar 2, 2015 and May 2, 2018 confirmed below.  To the best of my knowledge, I did not own any  CAH stock before February 2018.



| | |
|---|---|
| | **Transaction Confirmation**      Page 1 of 20<br>**Confirm Date: February 26, 2018** |

Brokerage Account Number
Y▓▓▓505 IRA - ROLLOVER

**LARRY D KILLION**

0300000059

FMT CO CUST IRA ROLLOVER
FBO LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

| Online | Fidelity.com/pas |
|---|---|
| FAST(sm)-Automated Telephone | 800-544-5555 |
| Premium Services | 800-544-4442 |
| 8am - 11pm ET, Mon - Fri | |
| Portfolio Advisory Services | 800-544-3455 |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18057-0B9LKC | 1* | 000 | 02-26-18 | 02-28-18 | 14149Y108 | 18057-JJMQXB | | |

| | | DESCRIPTION and DISCLOSURES | | |
|---|---|---|---|---|
| You Bought | | CARDINAL HEALTH INC | Principal Amount | 5,485.37 |
| | 79 | WE HAVE ACTED AS AGENT. | Settlement Amount | 5,485.37 |
| at | 69.4350 | AVERAGE PRICE TRADE DETAILS ON REQUEST | | |
| Symbol: | | | | |
| CAH | | | | |

My Fidelity account summary for July 2018 showing 79 shares of CAH stock owned by me.



