UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:19-cv-03347 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | District Judge Edmund A. Sargus, Jr. |
| | ) | Magistrate Judge Elizabeth A. Preston Deavers |
| vs. | ) | |
| CARDINAL HEALTH, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (II) APPROVAL OF PLAN OF ALLOCATION, AND (III) FINAL CLASS CERTIFICATION

4867-3314-6993.v1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ......................................................3

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL...................................4

        A.      Legal Standards for Final Approval of Class Action Settlement............4

        B.      The Rule 23 and Sixth Circuit Factors Support Approval.......................5

                1.      The Settlement Class Was Adequately Represented ...................5

                2.      The Absence of Fraud or Collusion Favors Approval .................6

                3.      The Relief Provided to the Settlement Class Is Adequate ..........7

                         a.      The Complexity, Expense and Likely Duration of the Litigation.........................................................................7

                         b.      The Likelihood of Success on the Merits ......................8

                  4.      The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ....................................................10

                5.      Lead Counsel and Lead Plaintiff Endorse the Settlement .........11

                  6.      The Reaction of the Settlement Class Supports Final Approval................12

                  7.      Public Interest Favors Approval of the Settlement ...................12

                  8.      Other Rule 23(e)(2) Factors Support Final Approval ...............13

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................14

V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED..............................15

VI.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS.............................................................................16

VII.   CONCLUSION..................................................................................................18

4867-3314-6993.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................16

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018)...........................................................7

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) .........................................................11

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020)...........................................................10

*Boove v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) .............................................................................16

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) .....................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ..........................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ......................................................................................9

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ....................................................................................5

*In re Accredo Health, Inc.*,
2006 U.S. Dist. LEXIS 97621
(W.D. Tenn. Mar. 7, 2006) ........................................................................................15

*In re Am. Med. Sys. Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...............................................................................15, 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ....................................................................................9

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006).............................................................................12

*In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .............................................................................7

- ii -

**Page**

*In re Direct Gen. Corp. Sec. Litig.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ........................................................................16

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
2009 U.S. Dist. LEXIS 45790 (S.D. Ohio May 27, 2009) ......................................................13

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ......................................................................14

*In re Packaged Ice Antitrust Litig.*,
322 F.R.D. 276 (E.D. Mich. 2017) ...........................................................................................6

*In re Polyurethane Foam Antitrust Litig.*,
2015 WL 1639269 (N.D. Ohio 2015).......................................................................................13

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2023)........................................................................12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014) ....................................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)
*aff'd*, 838 F.3d 223 (2d Cir. 2016) ............................................................................................9

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).........................................................................................9

*Karpik v. Huntington Bancshares Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021).............................................................6, 7, 8, 12

*Kritzer v. Safelite Sols., LLC*,
2012 WL 1945144 (S.D. Ohio May 30, 2012) ........................................................................11

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006),
*aff'd sub nom. Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ..............................................................................................8, 17

*N.Y. State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226 (E.D. Mich. 2016) ......................................................................11, 12, 13, 18

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) ..............................................................................................8, 12

- iii -

**Page**

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ...............................................................................................9

*Robinson v. Shelby Cnty. Bd. of Educ.*,
 566 F.3d 642 (6th Cir. 2009) ...................................................................................................4

*Ross v. Abercrombie & Fitch Co.*,
 257 F.R.D. 435 (S.D. Ohio 2009) ..........................................................................................15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007)................................................................................................................12

*UAW v. GMC*,
 497 F.3d 615 (6th Cir. 2007) ........................................................................................ *passim*

*Wright v. Premier Courier, Inc.*,
 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018)...................................................................5, 11

*Young v. Nationwide Mut. Ins. Co.*,
 693 F.3d 532 (6th Cir. 2012) ...................................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
 §78u-4 ........................................................................................................................2, 9, 17, 18
 §78u-4(a)(4) .........................................................................................................................1, 3
 §78u-4(a)(7) .............................................................................................................................17

Federal Rules of Civil Procedure
 Rule 23 .................................................................................................................5, 15, 16, 18
 Rule 23(a).........................................................................................................................15, 18
 Rule 23(b) ................................................................................................................................16
 Rule 23(b)(3)......................................................................................................................16, 18
 Rule 23(c)(2)(B).............................................................................................................16, 17, 18
 Rule 23(e)(1) ...............................................................................................................................2
 Rule 23(e)(1)(B)........................................................................................................................16
 Rule 23(e)(2) .........................................................................................................................4, 13
 Rule 23(e)(2)(A) .........................................................................................................................5
 Rule 23(e)(2)(B)..........................................................................................................................6
 Rule 23(e)(2)(C)...........................................................................................................................7
 Rule 23(e)(2)(C)(ii).....................................................................................................................13
 Rule 23(e)(2)(C)(iii)....................................................................................................................13
 Rule 23(e)(2)(C)(iv)....................................................................................................................13
 Rule 23(e)(2)(D) ........................................................................................................................13

4867-3314-6993.v1

**Page**

Rule 23(e)........................................................................................................1, 4
Rule 23(e)(3) ......................................................................................................4

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
*Recent Trends in Securities Class Action Litigation:*
*2022 Full-Year Review* (NERA Jan. 24, 2023)......................................................1, 10

4867-3314-6993.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff 1199SEIU Health Care Employees Pension Fund ("1199SEIU" or "Lead Plaintiff") respectfully submits this memorandum in support of its motion for: (i) final approval of the proposed settlement of this securities class action; (ii) approval of the proposed Plan of Allocation; and (iii) final certification of the Settlement Class for settlement purposes.[1]

## I.    INTRODUCTION

After three years of hard-fought litigation, arduous settlement negotiations, and by their exceptional efforts, Lead Plaintiff and Lead Counsel have achieved a highly favorable proposed settlement of $109,000,000 (the "Settlement") for the benefit of the Settlement Class, which is several times greater than the median recovery for securities class action settlements in the past decade, both in absolute dollar value and as a percentage of estimated recoverable damages. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* at 18 (NERA Jan. 24, 2023) ("Jan. 2023 NERA Report"), attached as Exhibit A to the Largent Decl.  The Settlement was only achieved after a detailed investigation; the drafting and filing of a consolidated complaint; successfully defeating Defendants' motion to dismiss; fully briefing Lead Plaintiff's class certification motion; obtaining and analyzing close to three million pages of documents produced by Defendants and numerous third parties; taking and defending nine fact and expert witness depositions; and participating for almost three months in arm's-length settlement negotiations under the supervision of Judge Layn R. Phillips (Ret.) of Phillips ADR Enterprises.  There is no question that as a result of these extensive litigation

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated March 31, 2023 (the "Stipulation") (ECF 109) or in the accompanying Declaration of Laurie L. Largent in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Largent Declaration" or "Largent Decl.").  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

4867-3314-6993.v1

and settlement efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Settlement Class's claims and the propriety of settlement.

While Lead Counsel believes Lead Plaintiff's claims have significant merit, from the outset and throughout the Litigation, Defendants adamantly denied liability. Defendants denied that their statements were false or misleading, and denied acting with scienter, claiming they believed in good faith their statements were true. Indeed, a Securities and Exchange Commission ("SEC") investigation into claims similar to those as alleged by Lead Plaintiff concluded without any finding of fraud. Defendants also vigorously challenged the causal link between the August 2017 and May 2018 declines in Cardinal Health stock price and the alleged fraud, claiming that most, if not all, of the declines were due to non-fraud information about Cardinal Health's much larger pharmaceutical segment. To be sure, if any of these liability and damages arguments were successful at either summary judgment or trial, the Settlement Class would receive no recovery at all, or, damages would be significantly reduced.

Lead Counsel, with years of experience in prosecuting securities fraud class actions like this one, submits that the Settlement, which recovers in the range of 9.5% to 54.5% of the estimated recoverable damages based on various factors, is an excellent result based on all relevant factors. Moreover, Lead Plaintiff – the type of institutional investor Congress envisioned serving in that role when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") – fully supports the Settlement. The Settlement Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to potential Settlement Class Members pursuant to the Order Granting Preliminary Approval Under Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Settlement Class, ECF 110 (the "Preliminary Approval Order"), commencing April 25, 2023. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith. While the August 21, 2023 deadline to object to the

4867-3314-6993.v1

Settlement and Plan of Allocation has not yet passed, to date no objections to the Settlement or Plan of Allocation have been received.[2] Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Lead Plaintiff also requests that the Court finally certify the Settlement Class and approve the proposed Plan of Allocation, which was detailed in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"). This Plan governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation is based on the analysis of Lead Plaintiff's damages expert and subjects all Settlement Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Settlement Class Members paid for their Cardinal Health common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made. To date, no objections have been filed to the Plan.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Largent Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Lead Counsel's efforts on behalf of the Settlement Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

---

[2]    An "Objection to Plaintiffs' Motion for Award of Attorneys' Fees and Expenses, and Class Representative Service Award and Request for Downward Adjustment," was filed by Larry D. Killion. ECF 113. Notably, and not surprisingly, the objection does not take issue with the merits of the Settlement, and is addressed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum").

4867-3314-6993.v1

III.    **THE SETTLEMENT WARRANTS FINAL APPROVAL**

    A.    **Legal Standards for Final Approval of Class Action Settlement**

Federal Rule of Civil Procedure 23(e)(2) requires judicial approval for any compromise or settlement of class action claims and provides that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

Rule 23(e)(2) provides the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure, Subdivision (e)(2). The

Court considered these factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met. *See* ECF 110. Now that notice of the proposed Settlement has been provided to the Settlement Class, and no objections to the Settlement have been filed, the Court should confirm its findings in the Preliminary Approval Order.

Courts in the Sixth Circuit have also considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

In reviewing a proposed class action settlement, district courts have "'wide discretion in assessing the weight and applicability'" of the relevant factors. *Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

### B. The Rule 23 and Sixth Circuit Factors Support Approval

#### 1. The Settlement Class Was Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

- 5 -

4867-3314-6993.v1

These requirements have easily been met here. Lead Plaintiff's claims are typical of and co-extensive with the claims of the Settlement Class. Additionally, as detailed in Lead Plaintiff's declaration, 1199SEIU was involved in each stage of the Litigation, prepared for a deposition and provided deposition testimony, and worked closely with Lead Counsel to achieve the best possible result for the Settlement Class. *See* Declaration of Gabriel Ristorucci in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Class Counsel's Motion for Attorneys' Fees and Litigation Expenses and Lead Plaintiff's Application for Reimbursement of Litigation Expenses ("Ristorucci Decl."), ¶¶3-6, submitted herewith.

Likewise, Lead Counsel has adequately represented the Settlement Class. Lead Counsel is highly experienced in securities fraud litigation, with a long and successful track record representing investors in cases in courts throughout the country. For over three years, Defendants have fought this case at every stage – pleading, class certification, and discovery. *See* Largent Decl., ¶4; *see generally* ¶¶13-43. Despite Defendants' unrelenting challenges, Lead Counsel obtained an excellent and hard fought recovery for the Settlement Class. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "was willing to, and indeed did, commit substantial 'resources . . . to represent[] the class'").

## 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 291 (E.D. Mich. 2017); *see also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

Here, the proposed Settlement was reached after more than three years of litigation, with both sides vigorously advocating their respective positions.  Before engaging in mediation with Judge Phillips, a highly experienced mediator, the parties engaged in extensive formal discovery, both document discovery and fact and expert depositions, and were further informed by the complete briefing on Defendants' motion to dismiss and Lead Plaintiff's class certification motion.  Largent Decl., ¶¶13-39.  The settlement negotiations themselves were extensive, and included the exchange of mediation briefs and supporting evidence, two full-day, in-person mediation sessions on December 1, 2022 and February 8, 2023, two virtual mediation sessions in January 2023, and further discussions thereafter through Judge Phillips.  *Id.*, ¶¶40-43.  As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . virtually insures that the negotiations were conducted at arm's length and without collusion.'"  *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3. The Relief Provided to the Settlement Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the Settlement Class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors.  Fed. R. Civ. P. 23(e)(2)(C).  This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense, and likely duration of the litigation; and (ii) the likelihood of success on the merits.  Each of these factors supports approval.

### a. The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).  Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'"  *Karpik*, 2021 WL 757123, at *4.  Indeed, courts have consistently

- 7 -

recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (ellipsis in original), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves contested, complex issues relating to falsity, materiality, due diligence, causation, and damages.  For instance, whether Defendants made material misrepresentations and omissions was challenged throughout the case.  While the Court had denied Defendants' motion to dismiss with respect to several of Defendants' falsity challenges, the Court's ruling did not mean that Lead Plaintiff would necessarily succeed in proving falsity, or scienter, at summary judgment or trial given the demanding nature of securities fraud cases.  Additionally, Defendants aggressively argued that Cardinal Health's stock price declines following the alleged August 2, 2017 and May 3, 2018 disclosures were due to factors unrelated to the alleged misrepresentations and omissions, which could have significantly impacted the recoverable damages in the case.  Each of the contested issues required consideration of complex issues and voluminous evidence, including opinions from industry, loss causation, and damages experts.  Indeed, at the time the Settlement was reached, considerable work remained before the Settlement Class would have been in a position to obtain judgment on the merits and the complexity of these issues made victory at summary judgment or trial far from assured.

### b.    The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 WL 757123, at *5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).  In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the settlement.  *UAW*, 497 F.3d at 631.

Lead Plaintiff believes that the evidence establishes that: Defendants made material misrepresentations and omissions about the acquisition, integration, and business operations of Cordis during the Class Period, and that as a result of these misrepresentations and omissions, Lead Plaintiff and the Settlement Class suffered damages from their purchases of Cardinal Health stock. Nevertheless, there was no guarantee it would prevail at trial. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[3]

Here, as detailed in the Largent Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Settlement Class. Largent Decl., ¶¶45-53. Defendants have maintained that the evidence would establish at summary judgment (or trial) that none of their statements about the acquisition, integration or operations of Cordis were materially false or misleading; Defendants repeatedly disclosed to investors during the Class Period the operational and financial challenges Cordis was facing; Defendants lacked the requisite intent to defraud investors because they had a good faith belief in the truth of their statements; and that the price declines in Cardinal Health stock following the August 2017 and May 2018 disclosures were not caused by the alleged fraud but rather non-fraud information relating to

---

[3]  *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

4867-3314-6993.v1

Cardinal Health's much larger Pharmaceutical segment, which accounted for 90% of the Company's revenues.

Lead Counsel was fully informed of the strengths and weaknesses of Lead Plaintiff's case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Lead Plaintiff's favor in order to achieve a successful result.  In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured.  *See Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the [Settlement] Class.  When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Lead Plaintiff obtained a substantial recovery.  As explained in the Fee Memorandum, the Settlement Amount is 9.5% to 54.5% estimated recoverable damages (based on estimates the parties would likely use at trial), representing 5.2 to 30.2 times the median percentage recovery for all securities fraud class actions settled in 2022, which was 1.8%.  *See* Jan. 2023 NERA Report at 18.  Accordingly, the proposed Settlement is a very good result for the Settlement Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement."  *Id.* at 236.  Here, Lead Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Lead Plaintiff's claims.  During the Litigation, Lead Counsel had, among other things:

- researched and drafted the Consolidated Complaint;

- 10 -

- opposed and defeated Defendants' motion to dismiss;

- fully briefed Lead Plaintiff's class certification motion;

- engaged in extensive fact discovery, including reviewing and analyzing close to three million pages of documents produced by Defendants and numerous third parties and taking and defending nine fact and expert witness depositions;

- engaged for almost three months in settlement negotiations with Judge Phillips, a well-respected mediator; and

- assessed the risks of prevailing on Lead Plaintiff's claims at summary judgment and trial, the amount of damages to be awarded, and the Settlement Class's ability to prevail on any subsequent appeals.

Largent Decl., ¶¶4, 13-39.

There can be no question that by the time the Settlement was reached, Lead Plaintiff and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *N.Y. State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 237 (E.D. Mich. 2016), and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

### 5. Lead Counsel and Lead Plaintiff Endorse the Settlement

In assessing the fairness of a proposed settlement, courts give deference to counsel's recommendation for approval. *Wright*, 2018 WL 3966253, at *5 ("'The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'"); *see also Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of a plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the settlement evaluation process, Lead Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of

- 11 -

continued litigation.  Based on these considerations, Lead Counsel concluded that the Settlement is not only fair and reasonable but is a very favorable result for the Settlement Class.  Largent Decl., ¶¶5-7; *see also* ¶¶44-53; *Karpik*, 2021 WL 757123, at *6.  Likewise, Lead Plaintiff approves the Settlement.  *See* Ristorucci Decl, ¶7.  "Their support also favors approval."  *Karpik*, 2021 WL 757123, at *6.  Accordingly, this factor supports final approval.

### 6.     The Reaction of the Settlement Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class.  *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2023).  Pursuant to the Preliminary Approval Order, the Claims Administrator has disseminated over 398,600 Postcard Notices to potential Settlement Class Members.  To date, there have been no objections to the terms of the Settlement.  Thus, this factor favors approval of the Settlement.

### 7.     Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'"  *GMC*, 315 F.R.D. at 241-42.  As discussed herein, the Settlement provides $109,000,000 in cash, plus interest.  The Settlement puts an end to the Litigation, which, absent settlement would have continued in this Court and in the Sixth Circuit.  Thus, the Settlement also furthers public policy by conserving judicial resources.  *See In re Broadwing, Inc. ERISA Litig.*, 252

- 12 -

F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8. Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement. Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement per the proposed Plan of Allocation. *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

*Second*, as discussed in the accompanying Fee Memorandum, counsel are applying for an award of 30% of the common fund fee award as compensation for the services they rendered on behalf of the Settlement Class, as well as payment of litigation costs and expenses. The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 30% award is consistent with attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *7 (N.D. Ohio 2015) (awarding fees representing 30% of $147.8 million Settlement, or $44.34 million); *In re Nat'l Century Fin.*

- 13 -

*Enters., Inc. Inv. Litig.*, 2009 U.S. Dist. LEXIS 45790, at \*16 (S.D. Ohio May 27, 2009) (30% of settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit").[4]  Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees.  *See* Stipulation, ECF 109, ¶6.4.

**Third**, the Settling Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members exclude themselves.  *Id.*, ¶7.3.  This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at \*5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

**Fourth**, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, their, or its *pro rata* share of the Net Settlement based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The standard for approval of the Plan of Allocation of settlement proceeds is the same as for the Settlement itself.  Namely, it must be fair, reasonable, and adequate.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at \*15 (E.D. Mich. Dec. 13, 2011).  """"Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.""""  *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiff's damages expert, is fair, reasonable, and adequate.  The Plan of Allocation provides for the

---

[4]     Additional jurisprudence supporting this award is included in the Fee Memorandum.

- 14 -

distribution of the Net Settlement among Authorized Claimants on a *pro rata* basis based on their recognized loss.  Largent Decl., ¶¶54-55.  The Plan of Allocation ensures that the Net Settlement will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act.  Moreover, the Plan of Allocation was set forth in the Notice made available to Settlement Class Members and nominees and, to date, there have been no objections to the Plan of Allocation.  Thus, the Plan of Allocation is fair and reasonable and should be approved.

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Because class certification has not yet been formally ruled on, it necessary for the Court to certify a class pursuant to Rule 23 prior to approving the proposed Settlement.  In certifying a class for purposes of settlement, courts are afforded broad discretion.  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  Here, all the requirements for class certification are met.[5]

The four Rule 23(a) prerequisites to class certification – (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation – are satisfied.  First, numerosity is satisfied in cases involving nationally traded securities such as Cardinal Health's common stock.  *In re Accredo Health, Inc.*, 2006 U.S. Dist. LEXIS 97621, at *17 (W.D. Tenn. Mar. 7, 2006).  Second, commonality exists where, as here, all Settlement Class Members purchased Cardinal Health common stock subject to the same alleged misrepresentations and omissions.  *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009).  Third, typicality is satisfied by Lead Plaintiff having suffered losses following the disclosures, as the other Settlement Class Members did.  *Am. Med. Sys.*, 75 F.3d at 1082.  Fourth, Lead Plaintiff is an adequate representative because it has no conflicts with the other Settlement Class Members, and has been actively involved in the case,

---

[5]     The Court preliminarily certified the Settlement Class in the Preliminary Approval Order. ECF 110, ¶2.  Nothing has changed since that time which would require a different result here, and Lead Plaintiff respectfully incorporates herein its arguments in support of class certification in the Memorandum of Law in Support of Unopposed Motion for (I) Preliminary Approval of Settlement, (II) Class Certification, and (III) Approval of Notice to the Settlement Class.  ECF 108-1, §V.

4867-3314-6993.v1

maintaining communication with Lead Counsel, who is qualified, experienced, and able to conduct the Litigation. *Id.* at 1083; *In re Direct Gen. Corp. Sec. Litig.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006).

A proposed class action must also satisfy one of the tests of Rule 23(b). Lead Plaintiff brings this Litigation under Rule 23(b)(3): predominance of common questions of fact or law and superiority of the class action device as the method of adjudication. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 625 (1997). Here, common questions of law and fact predominate over individual questions because the alleged misstatements and omissions affected all Members of the Settlement Class in the same manner (*i.e.*, through public statements to the market). *Boove v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003) (noting when fraud-on-the market theory is invoked, courts agree that legal and factual issues common to all members of class predominate). Additionally, the class action mechanism is the best method of resolving all the individual claims aggregated in this matter because the controversy for each Settlement Class Member is identical and will result in the adjudication of all claims in one suit and one forum. *Amchem*, 521 U.S. at 615.

In short, because the class action device is far superior to any other means available to this Court, the requirements of Rule 23(b)(3) are met.

## VI. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Constitution's Due Process

- 16 -

Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Farley*, 534 F.3d at 514. The notice plan utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 398,600 copies of the Court-approved Postcard Notice to potential Settlement Class Members and nominees. *See* Murray Decl., ¶¶5-11. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *Business Wire*. *Id.*, ¶12.

The Claims Administrator also provided the Court-approved Notice online through the Settlement website. *Id*., ¶14. The Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. The Notice provides among other things: (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Settlement Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average per share recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Settlement Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Settlement Class Members; and (x) how to obtain additional information about the Litigation, by contacting Lead Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice

- 17 -

4867-3314-6993.v1

also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. B.

Lead Plaintiff and Lead Counsel have satisfied all of the elements of the Court-approved notice plan. *See generally* Murray Decl. Accordingly, the notice plan implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice plan "satisfied Rule 23's notice requirement"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VII.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) approve the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); and (iii) certify the Settlement Class for settlement purposes.

DATED: August 7, 2023                     Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP


*s/ Joseph F. Murray*
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
TOR GRONBORG
ELLEN GUSIKOFF STEWART
LAURIE L. LARGENT
JENNIFER N. CARINGAL
CHRISTOPHER R. KINNON
J. MARCO JANOSKI GRAY
MEGAN A. ROSSI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
torg@rgrdlaw.com
elleng@rgrdlaw.com
llargent@rgrdlaw.com
jcaringal@rgrdlaw.com
ckinnon@rgrdlaw.com
mjanoski@rgrdlaw.com
mrossi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 19 -