UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 2:19-cv-03347 |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) | District Judge Edmund A. Sargus, Jr. Magistrate Judge Elizabeth A. Preston Deavers |
| CARDINAL HEALTH, INC., et al., | ) ) | |
| Defendants. | ) ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4889-3266-6737.v1

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................1

II.  AWARD OF ATTORNEYS' FEES...........................................................................5

    A.  Lead Counsel Is Entitled to a Fee from the Common Fund Reflecting the Result Achieved and the Work Done.................................................................5

    B.  The Court Should Apply the Percentage Approach in Awarding Fees ...................6

    C.  The Requested 30% Fee Is Consistent with Awards in Common Fund Cases in This District and the Sixth Circuit.................................................7

    D.  The Requested Fee Is Reasonable................................................................8

        1.  The Value of the Benefit Rendered to the Class Supports the Requested Fee ........................................................................................8

        2.  Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee .............................................................10

        3.  The Contingent Nature of Counsel's Representation Supports the Requested Fee ........................................................................................11

        4.  The Complexity of the Litigation Supports the Requested Fee.................14

        5.  Lead Counsel's Diligent Prosecution of the Litigation and the Value of Their Services Supports the Requested Fee...............................15

        6.  The Quality of Representation Supports the Requested Fee .....................16

    E.  Class Member Reaction ...........................................................................18

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................18

IV.  THE REQUESTED AWARDS TO LEAD PLAINTIFF IS REASONABLE..................20

V.  CONCLUSION.....................................................................................................20

4889-3266-6737.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Air Prods. & Chems., Inc. v. Airgas, Inc.*,
16 A.3d 48 (Del. Ch. 2011)..................................................................................13

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...........................................................................13

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...........................................................................................10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...........................................................................................10

*Blum v. Stenson*,
465 U.S. 866 (1984)..............................................................................................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..............................................................................................5

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996).....................................................................6

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) .................................................................7

*Carr v. Guardian Healthcare Holdings, Inc.*,
2022 WL 501206 (S.D. Ohio Jan. 19, 2022) ............................................... *passim*

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).......................................................9

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).............................................................................................14

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ..................................................20

*Grae v. Corrections Corp. of America*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ...................................................20

*Hubbard v. BankAtlantic Bancorp., Inc.*,
688 F.3d 713 (11th Cir. 2012) ...........................................................................13

4889-3266-6737.v1

**Page**

*In re Apple Comput. Sec. Litig.*,
 1991 U.S. Dist. LEXIS 15608
 (N.D. Cal. Sept. 6, 1991) ........................................................................................13

*In re Cardinal Health Inc. Sec. Litig.*,
 528 F. Supp. 2d 752 (S.D. Ohio 2007) .............................................................. *passim*

*In re Charter Commc'ns, Inc.*,
 2005 U.S. Dist. LEXIS 14772
 (E.D. Mo. June 30, 2005).........................................................................................18

*In re Comshare Inc. Sec. Litig.*,
 183 F.3d 542 (6th Cir. 1999) ...................................................................................12

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
 248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................17, 18

*In re Flint Water Cases*,
 583 F. Supp. 3d 911 (E.D. Mich. 2022).............................................................8, 11, 12

*In re Flint Water Cases*,
 63 F.4th 486 (6th Cir. Mar. 17, 2023)............................................................... *passim*

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
 2009 U.S. Dist. LEXIS 45790
 (S.D. Ohio May 27, 2009) .........................................................................................7

*In re Nationwide Fin. Servs. Litig.*,
 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009).........................................................18

*In re Oracle Corp. Sec. Litig.*,
 2009 U.S. Dist. LEXIS 50995
 (N.D. Cal. June 16, 2009),
 *aff'd*, 627 F.3d 376 (9th Cir. 2010) ........................................................................13

*In re Polyurethane Foam Antitrust Litig.*,
 2015 WL 1639269 (N.D. Ohio 2015)......................................................................7, 8

*In re Regions Morgan Keegan Sec.*,
 2013 WL 12110279 (W.D. Tenn. Aug. 6, 2013)........................................................15

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005)......................................................................................18

4889-3266-6737.v1

**Page**

*In re Se. Milk Antitrust Litig.*,
  2013 WL 20155387 (E.D. Tenn. May 17, 2013)........................................................6, 7, 11, 18

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 2946459 (E.D. Tenn. June 30, 2014)................................................................6, 7, 9

*JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................................................................13

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989).....................................................................................................................7

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) .......................................................................................................8

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006),
  *aff'd sub nom Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ...............................................................................................14, 19

*N.Y. State Tchrs.' Ret. Sys. v. GMC*,
  315 F.R.D. 226 (E.D. Mich. 2016),
  *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
  2017 WL 6398014 (6th Cir. Nov. 27, 2017)...................................................................6, 11, 14

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018) ..............................................................................................13

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) .....................................................................................................8

*Ranney v. Am. Airlines*,
  2016 WL 471220 (S.D. Ohio Feb. 8, 2016)....................................................................6, 8, 15

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................................5, 6, 8

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................................................13

*Schuh v. HCA Holdings, Inc.*,
  2016 U.S. Dist. LEXIS 140387
  (M.D. Tenn. Apr. 14, 2016)..........................................................................................................7

4889-3266-6737.v1

**Page**

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
  2015 U.S. Dist. LEXIS 41968
  (E.D. Mich. Mar. 31, 2015) ......................................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)...............................................................................................10

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010) ......................................................................7

*Willis v. Big Lots, Inc.*,
  2018 WL 7814725 (S.D. Ohio Nov. 9, 2018)..........................................................17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ...................................................................................................1, 5, 20
  §78u-4(a)(6) ..............................................................................................................6

Federal Rules of Civil Procedure
  Rule 23 .....................................................................................................................5
  Rule 23(b)(3)...........................................................................................................14

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation:*
  *H1 2023 Update* (NERA Aug. 2, 2023) ..............................................................2, 9

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
  *Recent Trends in Securities Class Action Litigation:*
  *2022 Full-Year Review* (NERA Jan. 24, 2023).................................................2, 9, 12

4889-3266-6737.v1

Lead Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff.

## I.        PRELIMINARY STATEMENT

After three years of hard-fought, contentious litigation, and following extensive mediation efforts, Lead Plaintiff 1199SEIU Health Care Employees Pension Fund ("Lead Plaintiff") and Lead Counsel have obtained a $109 million cash recovery for the benefit of the Settlement Class.[1]  This substantial recovery was achieved through the skill, hard work, and persistent advocacy of Lead Counsel, who now respectfully moves this Court for an award of attorneys' fees in the amount of thirty percent (30%) of the Settlement Amount and expenses incurred in prosecuting this Litigation of $699,334.91, plus interest earned on both amounts.[2]  Thirty percent is well within the range of percentages awarded in class actions in this District, in this Circuit, and across the country.

---

[1]        Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Lead Plaintiff's Motion for (I) Final Approval of Class Action Settlement, (II) Approval of Plan of Allocation, and (III) Final Class Certification ("Settlement Memorandum"). The Court is also respectfully referred to the accompanying Declaration of Laurie L. Largent in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Largent Decl.") for a more detailed history of the Litigation, the extensive efforts of Lead Counsel, and the factors bearing on the reasonableness of the requested award of attorneys' fees and expenses.  All terms capitalized herein are defined in the Stipulation of Settlement dated March 31, 2023 (the "Stipulation") (ECF 109), unless otherwise indicated.  Unless otherwise noted, all emphasis in quotations is added and citations and footnotes are omitted.

[2]        Lead Counsel's application for attorneys' fees and expenses includes the time and expense incurred by Lead Plaintiff's local counsel Murray Murphy Moul + Basil LLP, and additional counsel Labaton Sucharow LLP.  *See* Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), Declaration of Joseph F. Murray Filed on Behalf of Murray Murphy Moul + Basil LLP in Support of Application for Award of Attorneys' Fees and Expenses ("MMM+B Decl."), and Declaration of Alfred L. Fatale III Filed on Behalf of Labaton Sucharow LLP in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Labaton Sucharow Decl."), submitted herewith.  Lead Counsel, Murray Murphy Moul + Basil, and Labaton Sucharow are collectively referred to as "counsel."

The requested fee is reasonable and warranted in light of the outstanding result obtained for the Settlement Class. Lead Counsel recovered a significant percentage of the estimated recoverable damages (9.5%-54.5%), which is five to thirty times the median percentage recovery for securities class actions settled in 2022 (1.8%), according to data compiled by NERA Economic Consulting. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) ("Jan. 2023 NERA Report") at 18, attached as Exhibit A to the Largent Decl. The Settlement Amount is also more than eight times the 2022 median settlement value in securities class action settlements under $1 billion, *id*. at 15, and almost seven times the first-half 2023 median settlement value in the same category. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2023 Update* (NERA Aug. 2, 2023) ("Aug. 2023 NERA Report") at 1, 9, attached as Exhibit B to the Largent Decl. In fact, in the first half of 2023, only 3% of securities class actions have settled for $100 million or more. *Id*. at 10.

Lead Counsel marshaled considerable resources, applied a high level of skill and experience, and committed substantial time and expense in prosecuting the Litigation and achieving the Settlement. As set forth in the Largent Declaration, the Settlement was not achieved until Lead Counsel, among other things: (1) conducted an in-depth, extensive investigation into the facts and potential claims and defenses, based on which it drafted and filed a detailed, 167-paragraph Consolidated Complaint sufficient to meet the PSLRA's particularized pleading standards; (2) successfully opposed Defendants' motion to dismiss in its entirety, which is achieved in only 20% of securities fraud class actions in which motions to dismiss are decided, according to data compiled by NERA (*see* Jan. 2023 NERA Report at 11); (3) comprehensively briefed and conducted discovery related to Lead Plaintiff's Motion for Class Certification, including preparing for, participating in and/or defending nine depositions, including that of Lead Plaintiff, two experts and

- 2 -

six investment managers; and gathering, reviewing, and producing 137,000 documents in response to Defendants' 74 document requests; (4) conducted comprehensive and voluminous discovery, including serving a set of 57 document requests to Defendants and over 30 subpoenas to third parties, and then negotiating for, obtaining, reviewing and analyzing over 500,000 documents, consisting of almost three million pages; (5) identified, retained, and consulted extensively with four experts in the fields of economics, finance, information technology, due diligence, and corporate integration; and (6) engaged in protracted settlement negotiations over a several month period, including two day-long in person mediation sessions and two virtual sessions, which included the exchange of mediation statements, presentations, and evidence supporting Lead Plaintiff's and Defendants' respective positions on liability and damages, ultimately resulting in the Settlement. Largent Decl., ¶¶4, 15-16, 19-20, 24-41, 61.

The significant risks involved in bringing and prosecuting this action on behalf of the Settlement Class also warrant the requested fee award. Counsel undertook the representation of the Settlement Class on a contingent fee basis, investing over 27,800 hours of time on the case and $699,334.91 in expenses at the risk of no recovery, no payment, and no reimbursement. RGRD Decl., ¶¶4-6, MMM+B Decl., ¶¶5-7, Labaton Sucharow Decl., ¶¶4-6. No payment has been made to counsel to date for their services or for the litigation expenses they have incurred on behalf of the Settlement Class over the past three years. Largent Decl., ¶65. The risk of no recovery was very real in a case such as this, asserting claims based on complex legal and factual issues which are vigorously opposed by highly skilled, experienced and well-financed defendants and their counsel.

Importantly, the fee and expense request is supported by Lead Plaintiff. *See* Declaration of Gabriel Ristorucci in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Class Counsel's Motion for Attorneys' Fees and Litigation Expenses and Lead Plaintiff's Application for Reimbursement of Litigation Expenses ("Ristorucci Decl."), ¶8,

- 3 -

filed herewith.  Lead Plaintiff is an institutional investor and paradigmatic fiduciary of the type Congress envisioned in enacting the PSLRA.[3]  Lead Plaintiff was actively involved in the Litigation, including settlement discussions.  Ristorucci Decl., ¶¶3-6.  Because of this involvement, now, at the end of the case, Lead Plaintiff is in a unique position to evaluate this $109 million result and assess whether the fee request is fair and reasonable.

No institutions have objected to Lead Counsel's request for fees and expenses, and only one objection has been received from an individual shareholder who has recently lodged similar objections in a number of cases.  Notably, his objections have been overruled in all instances.  The absence of a significant number of objections, and none from any institutions, supports a finding that Lead Counsel's requests for fees and expenses are fair and reasonable.

Lead Counsel firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as a firm that is highly dedicated to the interests of class members and is committed to zealously prosecuting a meritorious case through trial and subsequent appeals.  As discussed herein, and for the reasons detailed in the Settlement Memorandum and the Largent Declaration, the requested fee is fair and reasonable when considered under applicable Sixth Circuit standards and is within the range of awards in class actions approved by courts in this Circuit and nationwide.  Moreover, the requested expenses and charges are reasonable in amount and were necessarily incurred for the successful prosecution of this Litigation.

---

[3]     Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to assume control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of Lead Plaintiff's counsel." *See* Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. No. 104-369, 1995 WL 709276, at *32 (Nov. 28, 1995).

4889-3266-6737.v1

Finally, the modest award of $11,539.00 sought by Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) for its time and expenses incurred in representing the Settlement Class, as detailed in the Ristorucci Declaration, should be granted.

Accordingly, Lead Counsel respectfully requests the Court to grant its Motion for an Award of Attorneys' Fees and Expenses.

## II.     AWARD OF ATTORNEYS' FEES

### A.     Lead Counsel Is Entitled to a Fee from the Common Fund Reflecting the Result Achieved and the Work Done

Lead Counsel's efforts have resulted in the creation of a common fund. Attorneys who recover a common fund are entitled to reasonable attorneys' fees from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Flint Water Cases*, 63 F.4th 486, 493 (6th Cir. Mar. 17, 2023) ("Long-standing precedent recognizes that in common fund cases, counsel are entitled to compensation for such common benefit work."); *Carr v. Guardian Healthcare Holdings, Inc.*, 2022 WL 501206, at *9 (S.D. Ohio Jan. 19, 2022) (Sargus, J.) ("'Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.'"). "'[W]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" *Id.*, at *9 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Under Rule 23 and Sixth Circuit authority, awards of attorneys' fees in common fund cases must be "reasonable under the circumstances." *Rawlings*, 9 F3d at 516; *Carr*, 2022 WL 501206, at *9 (Rule 23 authorizes a court to award reasonable attorney's fees).

For the reasons set forth below, Lead Counsel's requested fee of 30% of the Settlement Amount is reasonable under the circumstances.

4889-3266-6737.v1

**B.      The Court Should Apply the Percentage Approach in Awarding Fees**

The Sixth Circuit has long endorsed awarding attorneys' fees based on a percentage of a common fund.  *Rawlings*, 9 F.3d at 15-16; *see also Carr*, 2022 WL 501206, at *10 ("The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement.").[4]  Courts in this District and throughout the Sixth Circuit overwhelmingly apply the percentage method in awarding fees in common fund cases, particularly securities cases, recognizing that the percentage-of-the-fund method "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).[5]

Accordingly, the percentage method is the preferred approach to awarding fees in common fund cases and should be applied here.[6]

---

[4]      Congress impliedly endorsed the percentage-of-the-fund approach to fee awards in the context of common fund PSLRA cases.  *See* 15 U.S.C. §78u-4(a)(6); *N.Y. State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) ("[B]ecause the PSLRA refers to an award of attorneys' fees and expenses in relation to 'a reasonable percentage of the amount of any damages . . . actually paid to the class,' the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead Counsel's fee award."), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

[5]      *See Carr*, 2022 WL 501206, at *10 (Sixth Circuit and Ohio district courts approve percentage approach in common fund cases); *Ranney v. Am. Airlines*, 2016 WL 471220, at *1 (S.D. Ohio Feb. 8, 2016)(percentage method preferred in this district); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) ("[T]he percentage approach is the current prevailing method in securities class actions."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, 2013 WL 20155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method . . . clearly appears to have become the preferred method in common fund cases.").

[6]      While courts may use the lodestar method as a "cross check" to the percentage under consideration, the Sixth Circuit has held that courts are not required to do so.  *See Flint Water Cases*, 63 F.4th at 499 ("And although the district court was not required to conduct a lodestar cross-check,

- 6 -

4889-3266-6737.v1

**C.** **The Requested 30% Fee Is Consistent with Awards in Common Fund Cases in This District and the Sixth Circuit**

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33-1/3% of the recovery. *Blum v. Stenson*, 465 U.S. 866, 903 (1984) ("'In tort suits, an attorney might receive one-third of whatever amount the [Lead Plaintiff] recovers. In those cases, therefore, the fee is directly proportional to the recovery.'").

Lead Counsel's request for attorneys' fees equal to 30% of the Settlement Amount is also well within the range of percentage fee awards made by courts in this District and throughout the Sixth Circuit in large, complex common fund cases.[7] The percentage therefore is presumptively appropriate in a case such as this.

---

. . . it did conduct such a cross-check."). However, as set forth in §II.D.5, should the Court perform such a cross-check, the lodestar multiplier here is only 1.83, which is well below the norm for similar cases and thus further supports the reasonableness of the requested fee award.

[7] *See, e.g.*, *Carr*, 2022 WL 501206, at \*10 (awarding 1/3 fee); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at \*7 (N.D. Ohio 2015) (awarding fees representing 30% of $147.8 million settlement fund, or $44.34 million); *Schuh v. HCA Holdings, Inc.*, 2016 U.S. Dist. LEXIS 140387 (M.D. Tenn. Apr. 14, 2016) (awarding fees of 30% of a $215 million recovery); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 2015 U.S. Dist. LEXIS 41968, at \*48 (E.D. Mich. Mar. 31, 2015) (awarding one third of common fund as attorneys' fees, and finding that "[c]ourts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund"); *Skelaxin*, 2014 WL 2946459, at \*5 ("[T]he requested counsel fee of one third [of $73 million recovery] is fair and reasonable and fully justified [and] within the range of fees ordinarily awarded."); *Se. Milk*, 2013 WL 2155387, at \*3 (attorneys' fees representing one-third of a $152 million settlement fund were "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) (awarding fees of 30% of $28.75 million settlement and explaining, "courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 U.S. Dist. LEXIS 45790, at \*16 (S.D. Ohio May 27, 2009) (30% of settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit"); *Brotherton v.*

- 7 -

4889-3266-6737.v1

**D.      The Requested Fee Is Reasonable**

Fee awards in common fund cases must also be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 517. The Sixth Circuit has identified several factors that District Courts "[o]ften, but by no means invariably," consider in determining the reasonableness of an attorneys' fee award. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

> Those factors include: "1) the value of the benefit rendered to the class, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides."

*Flint Water*, 63 F.4th at 495-96, citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). "'There is no formula for weighing these factors. . . . [E]ach case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case.'" *Ranney*, 2016 WL 471220, at *2.

All of these considerations support the reasonableness of the requested fee here.

### 1.      The Value of the Benefit Rendered to the Settlement Class Supports the Requested Fee

The value of the benefit rendered to the settlement class is "widely regarded" as "the most important factor" in assessing the reasonableness of attorneys' fees in common fund cases. *In re Flint Water Cases*, 583 F. Supp. 3d 911, 937 (E.D. Mich. 2022) (quoting *Cardinal Health*, 528 F. Supp. 2d at 764). Courts consider the total settlement reached and the number of individuals affected by the underlying allegations in evaluating the value of the benefit. *See Ramey*, 508 F.2d at 1196-98; *Flint Water Cases*, 583 F. Supp. 3d at 937 (settlement of $626.5 million, affecting over 50,000 class members, provided "significant value" to claimants); *Polyurethane*, 2015 WL 1639269,

---

*Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created.").

4889-3266-6737.v1

at *7 (value of lead counsel's work was "apparent" where class members recovered more than $100 million from defendants); *Skelaxin*, 2014 WL 2946459, at *2 ($73 million cash settlement "provide[d] a clear benefit to the class"); *Cardinal Health*, 528 F. Supp. 2d at 765 (settlement amount, one of the largest in the Sixth Circuit, supported value of benefit to class).

Here, Lead Counsel has secured a recovery that provides for a substantial (and definite) cash payment of $109 million. The Settlement is remarkable as a percentage of the estimated recoverable damages, which ranged from $200 million to $1.15 billion based on various factors. The Settlement Amount is 9.5% to 54.5% of estimated damages, representing 5.2 to 30.2 times the median percentage recovery for all securities fraud class actions settled in 2022, which was 1.8%. *See* Jan. 2023 NERA Report at 18. Indeed, "[a] 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019).

The Settlement is also remarkable when considered in comparison to median and average class action settlement values since 2021. In the first half of 2023, only 3% of securities class action settlements were for $100 million or more, with the median class action settlement value nationwide (excluding settlements over $1 billion) being $16 million, and the average settlement value $21 million. *See* Aug. 2023 NERA Report at 1, 8-10. In 2022, the median class action settlement value nationwide (excluding settlements over $1 billion) was $13 million, and the average settlement value was $38 million. *See* Jan. 24, 2023 NERA Report at 14-15. In 2021, the median value, excluding settlements over $1 billion, was $8 million, and the average was $21 million. *Id*. Thus, the $109 million Settlement here is many multiples of the mean and average settlement values nationwide over the last two years. In fact, the $109 million Settlement here is noteworthy when compared to median values going back to 2013, which never exceeded $15 million. *Id*. at 15.

And finally, the number of class members that stand to benefit from the common fund created here is substantial.  To date, notice has been provided to over 398,600 potential Settlement Class Members and nominees.  *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶11.  Therefore,  it is likely that thousands of Settlement Class Members will participate in and benefit from the Settlement, further confirming its value.

For all of these reasons, the value of the benefit to the Settlement Class supports the reasonableness of the requested fee award.

### 2. Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, private lawsuits must be encouraged.  *See Basic Inc. v. Levinson,* 485 U.S. 224, 230-31 (1988) (private causes of action for violations of §10(b) and Rule 10b-5 "constitute[] an essential tool for enforcement of the 1934 Act's requirements.").  The Supreme Court has emphasized that private securities actions such as this one provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (same).  Class actions are the only feasible way to privately enforce securities laws because "absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation."  *Cardinal Health*, 528 F. Supp. 2d at 765-66.

Given the risk, complexity, and expense of litigating a securities class action such as this one, adequate compensation is in the public interest because it is necessary to "'encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.'"  *Id.* at 766.  Indeed, without adequate compensation, it would be difficult to retain the caliber of

- 10 -

lawyers willing and able to properly prosecute to a favorable conclusion complex, risky, and extremely expensive securities class actions such as this one. *GMC*, 315 F.R.D. at 244 ("[A]dequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors" under the federal securities laws).

Here, the Settlement will provide meaningful relief to thousands of investors, thereby promoting the public interest. Without the willingness of Lead Counsel to assume the risks associated with litigation such as this one, Members of the Settlement Class may not have recovered anything. Because actionable securities fraud exists and society benefits from strong advocacy on behalf of investors, public policy favors the granting of reasonable fee and expense applications such as this one.

### 3. The Contingent Nature of Counsel's Representation Supports the Requested Fee

"Contingent fee arrangements present a genuine risk that counsel . . . might not recoup their fees or costs in the end." *Flint Water*, 583 F. Supp. 3d at 938-39. The risk of receiving little or no recovery factors significantly in considering an award of attorneys' fees. *See, e.g.*, *Carr*, 2022 WL 501206, at *10 (risk of no recovery weighed in favor of approving fee award); *Se. Milk*, 2013 WL 2155387, at *5 ("[T]he fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.").

Counsel undertook this Litigation on a fully contingent fee basis, assuming a real and substantial risk that the Litigation would yield no recovery and leave counsel uncompensated. Largent Decl., ¶¶9, 64-69. Counsel invested over 27,800 hours of time and $699,334.91 in expenses necessary to prove Lead Plaintiff's claims over three years of litigation. Adding to the risk of recovery here, the SEC investigated some of the same allegations asserted by Lead Plaintiff with regard to the Cordis acquisition, and concluded its investigation without any intention to recommend an enforcement action. *Id.*, ¶6. There is no doubt that Defendants would have continued to

- 11 -

vigorously pursue their defenses following the SEC investigation.  Reaching a settlement was therefore "far from guaranteed." *Flint Water Cases*, 583 F. Supp. 3d at 938-39.  But unlike counsel for Defendants, who are paid an hourly rate and reimbursed for their expenses on a regular basis, and thereby assume no risk of non-payment, Lead Counsel has not been compensated for any of its time or expenses since it began litigating this case over three years ago.

While high-stakes complex class actions are inherently difficult to prosecute, the PSLRA's heightened pleading standards and mandatory discovery stay make securities fraud class actions especially prone to risk and arduous efforts before discovery even begins.  There was no guarantee that Lead Plaintiff's claims would survive the PSLRA pleading standards.  Largent Decl., ¶¶19-21.  Indeed, according to data from NERA Economic Consulting for 2013-2022, out of all securities class actions in which motions to dismiss were decided in 2013-2022, the motions were denied completely in only 20% of cases, while in the other 80% of cases, the motions to dismiss were either granted with prejudice (54%), partially granted (19%) or granted without prejudice (7%), with dismissals being granted sometimes years after a case is filed.  *See* Jan. 2023 NERA Report at 11.

Even after surviving the pleading stage, Lead Plaintiff still had the substantial burden of proving, *inter alia*, the falsity and materiality of Defendants' alleged misstatements, which Defendants maintained were non-actionable; that the omissions or misstatements impacted the market price of Cardinal securities and caused damage to the Settlement Class, which Defendants aggressively challenged with expert opinion and testimony; and that each Defendant acted with scienter, a heavy burden made more difficult by Defendants' anticipated testimony that they believed each of their allegedly false statements was complete and accurate.  Largent Decl., ¶¶47-53; *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).  While Lead Plaintiff believes it would have been able to support its claims with persuasive evidence and expert testimony at summary judgment and/or trial, it is impossible to predict the Court's or jury's reactions, interpretations, and

- 12 -

inferences gleaned from the evidence and testimony.  Largent Decl., ¶48.  Indeed, the SEC concluded its investigation without any intention to recommend an enforcement action.  *Id*.

In addition, Defendants aggressively challenged Lead Plaintiff's Motion for Class Certification, which was pending when the case settled.  Largent Decl., ¶50.

The risk of no recovery in complex securities fraud class actions is indeed very real.  There are numerous class actions in which plaintiffs' attorneys, including Lead Counsel, expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.[8]  Even plaintiffs who survive summary judgment or succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.[9]

Accordingly, the contingent nature of Lead Counsel's representation strongly favors approval of the requested fee.

---

[8]     *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation); *Air Prods. & Chems., Inc. v. Airgas, Inc.*, 16 A.3d 48 (Del. Ch. 2011) (in a case where a Robbins Geller attorney represented stockholders in a week-long trial in October 2010, the court ruled in favor of the defendants, denied the shareholder lead plaintiffs' request for relief, and dismissed the case with prejudice); *In re Homestore Inc. Sec. Litig.*, No. 01-CV-11115 (C.D. Cal. 2011) (lead plaintiff verdict but no recovery); *Miller v. Thane Int'l*, No. 02-CV-01156 (C.D. Cal. 2005) (defense verdict affirmed on appeal); *JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *In re Oracle Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) (summary judgment granted in favor of defendants after eight years of litigation and after Lead Counsel incurred over $6 million in expenses and worked over 100,000 hours), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

[9]     *See, e.g.*, *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713 (11th Cir. 2012) (the Eleventh Circuit Court of Appeals affirmed a lower court ruling which granted defendants' motion for summary judgment as a matter of law based on a plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion.); *In re Apple Comput. Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict).

- 13 -

### 4. The Complexity of the Litigation Supports the Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of a fee award. *Flint Water*, 63 F.4th at 496; *Carr*, 2022 WL 501206, at *11. Courts in this Circuit acknowledge that securities class actions are inherently complex. *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *GMC*, 315 F.R.D. at 236 (PSLRA class action raised "many complex issues.").

The complexity of proving liability and recovering damages here cannot be overstated. As discussed in the Largent Declaration, this case presented complicated factual issues regarding the financial and operational integration of Cordis, a global distributor of sophisticated medical supplies, into Cardinal Health, requiring Lead Counsel to identify, retain, and consult with experts and scholars in the fields of information technology, finance, and corporate due diligence and integrations, and to understand thousands of documents requiring specialized knowledge in those areas. Largent Decl., ¶4(h). In addition, in opposing class certification, Defendants submitted a 124-page expert report to support their argument that Lead Plaintiff's proposed damage model failed to satisfy the requirements of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and that continual disclosures of new information during the Class Period about Cordis created individualized issues of materiality, scienter, and falsity that defeated the predominance requirements of Rule 23(b)(3). Largent Decl., ¶28. In responding to Defendants' class certification challenges, Lead Counsel meticulously reviewed and researched the briefing and evidentiary material, and prepared extensively for and deposed Defendants' expert, which included consulting with its economics and loss causation experts. *Id.*, ¶29. Defendants also argued that their alleged misstatements did not impact the price of Cardinal securities, which raised intricate loss causation issues requiring Lead

- 14 -

Counsel to closely examine in detail market reactions regarding Defendants' disclosures in consultation with their damages experts.

These legal and factual complexities support the reasonableness of the requested award because they made the case more difficult and uncertain, as a "battle of experts" would undoubtedly affect the outcome of a trial.

### 5. Lead Counsel's Diligent Prosecution of the Litigation and the Value of Its Services Supports the Requested Fee

The value of services on an hourly basis, or lodestar, may be used as a cross-check by courts in the Sixth Circuit to determine the reasonableness of a percentage award. *See, e.g.*, *Ranney*, 2016 WL 471220, at *1 ("In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'"). The Sixth Circuit recently confirmed that a lodestar cross-check is not required when awarding fees based on a percentage of the fund. *Flint Water*, 63 F.4th at 499 ("[A]lthough the district court was not required to conduct a lodestar cross-check, . . . it did conduct such a cross-check."). However, if the Court determines that a cross-check is helpful here, Lead Counsel's lodestar further confirms its diligent prosecution and the reasonableness of the fee requested.

Lead Counsel alone have spent more than 27,000 hours of attorney and paraprofessional time, amounting to $17.4 million in lodestar based on Lead Counsel's rates in contingent cases, which are consistent with rates charged by firms performing comparable work for plaintiffs and defendants. RGRD Decl., ¶4. The requested fee of 30% of the Settlement Amount represents a very modest multiplier of 1.83 to counsel's collective lodestar in this Litigation. *See Cardinal Health*, 528 F. Supp. 2d at 767 ("Most courts agree that the typical lodestar multiplier in a large post-PSLRA securities class action[] ranges from 1.3 to 4.5."); *In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *7 (W.D. Tenn. Aug. 6, 2013) (same, and finding lodestar cross-check multiplier of 3.1

- 15 -

within the reasonable range). Lead Counsel's time was expended in efforts necessary to prove Lead Plaintiff's claims and certify the class it represented, including:

- Conducting an extensive, in-depth factual investigation in order to draft a Consolidated Complaint that satisfied the stringent pleading standards of the PSLRA and would survive Defendants' Motion to Dismiss (Largent Decl., ¶¶15-16);

- Responding to Defendants' voluminous Motion to Dismiss briefing and evidence, which required Lead Counsel to review and analyze 102 exhibits spanning over 2,700 pages in order to oppose the motion (Largent Decl., ¶¶19-20);

- Responding to Defendants' extensive and complex challenges to class certification, which required Lead Counsel to prepare for, participate in and/or defend nine depositions (Lead Plaintiff, its investment managers, and Lead Plaintiff's and Defendants' experts), respond to Defendants' 124-page expert report with a second report from Lead Plaintiff's expert, and review and produce 137,000 documents responsive to Defendants' 74 document requests (Largent Decl., ¶¶24-29);

- Conducting voluminous document discovery, including requesting, negotiating for, obtaining, and reviewing almost three million pages of documents from Defendants and more than 30 third parties (Largent Decl., ¶¶30-39);

- Identifying, retaining, and working with four experts in the areas of economics, information technology, corporate integration and due diligence, in order to respond to Defendants' challenges to class certification and to understand the complex underlying facts of this case (Largent Decl., ¶4(h)); and

- Engaging in a contentious and protracted mediation, for which Lead Counsel conducted an extensive review of thousands of documents and submitted a detailed mediation brief supported by 49 exhibits, attended two day-long mediation sessions and two virtual mediation sessions, and reviewed dozens of analyst reports and Cardinal Health internal documents in order to create a detailed presentation for one of the virtual sessions (Largent Decl., ¶¶40-42).

*See also* Largent Decl., ¶¶4, 61.

A lodestar "cross-check" therefore confirms the reasonableness of the requested fee.

### 6. The Quality of Representation Supports the Requested Fee

Lead Counsel is a nationally known leader in the fields of securities class actions and complex litigation. *See* www.rgrdlaw.com.[10] The quality of the representation is best demonstrated

---

[10] Lead Counsel has successfully represented classes in other cases in this District and the Sixth Circuit. *See, e.g.*, *Cardinal Health*, 528 F. Supp. 2d at 768 (Obtaining the then-largest securities

by the result achieved – far above the average of similar securities class actions in both amount and percentage of losses. This recovery is the direct result of the dedication of highly skilled and specialized attorneys with significant experience in the prosecution of securities class actions, which supports the requested fee. *Carr*, 2022 WL 501206, at \*11 (representation by counsel with substantial experience in federal and class action litigation supported reasonableness of fee); *Flint Water*, 583 F. Supp. 2d at 946 (Counsel's skill level weighed "strongly in favor of granting the fee request[ed]").

The quality of opposing counsel is also important when a court evaluates the services rendered by Lead Counsel. *See, e.g.*, *id.*; *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Here the Settling Defendants and their insurers are all represented by able counsel at some of the nation's most prestigious law firms. . . . The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Lead Counsel were opposed in this Litigation by very skilled and highly respected counsel from Wachtell, Lipton, Rosen & Katz and Baker & Hostetler LLP, firms with well-deserved reputations for vigorous advocacy in the defense of complex civil actions. As detailed in the Largent Declaration, Defendants' counsel asserted an arsenal of arguments and litigation strategies in an attempt to obtain the dismissal of this case and to minimize their clients' exposure. The ability of Lead Counsel to obtain a favorable result for the Settlement Class in the face of such formidable opposition further evidences the quality of its work and the reasonableness of the requested fee.

---

settlement in the Sixth Circuit, where the court noted that "[t]he quality of representation in this case was superb"); *Willis v. Big Lots, Inc.*, 2018 WL 7814725, at \*2 (S.D. Ohio Nov. 9, 2018) ($38 million recovery); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.) (obtaining a $215 million recovery on behalf of the class, the largest securities class action recovery ever in Tennessee).

- 17 -

### E. Class Member Reaction

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award."). Over 398,600 Postcard Notices have been mailed to potential Settlement Class Members and nominees, and a summary notice was published. To date, no institutional investor has objected to Lead Counsel's fee request, and only one individual investor, Larry Killion has objected. Mr. Killion lodged similar objections to the fee applications in *In re Nielsen Holdings PLC Sec. Litig.*, Civil Action No. 1:18-cv-07143-JMF (S.D.N.Y.), and *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, Civil Action No. 1:20-cv-10041-PKC (S.D.N.Y.), which both courts considered and overruled. *Nielsen*, ECF 156; *Reckitt*, ECF 181. Lead Counsel will respond in full to Mr. Killion's objection when the deadline for objections has passed.[11] But the submission of only one or even a few objections by class members is evidence that the requested fee is fair.[12]

All of the factors discussed above thus weigh in favor of the requested fee award.

### III. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Counsel also request payment of expenses and charges incurred by them in connection with the prosecution of this Litigation in the amount of $699,334.91. *Se. Milk*, 2013 WL 2155387, at *8 ("'Expense awards are customary when litigants have created a common settlement fund for the

---

[11] As set forth in the Postcard Notice and Notice, the deadline to provide counsel with objections is August 21, 2023. *See* Murray Decl., Exs. A-B.

[12] *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *In re Charter Commc'ns, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *59 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request).

4889-3266-6737.v1

benefit of a class.'"); *see also* RGRD Decl., attesting to the accuracy of Lead Counsel's expenses; and MMM+B Decl. and Labaton Sucharow Decl., attesting to the accuracy of expenses submitted by Murray Murphy Moul + Basil and Labaton Sucharow.  The appropriate analysis in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[13]  The categories of expenses for which counsel seek payment here are precisely the type of expenses routinely charged in similar cases and, therefore, are properly awarded from the common fund.

The largest component of counsel's expenses by far are the costs of experts.  The retention of experts with significant experience in economic analysis and damages in securities class actions, information technology, corporate integrations, and due diligence was essential to understanding the relevant issues.  *See* Largent Decl., ¶75; RGRD Decl., ¶6(d).  The second largest component of Lead Counsel's expenses were mediation fees.  Engaging a highly regarded mediator with substantial experience in securities fraud class actions was essential to obtain the result achieved.  RGRD Decl., ¶6(i).  Lead Counsel also incurred significant costs of electronic discovery database hosting.  *Id.*, ¶6(g).  It is standard practice for attorneys to use these services to be able to conduct electronic discovery on a very large scale.  Other expenses and charges that were necessarily incurred in the prosecution of this Litigation include expenses for investigators, transcripts, out of town travel, photocopying, and online research.  Because these were all necessary expenses incurred by counsel, they should be paid from the Settlement Fund.  These expenses are described in detail in the accompanying RGRD Decl., MMM + B Decl., and Labaton Sucharow Decl.  To date, objections to these requested expenses have been filed.

---

[13]     *See New Eng. Health*, 234 F.R.D. at 635 ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'").

- 19 -

## IV.    THE REQUESTED AWARD TO LEAD PLAINTIFF IS REASONABLE

Lead Plaintiff seeks $11,539.00 in connection with its representation of the Settlement Class. *See* Ristorucci Decl., ¶9.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  Employees of Lead Plaintiff took an active role in the Litigation, including preparing for and sitting for a day-long deposition, reviewing significant pleadings and briefs, discussing litigation strategy and case developments with Lead Counsel and Fund Counsel, collecting, reviewing and producing documents, monitoring the progress of settlement negotiations, and approving the Settlement. Ristorucci Decl., ¶9.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. *See Cosby v. KPMG LLP*, 2022 WL 4129703, at *3 (E.D. Tenn. July 12, 2022) (awarding plaintiff awards of $25,000, $10,000 and $10,000); *Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding $17,525 to lead plaintiff); *Cardinal Health*, 528 F. Supp. 2d at 770-71 (awarding an aggregate of $82,452.81, consisting of $10,830.67 to one lead plaintiff, $14,812.50 to the second lead plaintiff, and $56,809.64 to the third lead plaintiff).  Accordingly, Lead Plaintiff respectfully requests that the Court grant its modest request for $11,539.00.  There have been no objections to this request by any Members of the Settlement Class.

## V.    CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court grant its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

4889-3266-6737.v1

DATED:  August 7, 2023

Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP


*s/ Joseph F. Murray*

JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
TOR GRONBORG
ELLEN GUSIKOFF STEWART
LAURIE L. LARGENT
JENNIFER N. CARINGAL
CHRISTOPHER R. KINNON
J. MARCO JANOSKI GRAY
MEGAN A. ROSSI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
torg@rgrdlaw.com
elleng@rgrdlaw.com
llargent@rgrdlaw.com
jcaringal@rgrdlaw.com
ckinnon@rgrdlaw.com
mjanoski@rgrdlaw.com
mrossi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 21 -

4889-3266-6737.v1